UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH COALITION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 05-cv-11816 MEL |
| NEW ENGLAND ALLERGY ASTHMA | ) |
| IMMUNOLOGY & PRIMARY CARE, | ) |
| P.C. and THOMAS F. JOHNSON, | ) |
| Individually | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF MOTION OF HEALTH COALITION, INC. TO ENFORCE SETTLEMENT AGREEMENT**

Plaintiff Health Coalition, Inc. ("HCI") submits the following memorandum in support of

its Motion to Enforce the Settlement Agreement and Mutual Release ("Settlement Agreement")

between HCI and Defendants New England Allergy Asthma Immunology & Primary Care, P.C.

("New England Allergy") and Thomas F. Johnson ("Dr. Johnson") (collectively the

"Defendants").  A copy of the agreed-upon Settlement Agreement is attached as Exhibit B to the

Declaration of Brian M. Forbes dated September 7, 2006 ("Forbes Decl.").  HCI and Defendants

negotiated resolution of this dispute for several months and reached agreement on the material

terms of a settlement on June 7, 2006.  The parties were ready to execute the agreed-upon

settlement documents in August 2006, when Defendants notified HCI *for the first time* of a

Temporary Restraining Order entered on June 14, 2006 ("TRO") by the Superior Court for Essex

County in an action entitled <u>Atlantic Biologicals Corporation v. New England Allergy Asthma</u>

<u>Immunology & Primary Care, P.C. Thomas F. Johnson, M.D.</u>, Civ. No. 06-640SD ("State

Action") enjoining the Defendants "from entering into any transactions outside the ordinary

1

course of business, taking actions to hide, secrete, conceal, hinder the efforts of creditors to collect against their assets, or dissipate their assets, or engaging in any self-interested transactions other than for full and fair consideration." On August 30, 2006, Defendants first raised a concern that final execution of the settlement documents may be prohibited by the TRO. HCI does not believe that the Settlement Agreement violates the TRO where the material terms of the settlement were reached prior to entry of the TRO, the settlement between HCI and Defendants was made in the ordinary course of business, and the settlement is "for full and fair consideration" as it only partially compensates HCI on the amount Defendants have owed HCI for a long time. For the reasons set forth below, the Court should enforce the Settlement Agreement. In addition, the Court should award HCI its attorneys' fees and costs and other appropriate sanctions for Defendants' bad faith settlement tactics.

## **BACKGROUND**

This action arises from HCI's sale of blood derivative products to defendant New England Allergy. See Complaint filed on September 6, 2005 (Docket No. 1). The Complaint alleges that New England Allergy and defendant Dr. Johnson, as guarantor, breached their agreements with HCI by failing to make payments for products ordered from HCI and accepted by Defendants under the terms of said agreements. To that end, HCI's Complaint alleges claims against New England Allergy for breach of contract, goods sold and delivered, account stated, breach of implied covenant of good faith and fair dealing, and violations of Mass. Gen. L. ch. 93A. HCI also asserts a claim against Dr. Johnson for his alleged breach of a guaranty agreement. At the time the Complaint was filed on September 6, 2006, HCI claims that Defendants owed no less than $846,696 plus interest, costs, and attorneys' fees. The amount owed to HCI continues to accrue interest at a rate of 1 ½% per month (18% per annum). The

total amount owed to HCI to date, without attorneys fees (which are provided for by contract), with accrued interest, is $912,564.79. With the potential for treble damages under Mass. Gen. Laws c. 93A, Defendants' exposure in the federal action now exceeds $3,000,000.

At the request of the parties, the Court ordered mediation. See Docket No. 11. On February 17, 2006, HCI and Defendants participated in the Court's mediation program. Although the matter did not settle on that date, the parties continued to negotiate the terms of a settlement and reached agreement on the material terms of settlement on June 7, 2006. A copy of the Defendants' acceptance of the material terms of the settlement is attached as Exhibit A to the Forbes Decl.

The principal terms of the settlement include total payment by New England Allergy to HCI in the amount of $874,000.00 to be paid as follows: a cash payment of $250,000.00 and the remaining $624,000.00 to be paid pursuant to a Promissory Note with payments of $13,000.00 per month for a period of 48 months. The obligations of the Promissory Note are to be secured by the assets of New England Allergy and are to be junior only to the secured position of TD BankNorth's $500,000.00 of credit. Dr. Johnson also agrees personally to guaranty the payment obligations of NEA and agrees to pay all amounts owed by NEA upon any default under the Promissory Note and the Settlement Agreement. Dr. Johnson also agrees that payment obligations of the Promissory Note and the Settlement Agreement are to be secured by a term life insurance policy or polices that cover the life of Dr. Johnson. See Exhibits A and B to Forbes Decl. Significantly, the present value of the cash obligations of the settlement is less than the current amount due including interest.

Since HCI and Defendants agreed to the material terms of the settlement they have been working to finalize all appropriate documentation. The delay in finalizing and executing the

settlement agreement and required papers has been the result of Defendants' continued failure to provide the necessary information and documents needed to close on the settlement.  See Forbes Decl. at para. 3.

