UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH COALITION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 05-cv-11816 MEL |
| NEW ENGLAND ALLERGY ASTHMA | ) |
| IMMUNOLOGY & PRIMARY CARE, | ) |
| P.C. and THOMAS F. JOHNSON, | ) |
| Individually | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF BRIAN M. FORBES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

I, Brian M. Forbes hereby declare under oath as follows:

1.      I am an attorney and associate at the law firm of Kirkpatrick & Lockhart

Nicholson Graham LLP ("K&LNG"), State Street Financial Center, One Lincoln Street, Boston,

Massachusetts.  K&LNG represents plaintiff Health Coalition, Inc. ("HCI") in this action.  I

respectfully submit this Declaration in support of Health Coalition Inc.'s Motion to Enforce

Settlement Agreement.

2.      After extended settlement negotiations, the parties, HCI and Defendants New

England Allergy Asthma Immunology & Primary Care, P.C. ("New England Allergy") and

Thomas F. Johnson ("Dr. Johnson") (collectively "Defendants") reached agreement on the

material terms of settlement on June 7, 2006.  A true and correct copy of the Defendants'

acceptance of the material terms of the settlement is attached hereto as Exhibit A.

3.      Since HCI and Defendants agreed to the material terms of the settlement, they

have been working to finalize all appropriate documentation.  A copy of the agreed-upon form of

Settlement Agreement and Mutual Release is attached hereto as Exhibit B. The delay in finalizing and executing the settlement agreement and required papers has been the result of Defendants' continued failure to provide the necessary information and documents needed to close on the settlement.

4.    On August 30, 2006, after months of settlement talks, agreement on the terms of the settlement, and communications back and forth finalizing the language of the settlement documents, Defendants notified HCI for the first time of the existence of a Temporary Restraining Order entered on June 14, 2006 ("TRO") by the Superior Court for Essex County in an action entitled Atlantic Biologicals Corporation v. New England Allergy Asthma Immunology & Primary Care, P.C. Thomas F. Johnson, M.D., Civ. No. 06-640SD ("State Action") enjoining the Defendants "from entering into any transactions outside the ordinary course of business, taking actions to hide, secrete, conceal, hinder the efforts of creditors to collect against their assets, or dissipate their assets, or engaging in any self-interested transactions other than for full and fair consideration." A true and correct copy of the email sent from Defendants' counsel to Plaintiff's counsel first notifying HCI of the TRO is attached hereto as Exhibit C. In that email, Defendants' counsel stated that "[w]e have encountered a problem executing the settlement documentation" because Defendants' counsel "believes that this transaction [the Settlement with HCI] may be violative of the injunction." A true and correct copy of the TRO in the State Action as obtained from the Clerk's Office from Superior Court is attached hereto as Exhibit D.

5.    In an attempt to address Defendants' concern that by executing the settlement documents in the instant action may give rise to an argument that settlement may be prohibited by the TRO in the State Action, HCI proposed filing a joint motion to the Superior Court

requesting that the Superior Court either approve the HCI settlement as permitted under the existing TRO or modify the TRO to allow the Settlement Agreement between HCI and Defendants to be executed.  A copy of the draft Joint Motion and email from counsel for HCI with its request that Defendants sign the Joint Motion is attached as hereto as Exhibit E. Defendants have not been willing to sign the Joint Motion.

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS
TRUE AND CORRECT.  EXECUTED THIS 7th DAY OF SEPTEMBER 2006, AT BOSTON,
MASSACHUSETTS.

/s/ Brian M. Forbes
Brian M. Forbes

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document, filed on September 7, 2006 through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 7, 2006.

Peter J. Haley
Leslie F. Su
Gordon Haley LLP
101 Federal Street
Boston, MA 02110

William H. DiAdamo
DiAdamo Law Office, LLP
40 Appleton Way
Lawrence, MA 01840

Arthur McCabe
Arthur McCabe & Associates, P.C.
1 Elm Square
P.O. Box 990
Andover, MA 01810

/s/ Brian M. Forbes

# EXHIBIT A

## Forbes, Brian M. (Boston)

| | |
|---|---|
| **From:** | Peter Haley [haley@gordonhaley.com] |
| **Sent:** | Wednesday, June 07, 2006 4:01 PM |
| **To:** | Forbes, Brian M. (Boston); william@diadamo.com |
| **Cc:** | 'Art McCabe'; King, Jeffrey S. |
| **Subject:** | RE: HCI v. NEA/Dr. Johnson |

Brian

This is to confirm the Defendants' agreement to the terms set forth below, subject only to the completion of the necessary documentation in a form and manner acceptable to both parties.

