UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH COALITION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 05-cv-11816 MEL |
| NEW ENGLAND ALLERGY ASTHMA | ) |
| IMMUNOLOGY & PRIMARY CARE, | ) |
| P.C. and THOMAS F. JOHNSON, | ) |
| Individually | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF RENEWED MOTION OF
<u>HEALTH COALITION, INC. TO ENFORCE SETTLEMENT AGREEMENT</u>**

Plaintiff Health Coalition, Inc. ("HCI") submits the following memorandum in support of its Renewed Motion to Enforce the Settlement Agreement and Mutual Release ("Settlement Agreement") between HCI and Defendants New England Allergy Asthma Immunology & Primary Care, P.C. ("New England Allergy") and Thomas F. Johnson ("Dr. Johnson") (collectively the "Defendants").[1]  A copy of the agreed-upon Settlement Agreement is attached as Exhibit B to the Declaration of Brian M. Forbes dated January 5, 2007 ("Forbes Decl.").  HCI

---

[1] On September 7, 2006, HCI filed its Motion to Enforce Settlement Agreement and supporting papers (Docket Nos. 22, 23, and 24).  The focus of that motion was Defendants' last minute notice to HCI on August 30, 2006, of Defendants concern that it could not execute the settlement documents in this action due to a preexisting Temporary Restraining Order entered on June 14, 2006 ("TRO") by the Superior Court for Essex County in an action entitled <u>Atlantic Biologicals Corporation v. New England Allergy Asthma Immunology & Primary Care, P.C. Thomas F. Johnson, M.D.</u>, Civ. No. 06-640SD ("State Action") purportedly enjoining the Defendants from entering into the settlement with HCI.  On September 25, 2006, the Court Ordered that HCI and Defendants file a joint motion in the State Action seeking relief from the TRO.  Before the hearing on the Joint Motion, a Stipulation of Dismissal was entered in the State Action, thereby permitting HCI and Defendants to complete the settlement in the instant case.

1

and Defendants negotiated resolution of this dispute for several months and reached agreement on the material terms of a settlement on June 7, 2006.  To date, Defendants have failed to take the steps necessary to obtain and execute the documents required under the settlement.  For the reasons set forth below, the Court should enforce the Settlement Agreement and order that Defendants provide the documents and/or obtain information necessary to perform under the settlement with HCI.  In addition, the Court should award HCI its attorneys' fees and costs and other appropriate sanctions for Defendants' conduct in connection with the settlement.

## BACKGROUND

This action arises from HCI's sale of blood derivative products to defendant New England Allergy.  See Complaint filed on September 6, 2005 (Docket No. 1).  The Complaint alleges that New England Allergy and defendant Dr. Johnson, as guarantor, breached their agreements with HCI by failing to make payments for products ordered from HCI and accepted by Defendants under the terms of said agreements.  To that end, HCI's Complaint alleges claims against New England Allergy for breach of contract, goods sold and delivered, account stated, breach of implied covenant of good faith and fair dealing, and violations of Mass. Gen. L. ch. 93A.  HCI also asserts a claim against Dr. Johnson for his alleged breach of a guaranty agreement.  At the time the Complaint was filed on September 6, 2006, HCI claimed that Defendants owed no less than $846,696 plus interest, costs, and attorneys' fees.  The amount owed to HCI accrues interest at a rate of 1 ½% per month (18% per annum).  With the potential for treble damages under Mass. Gen. Laws c. 93A, Defendants' exposure in the federal action exceeded $3,000,000.

At the request of the parties, the Court ordered mediation.  See Docket No. 11.  On February 17, 2006, HCI and Defendants participated in the Court's mediation program.

Although the matter did not settle on that date, the parties continued to negotiate the terms of a settlement and reached agreement on the material terms of settlement on June 7, 2006. A copy of the Defendants' acceptance of the material terms of the settlement is attached as Exhibit A to the Forbes Decl.

The principal terms of the settlement include total payment by New England Allergy to HCI in the amount of $874,000.00 to be paid as follows: an initial cash payment of $250,000.00 and the remaining $624,000.00 to be paid pursuant to a Promissory Note with payments of $13,000.00 per month for a period of 48 months. The obligations of the Promissory Note are to be secured by the assets of New England Allergy and are to be junior only to the secured position of TD BankNorth's $500,000.00 of credit. Dr. Johnson also agreed to personally guaranty the payment obligations of NEA and agreed to pay all amounts owed by NEA upon any default under the Promissory Note and the Settlement Agreement. Dr. Johnson also agreed that payment obligations of the Promissory Note and the Settlement Agreement are to be secured by a term life insurance policy or polices that cover the life of Dr. Johnson. Defendants also agreed that in the case of default, judgment would enter against the Defendants in the amount of the outstanding balance on the Promissory Note as well as a premium payment in the amount of $400,000.00 See Exhibits A and B to Forbes Decl. Significantly, the present value of the cash obligations of the settlement is less than the current amount due including interest.

