UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HEALTH COALITION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-cv-11816-MEL |
| ) | |
| NEW ENGLAND ALLERGY ASTHMA ) | |
| IMMUNOLOGY & PRIMARY CARE, ) | |
| P.C. and THOMAS F. JOHNSON, ) | |
| ) | |
| Defendants. ) | |

OBJECTION OF NEW ENGLAND ALLERGY ASTHMA IMMUNOLOGY
& PRIMARY CARE, P.C. TO PLAINTIFF'S
RENEWED MOTION TO ENFORCE SETTLEMENT AGREEMENT

The Defendant New England Allergy Asthma Immunology & Primary Care, P.C. ("NEA") objects to the Renewed Motion of Health Coalition, Inc. to Enforce Settlement Agreement. In support of its objection, NEA states the following:

1. Health Coalition, Inc. ("HCI") in its Complaint in this action seeks recovery of $846,696.39 for intravenous immunoglobulin products (IVIG) supplied to the NEA medical practice and allegedly guaranteed by the defendant Johnson.

2. Since the commencement of the case, NEA has sought to reach agreement with HCI on terms which would resolve the matter consistent with NEA's ability to make payment.

3. In the spring of 2006, the parties reached agreement on the general outlines of a settlement. HCI took responsibility for documenting the settlement agreement.

4. As of the time of filing its second motion to enforce the settlement agreement, HCI has still failed to sign or deliver to NEA a signed settlement agreement.

5.  Despite the lack of a signed settlement agreement, NEA has unilaterally undertaken to perform under the terms of the agreement, NEA has paid to HCI the initial payment of $250,000 and intends to make the required monthly payments of $13,000 called for under the terms of the agreement.

6.  NEA was previously prevented from entering into the settlement agreement because of a pending state court action (<u>Atlantic Biologicals Corporation v. New England Allergy Asthma Immunology & Primary Care, P.C., et al</u>) and the injunctive relief entered in that action. With no small effort or expense, NEA was able to settle that action and remove the impediment of the injunction as of November 27, 2006.

7.  HCI has since refused to formally close its settlement agreement with NEA because in the course of documenting the settlement agreement, HCI has unilaterally determined that NEA's agreement to provide HCI with a security agreement in all of NEA's assets, junior to that of NEA's bank lender, requires NEA to also provide HCI with a so called "account control agreement," an agreement giving HCI the right to control the bank accounts of NEA upon default. This request is inconsistent with normal commercial lending practices and is not something that any primary lender is ever likely to acquiesce to. While account control agreements are not unknown to the world of commercial lending and there are undoubtedly some instances where they may have been used to benefit a junior lender, it would be difficult to identify any comparable circumstances where they have been put in use. The commercial reality is that a local bank lender with a $500,000 loan to a small medical practice is not going to agree to provide a vendor of its borrower with an account control agreement to secure a $624,000 promissory note. This reality may not be evidenced by legal citation or corporate finance

textbooks, but it is true enough nonetheless and readily apparent to those toiling in the lower atmospheric levels of local commerce.

8. Counsel to NEA sent a message to HCI's counsel informing them of this fact and sent to them the original email message from the bank lender relaying this information. As set forth on Exhibit J to the Declaration of Brian Forbes [Docket No. 32], counsel to HCI wrote back and stated:

> Please note that we are in receipt of your communications with TD BankNorth related to the Account Control Agreement as we requested. We will be in touch regarding this issue in the near future.

9. No further response has been made.

10. The final issue which HCI complains of is the lack of documentation evidencing the insurance pledge. HCI has, perhaps predictably, requested a whole host of documents associated with the policy which NEA does not have. NEA, through the policy holder, has requested all of this information from the insurance company.

11. HCI should strike the account control agreement from the settlement agreement, sign the settlement agreement and accept the insurance pledge as made and any further written agreement from NEA and the policy holder evidencing their agreement to take any and all further steps reasonably necessary to carry out the terms of the pledge. These are not difficult things and they are certainly not things which require the intervention of the Court.

12. NEA has done nothing to impede the settlement. HCI has filed 57 pages of pleadings with the Court, but it has not signed the settlement agreement.

13. HCI has an obligation to act in a commercially reasonably manner in documenting the settlement. Agreements are reached not by executive fiat, command, or court order, but by parties working cooperatively towards a shared end. NEA has amply demonstrated

its intent to reach agreement and has indeed performed under the agreement. It would ill serve that purpose to attempt to characterize HCI's behavior.

    Wherefore, NEA prays that the Court deny the Motion of Health Coalition, Inc. and grant such other and further relief as is just.

NEW ENGLAND ALLERGY ASTHMA
IMMUNOLOGY & PRIMARY CARE, P.C

By its attorneys,


/s/ Leslie F. Su
Peter J. Haley (BBO No. 543858)
Leslie F. Su (BBO No. 641833)
Gordon Haley LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 261-0100
(617) 261-0789 – Facsimile

Dated: January 9, 2007

P:\Clients\NE Allergy Asthma\Health\Plead\Obj to Second Mot f Ord to Enforce Settlement Agr.doc