UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH COALITION, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) Civil Action No. 05-cv-11816 MEL <br> NEW ENGLAND ALLERGY ASTHMA ) <br> IMMUNOLOGY & PRIMARY CARE, ) <br> P.C. and THOMAS F. JOHNSON, ) <br> Individually ) <br> ) <br> Defendants. ) <br> ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF
<u>HEALTH COALITION, INC. FOR CIVIL CONTEMPT</u>**

Plaintiff Health Coalition, Inc. ("HCI") submits the following memorandum in support of its Motion for Civil Contempt. Despite the Court's Order dated January 17, 2007 (the "January 17 Order"), which entered the Settlement Agreement and Mutual Release between HCI and Defendants New England Allergy Asthma Immunology & Primary Care, P.C. ("New England Allergy") and Thomas F. Johnson ("Dr. Johnson") (collectively "defendants") as an Order of the Court and ordered defendants to use their "best efforts" to provide HCI with information and documents necessary to effect the life insurance security that is part of the Settlement Agreement, defendants have violated the January 17 Order and have breached the Settlement Agreement. Throughout the course of this litigation, defendants have engaged in a pattern of delay and obstruction, requiring HCI to seek assistance and relief from the Court.[1] Each step of

---

[1]   See e.g., Motion to Compel (Docket No. 12) and Order granting motion (Docket No. 20); Motion to Enforce Settlement (Docket Nos. 22-23) and Order granting motion in part (Docket No. 29); Motion to Enforce Settlement (Docket Nos. 30-31) and Order grating motion in part (Docket No. 35).

1

the way, the Court has intervened to alleviate the delay and impose deadlines on defendants to ensure compliance. True to form, once again, defendants are impeding the completion of necessary settlement documents. This time, however, defendants are doing so in violation of the January 17 Order. For the reasons set forth below, the Court should find defendants in civil contempt of the January 17 Order and should award HCI daily civil fines, its attorneys' fees and costs, and impose other appropriate sanctions for defendants' conduct.

## **BACKGROUND**

This action arises from HCI's sale of blood derivative products to defendant New England Allergy. See Complaint filed on September 6, 2005 (Docket No. 1). The Complaint alleged that New England Allergy and Dr. Johnson, as guarantor, breached their agreements with HCI by failing to make payments for products ordered from HCI and accepted by defendants under the terms of said agreements. To that end, HCI's Complaint alleged claims against New England Allergy for breach of contract, goods sold and delivered, account stated, breach of implied covenant of good faith and fair dealing, and violations of Mass. Gen. L. ch. 93A. HCI also asserted a claim against Dr. Johnson for his alleged breach of a guaranty agreement. At the time the Complaint was filed on September 6, 2006, HCI claimed that defendants owed no less than $846,696 plus interest, costs, and attorneys' fees. The amount owed to HCI accrues interest at a rate of 1 ½% per month (18% per annum). With the potential for treble damages under Mass. Gen. Laws c. 93A, defendants' exposure in the federal action exceeded $3,000,000.

After months of negotiations, the parties reached agreement on the material terms of settlement on June 7, 2006. See Declaration of Brian M. Forbes dated March 7, 2007 ("Forbes Decl.") at para. 2. The principal terms of the settlement include total payment by New England Allergy to HCI in the amount of $874,000.00 to be paid as follows: an initial cash payment of

2

$250,000.00 and the remaining $624,000.00 to be paid pursuant to a Promissory Note with payments of $13,000.00 per month for a period of 48 months. Specifics of the settlement are set forth in the Settlement Agreement and the exhibits attached thereto (Exhibit B to Forbes Decl.) and are further detailed in HCI's prior Motions to Enforce the Settlement Agreement (See Docket Nos. 22-23, 30-31). Significantly, the present value of the cash obligations of the settlement are less than the current amount due HCI including interest.[2]

**The Life Insurance Security**

One of the material terms of the Settlement Agreement is that the payment obligations of the Promissory Note and the Settlement Agreement are to be secured by a life insurance policy or polices that cover the life of Dr. Johnson. See Forbes Decl. at para. 5. The Settlement Agreement specifically provides, in relevant part:

> 5. **The payment obligations of the Promissory Note and Premium Payment are also to be secured by a term life insurance policy or policies that cover the life of Dr. Johnson, with HCI named as the first beneficiary in line for the payment in full on the total value of the Promissory Note and Premium Payment. Said policy or policies are to have a face value of at least $1,274,000.00 and must remain in place with all premiums paid current until the Promissory Note and Premium Payment (if appropriate) are paid in full. As a named beneficiary**, **HCI must be provided with notice of non-payment of any premium owed and notice of any intent to terminate the insurance. In such event, HCI shall have the right to continue to make premium payments on said policy or policies in the event any premium payment is not made, which payments, if made by HCI, will be added to the entire balance owed to HCI.**

---

[2] On December 28, 2006, over six months after the parties agreed to the material terms of the settlement, defendants made the initial payment of $250,000.00 to HCI. See Forbes Decl. at para. 4. Defendants also made a monthly payment on January 30, 2007 to HCI in the amount of $13,000.00 for the payment due on or before February 1, 2007, in accordance with the Promissory Note and Settlement Agreement. Id. On March 1, 2007, however, HCI received from New England Allergy a company check in the amount of $13,000.00 for the March payment. Id. This form of payment is not in compliance with the Settlement Agreement, which expressly states that all monthly installments of $13,000.00 must be made by "certified bank check or wire in readily available funds by the first of each month." See Exhibit B to Forbes Decl. at para. 2 Defendants' non-compliance with the Settlement Agreement highlights the importance of getting the required insurance security in place, before any further breach of the Settlement Agreement occurs.

> **Upon the death of Dr. Johnson, the entire balance then owed on the Promissory Note will become immediately payable to HCI out of the policy proceeds.** In addition, if the obligation to pay the Premium Payment has attached, the policy proceeds shall also be used to pay the Premium Payment.

See Exhibit B to Forbes Decl at para. 5 (emphasis added). Dr. Johnson also executed a Pledge Agreement, in order to perform under the Settlement Agreement, pledging a life insurance policy to HCI and to "assign the death benefits under such Policy to HCI as additional collateral to secure the payment of that certain promissory note dated June 7, 2006 (the "Note") made by NEA to HCI and guaranteed by the Insured [Dr. Johnson] **in accordance with the terms of the Settlement Agreement**." See Exhibit C to Forbes Decl (emphasis added).[3]

From June 2006 through January 2007, HCI repeatedly requested that defendants obtain and produce various materials as required under the Settlement Agreement, including a life insurance policy (or policies) in the face amount of at least $1,274,000.00 naming HCI as the primary beneficiary. See Exhibits D through K to Forbes Decl. Prior to HCI filing its Renewed Motion to Enforce Settlement Agreement, defendants had only provided the unexecuted pledge agreement and proof of a policy owned by Carleen Johnson (as trustee owner), Dr. Johnson's spouse, which did not fulfill the defendants' obligations under the Settlement Agreement. See Forbes Decl. at para. 9.

**The January 17 Order**

On January 17, 2007, the parties were before the Court on HCI's Renewed Motion to Enforce Settlement Agreement. See Forbes Decl. at para. 11. After hearing from all parties, the Court ordered that the Settlement Agreement between the parties is to be entered as an Order of

---

[3] While the Pledge also states that "The Insured shall execute and shall cause the issuer of the Policy to execute the issuer's standard form of assignment evidencing transfer of the Policy to HCI," the insured, Dr. Johnson, did not execute any assignment. See Exhibit C to Forbes Decl. For the reasons detailed infra, the Assignment as drafted and executed by Carleen Johnson, as Trustee Owner, is in conflict with the terms of the Settlement Agreement.