On August 30, 2006, at the eleventh hour, after months of settlement talks, agreement on the terms of the settlement, and communications back and forth finalizing the language of the settlement documents, Defendants notified HCI for the first time of the existence of the State Action against them and of the TRO entered on June 14, 2006.  A copy of the email sent from Defendants' counsel to plaintiff's counsel first notifying HCI of the TRO is attached as Exhibit C to the Forbes Decl.  The TRO states, in relevant part:

> [A] restraining order as set forth in paragraph 57(d) pg. 10 [of the Amended Complaint] is entered by agreement and shall be in effect until any hearing on the motion for a preliminary injunction is held at the request of the parties.

> Paragraph 57(d) of the Amended Complaint states:

> Enter a temporary restraining order after notice and hearing of preliminary injunction, and after trial, a final injunction to enjoin Defendants from entering into any transaction outside the ordinary course of business, taking actions to hide, secrete, conceal, hinder the efforts of creditors to collect against their assets, or dissipate their assets, or engaging in any self-interested transactions other than for full and fair consideration.

See Exhibit D to Forbes Decl.

Despite the fact that the TRO has been in effect for over two and a half months, and was apparently entered "by agreement," Defendants now claim "[w]e have encountered a problem executing the settlement documentation" because Defendants' counsel "believes that this transaction [the Settlement with HCI] may be violative of the injunction."  See Exhibit C to Forbes Decl.

In an attempt to address Defendants' concern that by executing the settlement documents in the instant action may give rise to an argument that settlement may be prohibited by the TRO

in the State Action, HCI proposed filing a joint motion to the Superior Court requesting that the

Superior Court either approve the HCI settlement as permitted under the existing TRO or modify

the TRO to allow the Settlement Agreement between HCI and Defendants to be executed.  A

copy of the draft Joint Motion and email from counsel for HCI with its request that Defendants

sign the Joint Motion is attached as Exhibit E to the Forbes Decl.  Defendants have not been

willing to sign the Joint Motion.

## ANALYSIS

### I.    The Settlement Agreement Must Be Enforced

It is undisputed that a settlement was reached between HCI and Defendants in the instant

action.  Although the final settlement documents have not been executed, the law is clear, where

the material terms of settlement have been reached, an unexecuted settlement agreement is an

enforceable contract that may be specifically enforced.  See Quint v. A.E. Staley Manufacturing

Co., 246 F.3d 11, 15 (1st Cir. 2001) (enforcing settlement where material terms were agreed upon

and rejecting argument that "there can be no agreement until a document is executed"); Kinan v.

Cohen, 268 F.3d 27, 33-34 (1st Cir. 2001) (enforcing settlement where there was not dispute over

material terms); Peters v. Wallach, 366 Mass. 622, 628 (1975) (affirming order enforcing

unexecuted agreement to settle preexisting claim); see also Correia v. Desimone, 34 Mass. App.

Ct. 601, 603-04 (1993) (affirming judgment for specific enforcement of oral settlement

agreement); Marshall v. Burchell, 2005 WL 100715, at * 2 (Mass. Super. Ct. Jan. 13, 2005)

(enforcing settlement agreement where "the mechanics of settlement were resolved", "the

process for exchanging documents had begun", and "all material terms of the agreement had

been defined and the parties uniformly expressed their intent to be bound"); Orion Research, Inc.

v. Ross, 2003 WL 383250, *2 (Mass. Super. Ct. Jan. 27, 2003) ("Where two parties enter into an

oral agreement in court, and that agreement is set to be memorialized in writing at a later date, the oral agreement is enforceable and not contingent upon the written expression").

Here, the parties agreed to the material terms of the settlement in writing on June 7, 2006, expressed their intent to be bound, and began exchanging documents to complete the transaction. See Exhibit A to Forbes Decl. As such, NEA and Dr. Johnson are bound to the terms of the settlement and the Court should order enforcement of the settlement.

**II.    The TRO Does Not Prohibit the Entry Into the Settlement**

Defendants' concern that final execution of the settlement documents in this case may be prohibited by the TRO is unfounded. First, the material terms of the Settlement Agreement between HCI and Defendants was reached on June 7, 2006, before the Superior Court's entry of the TRO on June 14, 2006. At that point, all that was left to do was for the parties to finalize settlement documents and perform under the agreement. Because Defendants' obligations under the settlement were incurred before entry of the TRO, the TRO does not apply to the earlier agreed-upon settlement between HCI and the Defendants.