Please forward the settlement documents at your first convenience.

Thanks

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-261-0789 (facsimile)
haley@gordonhaley.com

> -----Original Message-----
> **From:** Forbes, Brian M. (Boston) [mailto:bforbes@klng.com]
> **Sent:** Thursday, June 01, 2006 1:48 PM
> **To:** Peter Haley; william@diadamo.com
> **Cc:** Art McCabe; King, Jeffrey S.
> **Subject:** HCI v. NEA/Dr. Johnson
>
>
> Gentleman,
> Based on the parties extended settlement negotiations, the terms set forth below are the terms to which HCI will agree to settle the instant litigation. Please confirm that defendants agree to these terms. Once we have confirmation that both defendants agree to these terms, we will be able to forward to you draft settlement documents in fairly short order. Because we do not want completion of the settlement to drag on indefinitely, as a condition of HCI's agreement to settle this matter, once we forward the first drafts of the Settlement Agreement and Note to you for your review, HCI will require that the final settlement documents must be finalized and executed within 15 days of our sending you the first drafts. If all settlement documents are not finalized within that 15 day time period, HCI reserves the right to rework/renegotiate the terms of the de and/or to resume the litigation if HCI has a good faith basis for believing that defendants are unreasonably delaying completion of the settlement.
>
> Please get back to us by the close of business on Wednesday, June 7th with defendants' confirmation that they agree to th terms set forth below. I will be out of the office next week and will not have access to email. To that end, during the week June 5th, I ask that you direct all communications to Jeff King. Thank you.
>
> We look forward to hearing from you.

Regards,
Brian

- o  $250,000.00 cash
- o  Promissory Note with payments of $13,000 per month thereafter for 48 months; payments on the Note must be received by HCI by the first of each month following closing and must be made by certified check or wire transfer; 10-day cure period that starts on the day notice of default is sent -- notice will be sent by manners we need to agree upon (fax? etc.)
- o  Total payment of $874,000.00
- o  Dr. Johnson guaranty of entire payment amounts
- o  Full security interest in New England Allergy with UCCs etc., covering all assets of NEA (including, A/R which includes the loans/notes/amounts owed by other entities, inventory, etc.)
- o  The security would be subject to the final approval of Banknorth, which would remain first in line on its secured position on its $500k line of credit. HCI would be in second position to Banknorth but ahead of all other creditors as to all secured assets. Written confirmation from Banknorth must be in a form that is acceptable to HCI.
- o  Dismissal with prejudice for NEA and Johnson – releases except for new obligations created by settlemer
- o  Agreement for judgment in case of any default, with reasonable opportunity to cure period, and joint and several liability. The judgment will be in the amount of the balance then owed on the Promissory Note, plus $400k (this reflects the out of pocket losses HCI has suffered, costs to collect, and risk premium for non-collection).
- o  Cumulative term life insurance policies with a face value of $1,274,000 would remain in place-- all premiums must be made until the Note is paid in full. Failure to maintain this coverage will constitute a default under the Note. HCI will be named as 1st beneficiary in line for the payment in full on the total value of the Promissory Note. Upon the death of Dr. Johnson, the entire balance then owed under the Promissor Note will become immediately payable to HCI out of the policy proceeds. We will require all appropriate documentation, beneficiary designations, notices of premium payment for insurer, and waivers from other beneficiaries and heirs.
- o  Breach of any of the foregoing provisions constitutes default under the Note (and triggers all correspondin remedies)
- o  HCI will draft the Settlement Agreement and the Note
- o  Defendants will draft the documents associated with the security interest and insurance issues: UCCs, beneficiary forms, etc.

# EXHIBIT B

SETTLEMENT AGREEMENT AND MUTUAL RELEASE

*THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE* (the "Agreement") is entered into the 7th day of June, 2006, by and between Health Coalition, Inc. ("HCI"), New England Allergy Asthma Immunology & Primary Care, P.C. ("NEA"), and Dr. Thomas F. Johnson ("Dr. Johnson"), collectively, the "Parties."