After HCI and Defendants agreed to the material terms of the settlement they have been working to finalize all appropriate documentation. The delay in finalizing and executing the Settlement Agreement and required papers has been the result of Defendants' continued failure to provide the necessary information and documents needed to close on the settlement. See Forbes Decl. at para. 3.

From June 2006 to date, HCI has repeatedly requested that Defendants obtain and produce various materials as required under the Settlement Agreement, namely an account control agreement that would permit HCI to perfect its security interest in NEA's bank accounts and a life insurance policy (or policies) in the face amount of at least $1,274,000.00 naming HCI as the primary beneficiary. Copies of various written requests asking for this information and documents are attached as Exhibits C-H to the Forbes Decl.

Specifically, Defendants have failed to provide satisfactory proof of the assignment of a life insurance policy to HCI. Instead, Defendants have recently provided an unexecuted pledge agreement and proof of a policy owned by Carlene Johnson, Dr. Johnson's spouse, which does not fulfill the Defendants' obligations under the Settlement Agreement. See Forbes Decl at para. 5. As has been requested several times, HCI still needs to see the following documents to effect the life insurance security, which Defendants have still not provided:

- A copy of the policy (or policies) with all riders;
- Documents evidencing that HCI is listed as the owner and the primary beneficiary of the policy;
- Confirmation that HCI will be provided with notice of non-payment of any premium owed and notice of intent to terminate; and
- Waivers from other beneficiaries.

See Exhibits C, F-G to Forbes Decl.[2]

On December 22, 2006, Defendants' counsel, for the first time, provided HCI with the contact information for the Dr. Johnson's insurance agent. See Exhibit H to Forbes Decl. Counsel for HCI spoke with the insurance agent, Chris Psaledas at New England Financial, regarding the life insurance. See Forbes Decl. at para. 8. As expected, the broker indicated that

---

[2] The information needed to complete the insurance prong of the settlement was not hindered by the TRO in the State Action.

4

they could not provide HCI with the information need (as detailed above) without written authorization from the Johnsons or a Court Order. Id. Again, counsel for HCI informed Defendants' counsel of this situation. See Exhibits I to Forbes Decl. Despite repeated assurances that information would be forthcoming, and after nearly six months of delay, HCI has not received the required insurance documentation. See Forbes Decl. at para. 9.

As for the account control agreement, on December 21, 2006, Defendants notified HCI of TD BankNorth's final position on whether the bank would execute the account control agreement. See Exhibit G to Forbes Decl. According to Defendants, TD BankNorth told them that "that they will not execute any control agreements with HCI and have informed me that this is not an issue with HCI or Dr. Johnson but they will not execute such an agreement with any of their borrowers." Id.

On December 28, 2006, over six months since the parties agreed to the material terms of the settlement, Defendants made their initial payment to HCI under the terms of the Settlement Agreement in the amount of $250,000.00. See Forbes Decl. at para. 11. While this initial payment constitutes partial performance under the Settlement Agreement, Defendants have yet to provide all of the necessary information and documents needed to close on the settlement. Defendants' next payment is due on or before February 1, 2007.

On January 3, 2007, counsel for Plaintiff conferred with Defendants' counsel pursuant to Local Rule 7.1(A)(2) in an attempt to narrow the issues presented in this motion. During such discussions, Plaintiff's counsel sought the production of certain information, including copies of a letter to New England Financial regarding the insurance pledge and proof of delivery along with the execution of settlement document by noon on January 5, 2007. Counsel for Defendants acknowledged such requests. See Exhibit J to Forbes Decl. Defendants have failed to provide

any of the information sought by the Plaintiff in an effort to resolve this issue without further assistance from the Court.  See Forbes Decl. at para. 13.  Because of the protracted delays in obtaining documents and/or information from Defendants, HCI is left with little choice but to seek relief from the Court.