4

the Court and further ordered that "Defendants shall perform under the Settlement Agreement, including without limitation, by providing documents and/or information necessary to comply with the settlement with HCI and by executing the appropriate documents to effect the settlement between HCI and Defendants."  See Exhibit L to Forbes Decl. (January 17 Order) (Docket No. 35).  Additionally, with respect to the life insurance security, the Court specifically ordered that:

> Defendants New England Allergy Asthma Immunology & Primary Care, P.C. and Thomas F. Johnson shall use its best efforts to provide plaintiff HCI with the information and/or documents listed below, no later than January 31, 2007:
> - Insurance information
>   - A copy of the insurance policy (or policies) with all riders;
>   - Documents evidencing that HCI is listed as the owner and the primary beneficiary of the policy;
>   - Confirmation that HCI will be provided with notice of non-payment of any premium owed and notice of intent to terminate; and
>   - Waivers from other beneficiaries.

See Exhibit L to Forbes Decl. at para. 2.  While the Court determined at the January 17, 2007 hearing that the payment of attorneys' fees and costs for HCI having to bring the Renewed Motion to Enforce Settlement Agreement were not appropriate at that time, the Court informed the parties that such relief may be appropriate in the future.  See Forbes Decl. at para. 13.

**Defendants' Non-compliance with the January 17 Order**

On January 31, 2007, the date set forth in the Court's Order for compliance, defendants forwarded to HCI for the first time executed versions of the settlement documents.  See Forbes Decl. at para. 14.  Significantly, the required life insurance documentation and information was not provided to HCI.  See Forbes Decl. at para. 15.  Rather, the cover letter from defendants' counsel stated that the "completed assignment and information had been sent out yesterday, January 30, 2007, by first class mail" from the insurance agent New England Financial to

5

Carleen Johnson.  See Exhibit M to Forbes Decl.  Given that the January 31st deadline expired, HCI made repeated requests to defendants' counsel to obtain copies of the insurance documents and information from the insurance company and/or the Johnsons.  See Forbes Decl. at para. 16 and Exhibits N and O to Forbes Decl.

### *The Defective Assignment*

On February 6, 2007, nearly one week after the Court imposed deadline, defendants provided, for the first time, a PDF copy of an Assignment of Life Insurance Policy as Collateral executed on February 6, 2007 by Carleen Johnson, Trustee Owner ("Assignment").  See Forbes Decl. at para. 17 and Exhibit P.  The Assignment, however, does not comply with the defendants' obligations under the January 17 Order or the Settlement Agreement between the parties.  See Exhibit P to Forbes Decl. and Forbes Decl. at para. 18.  In fact, several of the provisions and conditions of the Assignment conflict with the terms of the Settlement Agreement, lack clarity, and require revision.

Counsel for HCI identified its specific concerns with the Assignment and lack of documentation in a detailed email dated February 8, 2007.  See Forbes Decl. at paras. 19-20 and Exhibit Q to Forbes Decl.  Problems with the Assignment identified by HCI are numerous and include:

- **(A)** **Lack of Insurance Documents:** Defendants still have not produced a copy of the insurance policy (with riders) itself.  Without a copy of the insurance policy and all riders, HCI cannot be assured that the policy is suitable for the settlement.

- **(B)** **The Assignment Does Not Bind Defendants/HCI has No Agreement with the Assignor (Section D):** The assignment of the policy is from "Carleen Johnson, Trustee Owner" for the "Johnson Trust Agreement dtd 4-12-00." The assignment from Carleen Johnson raises several issues, including a conflict between the Settlement Agreement and the provisions of the Assignment.  Notably, **Section D** of the Assignment states:

    > This assignment is made and the policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the

6

>   Assignee, either now existing or that may hereafter arise between any of the undersigned and the Assignee with respect to the above policy (all of which liabilities secured or to become secured are herein call "Liabilities").

See Exhibit P to Forbes Decl.

- **(1)** The "undersigned" identified is Carleen Johnson, Trustee Owner, not Dr. Johnson. Because the liability to HCI is from NEA/Dr. Johnson, not Carleen Johnson or the Trust, the Assignment is wholly deficient, as it purports to secure liabilities that do not exist.

- **(2)** It is also not clear that Carleen Johnson has the power as trustee to assign the policy to HCI. If the trust is an irrevocable trust, there may be restrictions on her ability to assign the policy. HCI has asked for a copy of the trust agreement to ensure that Mrs. Johnson has such rights. To date, despite repeated requests, evidence that Mrs. Johnson has the power to assign the policy to HCI has not been provided.