Second, even if the TRO were to impact the settlement -- which it does not -- by entering into the Settlement Agreement with HCI, Defendants are not "entering into any transactions outside the ordinary course of business." Defendants have simply agreed to fair resolution of the dispute with HCI regarding payments owed for goods delivered. To avoid the further expense of their litigation with HCI, Defendants have agreed to resolve this matter for a total of $874,000.00. Notably, Defendants' exposure in this matter, when interest is included, is less than the present value of the agreed upon settlement, and is much less than Defendants' exposure considering the claims under Mass. Gen. Laws ch. 93A, which total exposure exceeds more than $3,000,000. Moreover, by entering into the Settlement Agreement with HCI, Defendants are

not "taking actions to hide, secrete, conceal, hinder the efforts of creditors to collect against their

assets, or dissipate their assets." HCI is a longstanding creditor of Defendants and by reaching

resolution of the dispute with HCI over amounts owed, Defendants are not hindering the efforts

of any creditors or in any way improperly dissipating their assets. Finally, Defendants are not

"engaging in any self-interested transactions" that is not "for full and fair consideration." The

obligations incurred in the Settlement Agreement are of a lesser value than the value of the debt

that is discharged by the settlement.

### III.    If The TRO Is An Impediment to Settlement, Defendants Should Be Forced to Seek Relief From The TRO

Again, HCI does not believe that the TRO entered in the State Action applies or has an

impact on the previously agreed-upon settlement between the parties to this action. Therefore,

HCI requests that the Court enter the Settlement Agreement as an Order of the Court, and Order

Defendants to perform. In the event, however, that the Court deems that relief is necessary from

the State Action TRO, HCI requests that the Court order that Defendants jointly seek relief with

HCI (in the form of the Joint Motion attached as Exhibit E to the Forbes Decl.) requesting that

the Superior Court either approve the HCI settlement as permitted under the existing TRO or

modify the TRO to allow the Settlement Agreement between HCI and Defendants to be

executed.

### IV.    Defendants' Bad Faith Conduct

Finally, Defendants' knowing and intentional refusal to comply with the terms of its

agreement with HCI, in complete disregard of their known contractual obligations and with the

intent to secure benefits for themselves -- namely, failing to provide the necessary documentation

to complete the settlement between the parties and stringing HCI along regarding settlement

when they were aware of the existence of the TRO for over 2 ½ months and not raising the issue

until the eve of execution of the settlement documents --   constitutes both unfair and deceptive

acts or practices in violation of G.L. c. 93A and breach of the implied covenant of good faith and

fair dealing.  See Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474-75 (1991)

("conduct in disregard of known contractual arrangements and intended to secure benefits for the

breaching party constitutes unfair acts or practices for 93A purposes"); Drucker v. Roland Wm.

Jutras Assocs., 370 Mass. 383, 385 (1976) (the implied covenant of good faith and fair dealing

provides "that neither party shall do anything that will have the effect of destroying or injuring

the right of the other party to receive the fruits of the contract….")(citations omitted).

Therefore, HCI requests its attorneys' fees and costs associated with the instant motion

and order that Defendants take appropriate actions to finalize and execute the necessary

documents to complete the settlement.[1]

## CONCLUSION

For the foregoing reasons, Health Coalition, Inc. respectfully requests that the Court grant

its Motion to Enforce the Settlement Agreement and:

a)    enter the Settlement Agreement as an Order of Court;

b)    order that Defendants perform under the Settlement Agreement, provide the

documents and/or information necessary to execute the settlement with HCI; and execute the

appropriate documents to effect the settlement between HCI and Defendants;

---

[1]    This conduct is separate and apart from the unfair and deceptive conduct already alleged
in the Complaint.  To the extent the Settlement Agreement between the parties is not completed
in due course, HCI will seek leave to amend the Complaint to add additional allegations
regarding defendants' bad faith conduct in connection with the settlement of this matter.

c) in the event that the Court deems that relief is necessary from the Temporary Restraining Order entered on June 14, 2006 ("TRO") by the Superior Court for Essex County in an action entitled <u>Atlantic Biologicals Corporation v. New England Allergy Asthma Immunology & Primary Care, P.C. Thomas F. Johnson, M.D.</u>, Civ. No. 06-640SD, order that Defendants jointly seek relief with HCI requesting that the Superior Court either approve the HCI settlement as permitted under the existing TRO or modify the TRO to allow the Settlement Agreement between HCI and Defendants to be executed;

d) award Health Coalition its costs, including its attorneys' fees, incurred in making this motion; and

e) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

HEALTH COALITION, INC.,

By its attorneys,

/s/ Brian M. Forbes
Jeffrey S. King (BBO # 559000)
 jking@klng.com
Brian M. Forbes (BBO# 644787)
 bforbes@klng.com
Stacey L. Gorman (BBO# 655147)
 sgorman@klng.com
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
Tele:   (617) 261-3100
Fax:    (617) 261-3175

Dated:  September 7, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed on September 7, 2006 through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 7, 2006.


Peter J. Haley
Leslie F. Su
Gordon Haley LLP
101 Federal Street
Boston, MA 02110

William H. DiAdamo
DiAdamo Law Office, LLP
40 Appleton Way
Lawrence, MA 01840

Arthur McCabe
Arthur McCabe & Associates, P.C.
1 Elm Square
P.O. Box 990
Andover, MA 01810


/s/ Brian M. Forbes