*WHEREAS*, HCI has asserted certain claims against NEA and Dr. Johnson arising from the alleged breach of their agreements with HCI in connection with HCI's sale of blood derivative products to NEA and Dr. Johnson's guaranty of all purchases of NEA from HCI; and

*WHEREAS*, HCI, as plaintiff, brought a lawsuit against NEA and Dr. Johnson, as defendants, entitled "Health Coalition, Inc. v. New England Allergy Asthma Immunology & Primary Care, P.C. and Thomas F. Johnson, Individually," in the United States District Court for the District of Massachusetts, Civil Action No. C.A. 05-cv-11816 MEL, in which HCI asserted claims against NEA for breach of contract, goods sold and delivered, account stated, breach of implied covenant of good faith and fair dealing, and violation Mass. Gen. Laws ch. 93A, and for claims asserted against Dr. Johnson for breach of guaranty agreement (the "Lawsuit"); and

*WHEREAS*, NEA and Dr. Johnson have denied all material allegations in the Lawsuit and have asserted various defenses; and

*WHEREAS*, the Parties hereto desire to avoid further expense in the pursuit of the Lawsuit and thus have agreed to resolve by this Agreement all disputes between them;

*NOW THEREFORE*, the Parties covenant and agree as follows:

1.      In consideration of the execution of this Agreement and of the payments and actions called for herein, the Parties and their respective insurers, officers, directors, stockholders, attorneys, members, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns, and all other persons, firms, associations, or corporations with whom any of the former have been, are now, or may hereafter be affiliated (hereinafter "Releasors") hereby completely release and forever discharge each other, and their respective insurers, officers, directors, stockholders, attorneys, members, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns, and all other persons, firms, associations, or corporations with whom any of the former have been, are now, or may hereafter be affiliated (hereinafter "Releasees") of and from any and all past, present, and future claims, demands, actions, causes of action, debts, and dues, whether in law or equity, of any nature or description whatsoever, whether now known or unknown, anticipated or unanticipated, asserted or unasserted, whether based on statute, contract, tort, or otherwise, whether for compensatory, punitive damages or civil penalties, on account of or in any way growing out of, related to directly or indirectly, resulting or to result from the claims or causes of action set forth in the Lawsuit, including without limitations, any and all known or unknown claims of bodily, property, personal, loss of consortium, and economic injuries to the Releasors and the consequences thereof, including but not limited to any claims arising from the handling of any insurance claim or the defense of any

legal proceeding concerning the Lawsuit; except, however, that the foregoing release shall not apply to: (1) the continuing obligations of NEA and Dr. Johnson set forth elsewhere in this Agreement including those obligations concerning an Agreement for Judgment, (2) the continuing obligations of NEA set forth in a separate Promissory Note executed on or about the date hereof; and (3) the continuing obligations of Dr. Johnson set forth in a separate Guaranty executed on or about the date hereof.

Subject to the limitations set forth above, this release shall be a fully binding and complete settlement and release between HCI, NEA, Dr. Johnson, and Releasees with respect to the matters addressed herein.

2.      NEA agrees to pay EIGHT HUNDRED SEVENTY-FOUR THOUSAND AND 00/100 DOLLARS ($874,000.00), to HCI as follows:  $250,000 is to be paid by certified check or wire transfer within three (3) days of the date of execution of this Agreement, and the remaining $624,000.00 is to be paid pursuant to the terms of a Promissory Note in the form attached hereto as Exhibit A and including the following terms:  forty-eight (48) monthly installments of $13,000.00 by certified bank check or wire in readily available funds by the first of each month, with the principal balance payable in full by September 1, 2010.

3.      The obligations of the Promissory Note are to be secured by all assets of NEA through the filing of UCCs or any other necessary and appropriate documents which will be filed and recorded with the appropriate secretary of state or other entity of the Commonwealth of Massachusetts, the State of New Hampshire, and any other states necessary to cover all assets of NEA.  HCI's security interest in the assets of NEA are to be junior only to the secured position of TD BankNorth's $500,000.000 line of credit.  HCI's secured position is to remain senior to and ahead of all other creditors until such time as all obligations of HCI are satisfied.