## ANALYSIS

### I.     The Settlement Agreement Must Be Enforced

It is undisputed that a settlement was reached between HCI and Defendants in the instant action.  Although the final settlement documents have not been executed, the law is clear, where the material terms of settlement have been reached, an unexecuted Settlement Agreement is an enforceable contract that may be specifically enforced.  See Quint v. A.E. Staley Manufacturing Co., 246 F.3d 11, 15 (1st Cir. 2001) (enforcing settlement where material terms were agreed upon and rejecting argument that "there can be no agreement until a document is executed"); Kinan v. Cohen, 268 F.3d 27, 33-34 (1st Cir. 2001) (enforcing settlement where there was no dispute over material terms); Peters v. Wallach, 366 Mass. 622, 628 (1975) (affirming order enforcing unexecuted agreement to settle preexisting claim); see also Correia v. Desimone, 34 Mass. App. Ct. 601, 603-04 (1993) (affirming judgment for specific enforcement of oral settlement agreement); Marshall v. Burchell, 2005 WL 100715, at * 2 (Mass. Super. Ct. Jan. 13, 2005) (enforcing settlement agreement where "the mechanics of settlement were resolved", "the process for exchanging documents had begun", and "all material terms of the agreement had been defined and the parties uniformly expressed their intent to be bound"); Orion Research, Inc. v. Ross, 2003 WL 383250, *2 (Mass. Super. Ct. Jan. 27, 2003) ("Where two parties enter into an oral agreement in court, and that agreement is set to be memorialized in writing at a later date, the oral agreement is enforceable and not contingent upon the written expression").

Here, the parties agreed to the material terms of the settlement in writing on June 7, 2006, expressed their intent to be bound, and began exchanging documents to complete the transaction. See Exhibit A to Forbes Decl. Defendants also have made the initial $250,000.00 payment to HCI as called for by the Settlement Agreement. The only thing that remains to be done is the Defendants' obtaining and providing of a formal letter from the bank regarding the control agreement and the insurance materials as set forth above. As such, NEA and Dr. Johnson are bound to the terms of the settlement and the Court should order enforcement of the settlement, including ordering Defendants to provide the documents and/or information necessary to execute the settlement with HCI.

### II.    Request for Costs and Attorneys' Fees

Defendants' knowing and intentional delay and refusal to comply with the terms of their agreement with HCI, in complete disregard of their known contractual obligations and with the intent to secure benefits for themselves -- namely, failing to provide the necessary documentation to complete the settlement between the parties and stringing HCI along regarding settlement -- constitutes both unfair and deceptive acts or practices in violation of G.L. c. 93A and breach of the implied covenant of good faith and fair dealing. See Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474-75 (1991) ("conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes unfair acts or practices for 93A purposes"); Drucker v. Roland Wm. Jutras Assocs., 370 Mass. 383, 385 (1976) (the implied covenant of good faith and fair dealing provides "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract….")(citations omitted).

Therefore, HCI requests its attorneys' fees and costs associated with the instant motion and an order that Defendants take appropriate actions to finalize and execute the necessary documents to complete the settlement.[3]

## CONCLUSION

For the foregoing reasons, Health Coalition, Inc. respectfully requests that the Court grant its Renewed Motion to Enforce the Settlement Agreement and:

    a)    enter the Settlement Agreement as an Order of Court;

    b)    order that Defendants perform under the Settlement Agreement, including without limitation, to provide the documents and/or information necessary to comply with the settlement with HCI, and to execute the appropriate documents to effect the settlement between HCI and Defendants;

    c)    award Health Coalition its costs, including its attorneys' fees, incurred in making this motion; and

    d)    grant such other and further relief as the Court deems just and proper.

---

[3] This conduct is separate and apart from the unfair and deceptive conduct already alleged in the Complaint.

        Respectfully submitted,

        HEALTH COALITION, INC.,

        By its attorneys,


/s/ Brian M. Forbes
Jeffrey S. King (BBO # 559000)
  jeffrey.king@klgates.com
Brian M. Forbes (BBO# 644787)
  brian.m.forbes@klgates.com
Stacey L. Gorman (BBO# 655147)
  stacey.gorman@klgates.com
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
Tele:  (617) 261-3100
Fax:  (617) 261-3175

Dated:  January 5, 2007

9

**CERTIFICATE OF SERVICE**

     I hereby certify that this document, filed on January 5, 2007 through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 5, 2007.


Peter J. Haley
Leslie F. Su
Gordon Haley LLP
101 Federal Street
Boston, MA 02110

William H. DiAdamo
DiAdamo Law Office, LLP
40 Appleton Way
Lawrence, MA 01840

Arthur McCabe
Arthur McCabe & Associates, P.C.
1 Elm Square
P.O. Box 990
Andover, MA 01810


                                      /s/ Brian M. Forbes