**(C)** **Primary Beneficiary Designation**: While the Assignment as drafted, permits HCI as Assignee, "the sole right to collect from the Insurer the net proceeds of the policy when it becomes a claim by death or maturity" (See Exhibit P to Forbes Decl. at Section B), the Assignment nevertheless permits the Assignor, Carleen Johnson, as non-party to action and settlement agreement, "the right to designate and change the beneficiary." See Exhibit P to Forbes Decl. at Section C. At the same time, HCI had not been provided with documents/information that HCI is the primary beneficiary of the policy and that there are appropriate waivers from other beneficiaries, if necessary.

**(D)** **Key Notice Requirements are Absent From the Assignment:** Notably absent from the Assignment is assurance that HCI will be provided with notice of non-payment of any premium owed and notice of intent to terminate, as is required under the Settlement Agreement. Exhibit B to Forbes Decl at para. 5. Also, per the Settlement Agreement, the Assignment must reflect that in the event any premium payment is not made, HCI shall have the right to continue to make premium payments on the policy, which payments will be added to the entire balance owed to HCI. Id. These provisions are significant because: (1) the failure to make an insurance premium payment constitutes a breach of the settlement agreement and triggers accelerated payment obligations (see id. at para. 7); and (2) HCI requires notice in order to make payments to ensure that the policy remains current to cover any balance owed.

**(E)** **Superior Liens on the Policy:** The reference in Section A that the Assignment is "subject to all the terms and conditions of the policy and to all superior liens, if any, which the Insurer may have against the policy" - HCI must be provided with information regarding whether there are any superior liens, which may ultimately

7

        make this policy unsuitable.  HCI has not been provided with such information from defendants or the insurance company.  See Exhibit P to Forbes Decl.

  **(F)**    **Other rights excluded by the Assignment and retained by the Assignor (Section C):**  In addition to the right to designate and change the beneficiary, certain rights are excluded from the Assignment to be retained by the Assignor -- rights that appear to diminish the value of the policy to the detriment of HCI, and conflict with the obligations of the Settlement Agreement.

  **(G)**    **Conflicts between the Assignment and the Settlement Agreement:**  Section J of the Assignment states, "in the event there is conflict between the provisions of the assignment and the provisions of the note or other evidence of any Liability, with respect to the policy or rights of collateral security therein, the provisions of the assignment shall prevail."  This provision is unacceptable – first, Mrs. Johnson is not bound by the promissory note, the settlement agreement, or any other evidence of liability to HCI, and second, the Assignment must yield to, and not trump, the settlement agreement, promissory note, or any liability to HCI.

See Forbes Decl. at para. 20.

On February 9 and 13, 2007, counsel for HCI again noted its concerns with the Assignment and the continued lack of insurance documentation, and notified defendants' counsel of its intent to seek relief from the Court due to defendants' continue pattern of delay and non-compliance.  See Exhibits R and S to Forbes Decl.  Only after HCI asked for a Rule 7.1 conference did defendants make some further efforts to have changes made to the Assignment.  To that end, defendants' counsel indicated in a voicemail, a telephonic Rule 7.1 conference, and through email correspondence defendants' willingness to modify the Assignment because the Assignment was not consistent with the Settlement Agreement.  See Exhibit T and U to Forbes Decl.  Counsel for defendants indicated that, based on prior communications with the insurance company, he reasonably expected "that other than section J they will agree – and that as far as I know section J is their only issue" to the modifications to the Assignment."  See Exhibit T to Forbes Decl.  The parties then worked together to send a letter to New England Life Insurance Company outlining the problems with the Assignment and why it did not satisfy the requirements of the Settlement Agreement.  See Forbes Decl. at para. 24.  A copy of the final

letter to Kathleen M. Topp, New England Life Insurance Company dated February 16, 2007, is attached to the Forbes Decl. as Exhibit W.

Contrary to defendants' counsel's representation that the insurance company had concerns with respect to only one of the proposed amendments to the Assignment, on February 26, 2007, defendants' counsel forwarded to counsel for HCI a letter from Ms. Topp stating that the insurance company would not amend its collateral agreement form as requested in the February 16, 2007 letter "because it would take away the rights of the policy owner." See Exhibit X to Forbes Decl. Ms. Topp further suggested that a "change of owner" may be required. Id.