4.      In the event NEA defaults under the Promissory Note, or if NEA and/or Dr. Johnson otherwise breach the terms and obligations set forth in this Agreement, the Parties agree that judgment shall enter in a new action for breach of contract as further detailed in paragraph 7 below and that NEA and Dr. Johnson are to be jointly and severally liable for the balance remaining on the Promissory Note, and an additional premium payment of FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($400,000.00) ("Premium Payment").  It is specifically agreed that the Premium Payment is reasonable and appropriate and that adequate consideration has been exchanged for the inclusion of this Premium Payment in this Agreement.

5.      The payment obligations of the Promissory Note and Premium Payment are also to be secured by a term life insurance policy or policies that cover the life of Dr. Johnson, with HCI named as the first beneficiary in line for the payment in full on the total value of the Promissory Note and Premium Payment.  Said policy or policies are to have a face value of at least $1,274,000.00 and must remain in place with all premiums paid current until the Promissory Note and Premium Payment (if appropriate) are paid in full.  As a named beneficiary, HCI must be provided with notice of non-payment of any premium owed and notice of any intent to terminate the insurance.  In such event, HCI shall have the right to continue to make premium payments on said policy or policies in the event any premium payment is not made, which payments, if made by HCI, will be added to the entire balance owed to HCI.  Upon the death of

- 2 -

Dr. Johnson, the entire balance then owed on the Promissory Note will become immediately payable to HCI out of the policy proceeds. In addition, if the obligation to pay the Premium Payment has attached, the policy proceeds shall also be used to pay the Premium Payment.

6.    Dr. Johnson agrees to personally guaranty the payment obligations of NEA described above and in the Promissory Note, and agrees to pay to HCI all amounts owed by NEA to HCI upon any default under the Promissory Note and this Agreement, including the Premium Payment if it becomes due. This personal guaranty will be evidenced by a signed Guaranty in the form attached hereto as Exhibit B.

7.    In the event that NEA defaults under the Promissory Note, or if NEA and/or Dr. Johnson otherwise breach the terms and obligations set forth in this Agreement, then the Parties agree that HCI may file a new action in the United States District Court for the District of Massachusetts or the courts of the Commonwealth of Massachusetts against NEA and Dr. Johnson, and may file the Agreement for Judgment that the Parties have signed and that is attached hereto as Exhibit C which allows judgment to be entered jointly and severally against NEA and Dr. Johnson in the amount of any outstanding balance owed under the Promissory Note plus the $400,000.00 Premium Payment. NEA and Dr. Johnson agree to accept service of the new action and expressly waive any and all defenses of lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service of process, failure to state a claim upon which relief can be granted, and failure to join a necessary party, and expressly waive any and all appeal rights in connection with the filing of the Agreement for Judgment and the entry of judgment against NEA and Dr. Johnson and in favor of HCI as set forth in this paragraph. In addition, NEA and Dr. Johnson agree to pay all fees, including, but not limited to, reasonable attorneys' fees, and costs incurred by HCI in connection with HCI's filing of the new action and execution and collection on the Agreement for Judgment. NEA and Dr. Johnson also expressly agree that their consent to acceptance of service of a new action and Agreement for Judgment as further detailed above, will apply to and be binding upon their respective insurers, officers, directors, stockholders, attorneys, members, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns, and all other persons, firms or corporations with whom any of the former have been, are now, or may hereafter be affiliated. The Agreement for Judgment will be executed by NEA and Dr. Johnson and will be returned to counsel for HCI within three (3) business days of the date of execution of this Agreement and will be held in escrow until such time as it is filed, if ever.

8.    The Parties agree to dismiss the Lawsuit with prejudice to all claims, and with all rights of appeal waived. Each party will bear its own costs and attorneys' fees incurred in connection with the commencement, prosecution, and defense of the above-referenced Lawsuit. The Stipulation of Dismissal With Prejudice that the Parties have signed and that will be filed by HCI is attached hereto as Exhibit D.