Upon receipt of the letter from Ms. Topp, HCI again notified defendants that they were still in violation of the Settlement Agreement and January 17 Order. See Exhibit Y to Forbes Decl. HCI also further suggested alternatives, including change of ownership of the policy (which was also suggested by the insurance company), to effect an insurance security that is in compliance with the Settlement Agreement. See id. Defendants have rejected that proposal and now take the wholly unreasonable position that the "assignment form provided by MetLife is again more than sufficient for the purposes of the settlement agreement." See Exhibit Z to Forbes Decl.

Again, the main problem with the Assignment as drafted is that it does not conform to the terms of the Settlement Agreement, and significantly, Carleen Johnson, either individually, or as a trustee, is not a party to the underlying action or the Settlement Agreement, or the January 17 Order. To date, defendants have failed to provide any of the insurance information sought by the HCI, including the insurance policy itself, or sufficiently address the concerns raised by HCI in various correspondence and telephone conversations in an effort to resolve this issue without

9

further assistance from the Court. Defendants have had nearly nine months to complete their obligations with respect to the details of this settlement, including nearly seven weeks since the Court's January 17 Order, and nearly five weeks since the January 31, 2007 deadline. Because of defendants' continued failure to comply with the Court's Order, defendants' current position that the Assignment is sufficient, and the protracted delays in obtaining documents and/or information from defendants in breach of the Settlement Agreement, HCI is left with little choice but to seek relief from the Court again.

## ANALYSIS

A party seeking to establish civil contempt must prove noncompliance with a court order "by clear and convincing evidence and the underlying order must be clear and unambiguous in its terms." Gemco LatinoAmerica, Inc. v. Seiko Time Corporation, 61 F.3d 94, 98 (1st Cir. 1995); see also Dystar Corp. v. Canto, 1 F. Supp. 2d 48, 54 (D. Mass. 1997). Once a prima facie case of contempt has been established, the contemptor bears the burden of proving that it made "all reasonable efforts" to comply with the court's order. In re Power Recovery Systems, Inc., 950 F.2d 798, 803 (1st Cir. 1991); see also Dystar Corp., 1 F.Supp.2d at 55 ("The burden of proving impossibility falls on [the charged parties] and that burden is difficult to meet.") (internal quotation marks and citations omitted)); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2960 at 381 ("Once a prima facie showing of violation has been made, the charged party has the burden of proving inability to comply"). "'Good faith'… efforts do not automatically constitute sufficient legal excuse for failing to carry out the district court's order." Morales-Feliciano v. Parole Bd. of Com. of P.R., 887 F.2d 1, 5 (1st Cir. 1989).

As set forth in detail below, this Court's January 17 Order clearly and unambiguously ordered defendants to provide the insurance information necessary to complete the settlement.

Clear and convincing evidence also shows that defendants have violated the January 17 Order by failing to provide the majority of the insurance information and by failing to cure obvious problems contained in the Assignment. For these reasons, the Court should find defendants in civil contempt.

> I. **The Court's January 17 Order Was Clear And Unambiguous**

A clear and unambiguous order is one that is "specific about what is to be done or avoided" and "who is expected to behave in the indicated fashion." Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 17 (1st Cir. 1991). Here, the January 17 Order clearly and unambiguously ordered the defendants to comply with the terms of the settlement and produce the required insurance information, which after nearly nine months of knowing of the need for the information, they have yet to produce.

The January 17 Order specifically required the defendants to "perform under the Settlement Agreement, including without limitation, by providing documents and/or information necessary to comply with the settlement with HCI and by executing the appropriate documents to effect the settlement between HCI and Defendants." More importantly, the January 17 Order also required defendants to use their best efforts to provide certain specified documents by January 31, 2007, including a copy of the relevant policy with all riders, documents listing HCI as the primary beneficiary of the policy, proof of future notification of non-payment and intent to terminate, and waivers of beneficiaries. Given the level of specificity contained within the January 17 Order, it is unambiguous that the Court expected the defendants to take significant steps to finalize all aspects of the settlement and work to obtain the needed and appropriate insurance documentation. It is also clear that the Court expected the defendants to obtain, at a minimum, the documents listed in the January 17 Order.