9.    The Parties agree and acknowledge that, except as provided to the contrary herein, they take the actions specified in this Agreement, and make or accept payment of the sums specified in this Agreement, as a full and complete compromise of all matters involving disputed issues between HCI, NEA, and Dr. Johnson and that neither payment of any sum by any party,

performance of any act as specified herein, nor the negotiations for this settlement (including all statements, admissions or communications) by HCI, NEA or Dr. Johnson or their attorneys or representatives shall be considered admissions by any of said Parties, and that no past or present wrongdoing or liability on the part of any party shall be implied by such payment, actions, or negotiations.

10.    The Parties warrant and represent that:

a)    the Parties rely wholly on their own judgment as to the extent of the damages they have sustained, or will sustain in the future, and the Parties have not been influenced by any statement made by or on behalf of any of the other Parties to this Agreement;

b)    to the extent that the damages, if any, sustained by the Parties, or any of them, are unknown, the Parties understand, agree and warrant that the release contained in this Agreement extends to all unknown or unanticipated damages related to the claims asserted in the Lawsuit as well as those which are now known or disclosed;

c)    the Parties have been fully informed and have full knowledge of the terms, conditions, and effects of this Agreement, and have read this Agreement and are executing it under advice of counsel;

d)    the Parties have fully investigated, to each party's full satisfaction, all of the facts surrounding the various claims, controversies, and disputes and are fully satisfied with the terms and effects of this Agreement;

e)    the Parties have executed and agreed to this Agreement and made or accepted payment of the sums specified herein as a complete compromise of matters involving disputed issues of law and fact and fully assume the risk that the facts or law may be other than they believe; and

f)    no relative, or any other person or entity, has or has had any interest in the claims, demands, obligations, or causes of action in the Lawsuit or referred to in this Agreement; that they have the sole right and exclusive authority to execute this Agreement, perform their respective obligations hereunder, and pay or receive the sums specified in it; and that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations or causes of actions referred to in the above-referenced Lawsuit or this Agreement.

11.    NEA and Dr. Johnson further warrant and represent that by signing this Agreement and all attendant documents and by entering into the obligations set forth herein and in all attendant documents, the Parties are not putting themselves individually or collectively, into default or breach of any other documents, agreements, or obligations.

12.    The provisions of this Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the Commonwealth of Massachusetts without regard to its conflict of law principles.

- 4 -

13.    This Agreement may be executed in any number of counterparts, which shall together constitute but one and the same instrument.  To make proof of this Agreement it shall only be necessary to produce any one such counterpart.

14.    This Agreement contains the entire agreement between the Parties with regard to the matters set forth herein, and may not be changed orally.

*IN WITNESS WHEREOF*, Health Coalition, Inc., New England Allergy Asthma Immunology & Primary Care, P.C. and Dr. Thomas F. Johnson have executed this Settlement Agreement and Mutual Release on the date first written above.

HEALTH COALITION, INC.                    APPROVED AS TO FORM:


_____          _____
By:  Walter Shikany                       Jeffrey S. King (BBO# 559000)
Its:  President                           Brian M. Forbes (BBO# 644787)
                                          Attorneys for Health Coalition, Inc.
                                          KIRKPATRICK & LOCKHART
                                          NICHOLSON GRAHAM LLP
                                          State Street Financial Center
                                          One Lincoln Street
                                          Boston, MA  02111
                                          (617) 261-3100


NEW ENGLAND ALLERGY
ASTHMA IMMUNOLOGY &
PRIMARY CARE, P.C.                        APPROVED AS TO FORM:


_____          _____
By:    Dr. Thomas F. Johnson              Peter J. Haley (BBO# 543858)
Its:    Director and President            Attorney for New England Allergy Asthma
                                          Immunology & Primary Care, P.C.
                                          GORDON HALEY LLP
                                          101 Federal Street
                                          Boston, MA 02110
                                          (617) 261-0100

DR. THOMAS F. JOHNSON                    APPROVED AS TO FORM:


_____          _____
Dr. Thomas F. Johnson                     William H. DiAdamo (BBO #558883)
                                          Attorney for Dr. Thomas F. Johnson
                                          WILLIAM H. DIADAMO LAW OFFICE
                                          40 Appleton Way
                                          Lawrence, MA 01840
                                          (978) 685-4271