## II. There Is Clear And Convincing Evidence That Defendants' Actions Constitute Contempt

The plain facts demonstrate that defendants have consciously violated the requirements of the January 17 Order. Surely the Court expected (and demanded) that defendants do more than obtain an Assignment that fails to meet the requirements of the Settlement Agreement and the Court's own Order. Here, defendants have taken few steps, and certainly have not used their best efforts, to comply with the insurance requirements of the January 17 Order and the Settlement Agreement.

On January 31, 2007, the last day to comply with the January 17 Order, defendants forwarded to HCI executed copies of the settlement document. See Exhibit M to Forbes Decl. Although this package included a "Pledge Agreement," it lacked any of the insurance documentation as required under the January 17 Order. Id. Instead, defendants' counsel briefly discussed the steps taken by the defendants to obtain the required information, stating that the "assignment and *information* had been sent out yesterday" and would be forwarded to HCI upon receipt. Id. A week later, on February 6, 2007, defendants' counsel forwarded a copy of the Assignment to counsel for HCI. See Exhibit P to Forbes Decl.

The Assignment, however, was internally contradictory and also failed to meet the requirements of the Settlement Agreement and the January 17 Order. See Exhibit P to Forbes Decl. On February 8, 2007, HCI's counsel informed the defendants about the Assignment's deficiencies and sought production of the remaining of documents required under the January 17 Order. See Exhibit Q to Forbes Decl. At first, defendants failed to acknowledge the significance and importance of HCI's concerns, and instead deemed the issues raised by HCI as "minor details of the settlement." See Exhibit R to Forbes Decl. Only after HCI asked for a Rule 7.1 conference and cautioned defendants that it was on the eve of filing a motion seeking relief from

the Court did defendants make some further efforts to have changes made to the deficient Assignment.  <u>See</u> Exhibit T to Forbes Decl.  When the insurance company refused to make any of the requested changes to the Assignment (despite defendants' earlier representations that the insurance company was willing to make most changes to the assignment), defendants have now simply declared that the Assignment "is more than sufficient for purposes of the settlement agreement."  <u>See</u> Exhibit Z to Forbes Decl.  As detailed, *supra*, however, the Assignment as drafted is inaccurate, inconsistent, and does not conform with the Settlement Agreement or the Court Order.

Equally important, defendants still have not yet produced a copy of the insurance policy, designation of any other beneficiaries of the policy (or the Trust), waivers from any other beneficiary of the policy, or confirmation that HCI will be provided with notice of non-payment of any premium owed and notice of intent to terminate.

The facts clearly, and convincingly, demonstrate that defendants have not used their "best efforts" to obtain the insurance information and an appropriate insurance security.  In response to the January 17 Order, the defendants have neither acted with speed nor urgency.  Given that defendants have known about the insurance provision and its requirements since they agreed to the settlement in June 2006, there is no reason that defendants have not yet complied with the terms of the January 17 Order and the Settlement Agreement, much less failed to provide a copy of the insurance policy.  At the same time, for the reasons detailed above, the Assignment itself does not conform with, and in fact conflicts with, the terms of the Settlement Agreement.  In light of defendants' knowledge of the insurance requirements, the current unexplained delay and production of an Assignment that contradicts specific terms of the Settlement Agreement cannot be seen as defendants' use of best efforts.  As such, there is clear and convincing evidence that

defendants' breached the January 17 Order and the Settlement Agreement (which was incorporated into the January 17 Order).

### III. Defendants Cannot Establish That They Took Reasonable Efforts to Comply With the January 17 Order

Defendants cannot demonstrate that they have taken all reasonable efforts to comply with the Court's Order.  See In re Power Recovery Systems, Inc., 950 F.2d at 803; see also Dystar Corp., 1 F. Supp. 2d at 55.  As discussed above, defendants were aware of their obligations under the Settlement Agreement, including the assignment of the insurance policy, since June 2006.  Defendants have not fulfilled their obligations and have not provided any credible explanation for their failure to perform.  As such, defendants cannot show that they made all reasonable efforts to comply with the January 17 Order.