# EXHIBIT C

## Forbes, Brian M. (Boston)

| | |
|---|---|
| **From:** | Peter Haley [haley@gordonhaley.com] |
| **Sent:** | Wednesday, August 30, 2006 2:56 PM |
| **To:** | Forbes, Brian M. (Boston) |
| **Cc:** | william@diadamo.com |
| **Subject:** | HCI v. NEA et al |
| **Attachments:** | Info on Insurance Policy.pdf |

Brian

Attached please find the insurance information you have requested.  We have encountered a problem in executing the settlement documentation.  Bill Diadamo represents the corporation and Dr. Johnson in another pending matter in the Middlesex Superior Court.  The Court in that matter has issued a temporary restraining order "enjoining the defendants from entering into any transactions outside the ordinary course of business, taking actions to hide, secrete, conceal, hinder the efforts of creditors to colle against their assets, or dissipate their assets, or engaging in a self interested transactions other than for full and fair consideration.'

Bill believes that this transaction may be violative of the injunction.  Our options are twofold, 1) seek the modification of the injunction or 2) gain Atlantic Biologicals assent to the agreement.  We are, we believe, on the verge of potentially settling the Atlant Biologicals matter – which would be the easiest – most risk free -  way to accomplish this.  We have been informed that they will respond to the NEA offer this week.  To date, they have not done so.

We respectfully request your continued patience for a brief period while we attempt to address this issue.

Thank you

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-261-0789 (facsimile)
haley@gordonhaley.com

09/03/2006

# EXHIBIT D

**County of Essex**
**The Superior Court**

CIVIL DOCKET#: **ESCV2006-00640-D**

RE: Atlantic Biologicals Corporation v New England Allergy Asthma Immunology & Primary Care PC et al

TO: Colleen Cushing, Esquire
Bowditch & Dewey
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156

---

### NOTICE OF DOCKET ENTRY

You are hereby notified that on **06/14/2006** the following entry was made on the above referenced docket:

**Findings: a restraining order as set forth in paragraph 57(d) pg.10 is entered by agreement and shall be in effect until any hearing on the motion for a preliminary injunction is held at the request of the parties (Diane M. Kottmyer, Justice)**

Dated at Lawrence, Massachusetts this 14th day of June, 2006.

Thomas H. Driscoll Jr.,
Clerk of the Courts

BY: Philip Massa
Assistant Clerk

Telephone: (978) 687-7463

**Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130**

cvdgeneric_2.wpd 629075 findings sullkell

Tufts, Blue Cross, and Harvard Pilgrim cannot be attached or taken on execution but may be reached and applied to satisfy NEAAIP and Johnson's obligations to Atlantic Biologicals under M.G.L. c. 214, § 3(6).

57.    Atlantic Biologicals requests that shares of NEAAIP, Johnson, and those to whom Johnson accounts his work or services in Tufts, Blue Cross, and Harvard Pilgrim be reached and applied to in satisfaction of any judgment Atlantic Biologicals receives against them.

WHEREFORE, Atlantic Biologicals requests the following relief:

(a)    Enter judgment in favor of Plaintiff;

(b)    Award Atlantic Biologicals counsel fees;

(c)    Issue an ex parte attachment on trustee process in the amount of $339,394.75 on all goods, effects, and credits in the name of NEAAIP on deposit at trustee defendants TD Banknorth, NA and Bank of America;

(d)    Enter a temporary restraining order after notice and hearing of preliminary injunction, and after trial, a final injunction to enjoin the Defendants from entering into any transactions outside the ordinary course of business, taking actions to hide, secrete, conceal, hinder the efforts of creditors to collect against their assets, or dissipate their assets, or engaging in any self-interested transactions other than for full and fair consideration;

(e)    Determine and award Plaintiff damages, double, or treble damages as a result of Defendants' violations of G.L. Chapter 93(a), Sections 2, 11, and award Atlantic Biologicals its attorneys' fees and costs;

(f)    Order Johnson to pay the debt owed to Atlantic Biologicals;

(g)    Enter a temporary restraining order and, after a hearing, a preliminary injunction enjoining Tufts, Blue Cross, and Harvard Pilgrim and their officers, directors, agents, servants, and employees and/or those acting in concert with them, from remitting, transferring, assigning, alienating or otherwise disposing of monies or accounts owed to NEAAIP, Johnson, and those to whom Johnson accounts his work or services;