Defendants may argue that they acted in good faith and could not coerce its insurer to act any faster or to modify the Assignment.  However, "'[g]ood faith'…efforts do not automatically constitute sufficient legal excuse for failing to carry out the district court's order." Morales-Feliciano, 887 F.2d at 5.  "Although it is true that a party may defend its failure to comply with a court order on the basis that compliance is impossible, 'self-induced inability…does not meet the test." Dystar Corp., 1 F. Supp. 2d at 55.  Defendants' arguments of good faith or impossibility must fail because it has had over eight months to perform under the Settlement Agreement and have had control over these issues:

- Defendants could have, and should have, alerted its insurer about the appropriate assignment to HCI months ago;

- Defendants could have, and should have requested the insurance policy long ago; and

- Defendants could now change the owner of the insurance policy or purchase a new life insurance policy for the benefit of HCI and including within that policy all of the terms and conditions required under the Settlement Agreement.

14

Given that the defendants were well aware of the insurance provisions when it entered into the settlement and that the January 17 Order was issued to force defendants to comply with their settlement obligation, defendants' actions are not good faith efforts, but rather a continuation of their pattern of non-compliance, making a finding of contempt particularly appropriate here.  Where one party has a history of intransigence toward another, the Court may consider past bad acts in determining whether good faith efforts have been used.  See Nat. Labor Relations Board v. Hospital San Francisco, 989 F.2d 484 (1st Cir. 1993) (stating "were we writing on a clean slate, the hospital's contention [of de minimis effect] might be worthy of closer consideration.  Yet this is the third occasion in recent years where the hospital has been deemed guilty of unfair labor practices").

Here, defendants' past acts illustrate a pattern of non-compliance.  To date, defendants' actions have necessitated the filing of a Motion to Compel and two Motions to Enforce the Settlement.  On each occasion, the Court has ruled, in substantial part, for HCI and ordered the defendants to take the necessary steps to proceed with discovery and finalize the Settlement Agreement.  At that same time, as recent as March 1, 2007, defendants sent a payment to HCI by company check, rather than by wire transfer or certified bank check, in violation of the Settlement Agreement.  Now, HCI must once again seek relief from the Court because the defendants have still failed to provide the insurance information necessary to effectuate the settlement.  Although defendants will point to the steps undertaken to resolve these issues, the Court cannot, in light of defendants' past violations, find that such efforts constitute good faith, particularly where the defendants have flatly rejected the resolutions proposed by HCI and the insurance company.

    **IV.**    **HCI is Entitled to Sanctions Including Daily Fines and Attorneys' Fees and Costs Incurred As a Result Of Defendants' Contempt**

15

In the civil contempt setting the Court may impose monetary sanctions for either or both of the following reasons: (1) to coerce compliance with a court order; (2) to compensate a party for losses suffered as a result of noncompliance. See United States v United Mine Workers, 330 U.S. 258, 303-04 (1947).  The court has broad discretion in determining what amount will ensure compliance and may include daily or weekly fines that increase for each period of noncompliance.  See, e.g., Power Recovery, 950 F.2d at 803 (upholding $670 per day penalty for failure to comply in addition to $330 sanction representing compensation for actual loss); Pereira v. Narragansett, 135 F.R.D. 24 (D. Mass. 1991)(in the context of violation of discovery orders, imposing punitive sanctions of $2,500).

Without the life insurance security in place, HCI has been harmed and will be harmed on an ongoing basis.  The life insurance security is a vital element of the Settlement Agreement.  As long as Dr. Johnson lives, it is likely that his practice, New England Allergy will remain a viable entity.  Should Dr. Johnson die however, prior to New England Allergy making full payment on the Promissory Note (which requires monthly payments over a four-year period and for which Dr. Johnson has personally guaranteed, see Exhibit B to Forbes Decl.), New England Allergy is likely to cease as a viable entity and is at risk for defaulting on its obligations to HCI.  To that end, the parties agreed to the life insurance security, to protect HCI's interests and to alleviate the risks involved should Dr. Johnson pass away prior to defendants' satisfaction of their obligations under the Promissory Note and Settlement Agreement.  Each day without the adequate life insurance security in place, HCI is harmed by the risk it incurs should defendants fail to meet their obligations under the Settlement Agreement and Promissory Note.