10

{Client Files\LIT\305369\0001\00719869.DOC;1}

# EXHIBIT E

## Forbes, Brian M. (Boston)

| | |
|---|---|
| **From:** | Forbes, Brian M. (Boston) |
| **Sent:** | Tuesday, September 05, 2006 1:36 PM |
| **To:** | 'Peter Haley'; william@diadamo.com; 'Art McCabe' |
| **Cc:** | King, Jeffrey S. |
| **Subject:** | HCI v. NEA/Dr. Johnson |

**Attachments:** BOS-#1002366-v1-State-_Joint_Motion_to_Enforce_Settlement_Agreement.DOC

Peter,

We did not hear back from you by the end of the day on Friday regarding the status of your other settlement and whether defendants will agree to file a joint motion to enforce settlement agreement in light of the TRO in state court. To that end, I am attaching a draft joint motion to enforce the settlement agreement for filing in the state court action. As I mentioned to you on Friday and in my voicemail to you today, if defendants do not agree to a joint motion, we will file unilateral motions to enforce the settlement agreement in state and federal court (as necessary) this week.  Please accept this as a request for a Rule 7.1 conference regarding this motion.  We would like to discuss this with you today or by noon tomorrow.

We look forward to your immediate response.

Brian



BOS-#1002366-v1-
State-_Joint_M...

1

ADD CAPTION

## JOINT MOTION TO ENFORCE SETTLEMENT IN LIGHT
## OF TEMPORARY RESTRAINING ORDER

Non-party Health Coalition, Inc. ("HCI") and Defendants New England Allergy Asthma

Immunology & Primary Care, P.C. ("New England Allergy") and Thomas F. Johnson ("Dr.

Johnson") (collectively the "Defendants") hereby move the Court to enforce the Settlement

Agreement and Mutual Release ("Settlement Agreement") between HCI and defendants in the

currently pending action Health Coalition, Inc. v. New England Allergy Asthma Immunology &

Primary Care P.C. and Thomas Johnson, Civ. No. 05-cv-11816 MEL (D. Mass.) ("federal

action") in light of the Temporary Restraining Order entered by the Court in this action on June

14, 2006 ("TRO") "enjoining the defendants from entering into any transactions outside the

ordinary course of business, taking actions to hide, secrete, conceal, hinder the efforts of

creditors to collect against their assets, or dissipate their assets, or engaging in a self interested

transactions other than for full and fair consideration." HCI and defendants have been

negotiating resolution of their dispute for several months and reached agreement on the material

terms of a settlement on June 7, 2006. A copy of the agreed-upon Settlement Agreement is

attached hereto as Exhibit A. Defendants and HCI believe that their Settlement Agreement does

not violate the TRO where it is made in the ordinary course of business and is "for full and fair

consideration" for the goods sold and delivered by HCI to defendants from which debts have

been outstanding. However, defendants are concerned that an argument can be made that final

execution of the settlement documents may be prohibited by the TRO. For the reasons set forth

below, the Court should permit defendants to complete its Settlement Agreement with HCI.

1.    The federal action arises from HCI's sale of blood derivative products to

defendant New England Allergy. A copy of the Complaint filed in the federal action on

September 6, 2005 is attached hereto as Exhibit B. The Complaint alleges that New England Allergy and defendant Dr. Johnson, as guarantor, breached their agreements with HCI by failing to make payments for products ordered from HCI and accepted by defendants under the terms of said agreements. To that end, HCI's Complaint alleges claims against New England Allergy for breach of contract, goods sold and delivered, account stated, breach of implied covenant of good faith and fair dealing, and violations of Mass. Gen. L. ch. 93A. HCI also asserts a claim against Dr. Johnson for his alleged breach of a guaranty agreement. At the time the Complaint was filed on September 6, 2006, HCI claims that defendants owed no less than $846,696 plus interest, costs, and attorneys' fees. To date, the amount owed to HCI continues to accrue interest at a finance charge of 1 ½% interest per month (18% per annum). The total amount owed to HCI as of _____ with accrued interest is $_____. With the potential for treble damages under Mass. Gen. Laws ch. 93A, defendants exposure in the federal action now exceeds $3,000,000.