Here, defendants can easily purge their contempt, with the simple act of providing to HCI a life insurance policy and other required information that conforms with the Settlement

16

Agreement and the January 17 Order. As such, in order to coerce defendants' long overdue compliance and to compensate HCI for harm suffered, HCI requests that the Court impose a daily fine in the amount of $1000 to be paid to HCI until defendants are complaint with the Court Order and Settlement Agreement.[4]

In addition to monetary fines, courts may also award the complainant attorneys' fees and other costs incurred in proving the other party's contempt. See Dystar Corp., 1 F. Supp. 2d at 58; see also Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2960 at 369-370 (positing that the relief granted in contempt proceedings often includes "an award of costs and attorneys' fees"). The majority of circuits have held that a party's conduct need not be willful to support an award of attorneys' fees and costs. Dystar Corp., 1 F. Supp. 3d at 58-59. Even if the Court were, however, to require evidence of willful conduct, HCI has met that standard. As demonstrated by defendants' lengthy failure to comply, defendants' conduct certainly constitutes "'intentional action taken with at least callous indifference for the consequences.'" Id. at 59 (quoting Sizzler Family Steak Houses v. Western Sizzlin Steak, 793 F.2d 1529, 1535 (11th Cir. 1986)).

In short, HCI should be made whole for the expenses it incurred in dealing with defendants' actions and establishing defendants' contempt. HCI has incurred significant attorneys' fees and costs as a result of defendants' failure to comply with the terms of the January 17 Order and the Settlement Agreement. To date, HCI's counsel has engaged in numerous communications with defendants' counsel seeking the required insurance documentation, has parsed through the defective Assignment form, identified numerous

---

[4] Should the Court feel that that entire amount is not necessary as a compensatory fine, we request that the Court allocate that amount between compensatory fine to be paid to HCI and coercive fine to be paid to the Court.

17

problems associated with the purported Assignment, and has taken steps, including the instant Motion, to enforce defendants' compliance with the January 17 Order. Because the facts demonstrate that defendants' failure to produce the insurance documentation was done with indifference for the consequences, HCI is entitled to all fees and costs associated with procuring, reviewing, and discussing the insurance information as well as in bringing this Motion for Civil Contempt.

## **CONCLUSION**

For the foregoing reasons, Health Coalition, Inc. respectfully requests that the Court grant its Motion for Contempt and:

(a) Find that the defendants' have violated the Court's Order dated January 17, 2007 and reissue the Order confirming its remains in full force and effect;

(b) Adjudge the defendants to be in contempt of the Court;

(c) Order that defendants pay to Health Coalition Inc. $1000 per day for each day that defendants fail to comply with the January 17, 2007 Order (and the Settlement Agreement);

(d) Award HCI its costs, including its attorneys' fees, incurred in attempting to obtain compliance with Court's Order dated January 17, 2007, including but not limited to the costs and attorneys' fees associated with making this Motion;

(e) Upon application to the Court, award HCI its costs, including attorneys fees incurred in the future to ensure and achieve compliance; and

(f) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

HEALTH COALITION, INC.,

By its attorneys,


/s/ Brian M. Forbes
Jeffrey S. King (BBO # 559000)
 jeffrey.king@klgates.com
Brian M. Forbes (BBO# 644787)
 brian.m.forbes@klgates.com
Stacey L. Gorman (BBO# 655147)
 stacey.gorman@klgates.com
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
Tele:   (617) 261-3100
Fax:    (617) 261-3175

Dated:  March 7, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed on March 7, 2007 through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 6, 2007.

Peter J. Haley
Leslie F. Su
Gordon Haley LLP
101 Federal Street
Boston, MA 02110

William H. DiAdamo
DiAdamo Law Office, LLP
40 Appleton Way
Lawrence, MA 01840

                                                   /s/ Brian M. Forbes