     2.     HCI and defendants mediated the federal action on February 17, 2006. Although the matter did not settle on that date, the parties continued to negotiate the terms of a settlement in the federal action and reached agreement on the material terms of settlement on June 7, 2006.

     3.     The principal terms of the settlement include total payment by New England Allergy to HCI in the amount of $874,000.00 to be paid as follows: a cash payment of $250,000.00 and the remaining $624,000.00 to be paid pursuant to a Promissory Note with payments of $13,000.00 per month for a period of 48 months. The obligations of the Promissory Note are to be secured by the assets of New England Allergy and are to be junior only to the secured position of TD BankNorth's $500,000.00 of credit. Dr. Johnson also agrees to personally guaranty the payment obligations of NEA and agrees to pay all amounts owed by NEA upon any default under the Promissory Note and the Settlement Agreement. Dr. Johnson

also agrees that payment obligations of the Promissory Note and the Settlement Agreement are to be secured by a term life insurance policy or polices that cover the life of Dr. Johnson. The present value of the cash obligations of the settlement is less then the current amount due including interest.

4.    Since HCI and defendants agreed to the material terms of the settlement they have been working to finalize all appropriate documentation. Defendants are hesitant to execute the Settlement Agreement in the federal action in light of the Temporary Restraining Order entered by the Court on June 13, 2006.

5.    HCI and defendants do not believe, however, that finalizing the Settlement Agreement violates the TRO. First, the material terms of the settlement agreement between HCI and defendants was reached on June 7, 2006, prior to entry of the courts TRO in the instant matter. Quint v. A.E. Staley Manufacturing Co., 246 F.3d 11, 15 (1st Cir. 2001) (enforcing settlement where material terms were agreed upon and rejecting argument that "there can be no agreement until a document is executed"); Kinan v. Cohen, 268 F.3d 27, 33-34 (1st Cir. 2001) (enforcing settlement where there was not dispute over material terms); Peters v. Wallach, 366 Mass. 622, 628 (1975) (affirming order enforcing unexecuted agreement to settle preexisting claim); see also Correia v. Desimone, 34 Mass. App. Ct. 601, 603-04 (1993) (affirming judgment for specific enforcement of oral settlement agreement); Marshall v. Burchell, 2005 WL 100715, at * 2 (Mass. Super. Ct. Jan. 13, 2005) (enforcing settlement agreement where "the mechanics of settlement were resolved", "the process for exchanging documents had begun", and "all material terms of the agreement had been defined and the parties uniformly expressed their intent to be bound"); Orion Research, Inc. v. Ross, 2003 WL 383250, *2 (Mass. Super. Ct. Jan. 27, 2003)

Thus, the TRO does not apply to the settlement between HCI and the defendants as the obligations were incurred before entry of the TRO.

6.     Even if the TRO were to impact the settlement, by entering into the Settlement Agreement with HCI, defendants are not "entering into any transactions outside the ordinary course of business." Defendants are simply seeking fair resolution of the dispute with HCI regarding payments owed for goods delivered. To avoid the further expense of their litigation with HCI and defendants are resolving this matter for a total of $874,000.00. Notably, defendants' exposure in this matter, when interest is included, is less then the present value of the agreed upon settlement, and is much less then the exposure considering the claims under Mass. Gen. Laws ch. 93A, which total exposure exceeds more than $3,000,000. Moreover, by entering into the Settlement Agreement with HCI, defendants are not "taking actions to hide, secrete, conceal, hinder the efforts of creditors to collect against their assets, or dissipate their assets." HCI is a longstanding creditor of defendants and by reaching resolution of the dispute with HCI over amounts owed, defendants are not hindering the efforts of any creditors or in any way improperly dissipating their assets. Finally, defendants are not "engaging in any self-interested transactions" that is not "for full and fair consideration." The obligations incurred in the Settlement Agreement are of a lesser value than the value of the debt that is discharged by the settlement.

7.     Defendants and HCI do not believe that finalizing the Settlement Agreement documents would violate the Court's Temporary Restraining Order in this action. Given the potential uncertainty, however, Defendants and HCI request that the Court either approve the HCI settlement as permitted under the existing TRO or modify the TRO to allow the Settlement Agreement between HCI and defendants to be executed.

- 4 -