UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH COALITION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 05-cv-11816 MEL |
| NEW ENGLAND ALLERGY ASTHMA | ) |
| IMMUNOLOGY & PRIMARY CARE, | ) |
| P.C. and THOMAS F. JOHNSON, | ) |
| Individually | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF BRIAN M. FORBES IN SUPPORT OF MOTION OF HEALTH COALITION, INC. FOR CIVIL CONTEMPT**

I, Brian M. Forbes hereby declare under oath as follows:

1.      I am an associate and attorney at the law firm Kirkpatrick & Lockhart Preston Gates Ellis LLP ("K&L Gates"), State Street Financial Center, One Lincoln Street, Boston, Massachusetts.  K&L Gates represents plaintiff Health Coalition, Inc. ("HCI") in this action.  I respectfully submit this Declaration in support of the Motion of Health Coalition Inc. for Civil Contempt.

2.      After extended settlement negotiations, the parties, HCI and Defendants New England Allergy Asthma Immunology & Primary Care, P.C. ("New England Allergy") and Thomas F. Johnson ("Dr. Johnson") (collectively "defendants") reached agreement on the material terms of settlement on June 7, 2006.  A true and correct copy of the defendants' acceptance of the material terms of the settlement is attached hereto as Exhibit A.

3.      The principal terms of the settlement include total payment by New England Allergy to HCI in the amount of $874,000.00 to be paid as follows: an initial cash payment of

$250,000.00 and the remaining $624,000.00 to be paid pursuant to a Promissory Note with payments of $13,000.00 per month for a period of 48 months.  Specifics of the settlement are set forth in the executed Settlement Agreement and the exhibits thereto, a true and correct copy of which is attached hereto as Exhibit B.

4.    On December 28, 2006, over six months after the parties agreed to the material terms of the settlement, defendants made the initial payment of $250,000.00 to HCI as required under the terms of the Settlement Agreement.  Defendants also made a monthly payment on January 30, 2007 to HCI in the amount of $13,000.00 for the payment due on or before February 1, 2007, in accordance with the Promissory Note and Settlement Agreement.  On March 1, 2007, HCI received from New England Allergy a company check in the amount of $13,000.00 for the March payment.  This form of payment is not in compliance with the Settlement Agreement, which expressly states that all monthly installments must be made by "certified bank check or wire in readily available funds by the first of each month."  See Exhibit B at para. 2.

5.    One of the other material terms of the Settlement Agreement is that the payment obligations of the Promissory Note and the Settlement Agreement are to be secured by a life insurance policy or polices that cover the life of Dr. Johnson.  The Settlement Agreement specifically provides, in relevant part:

> **The payment obligations of the Promissory Note and Premium Payment are also to be secured by a term life insurance policy or policies that cover the life of Dr. Johnson, with HCI named as the first beneficiary in line for the payment in full on the total value of the Promissory Note and Premium Payment.  Said policy or policies are to have a face value of at least $1,274,000.00 and must remain in place with all premiums paid current until the Promissory Note and Premium Payment (if appropriate) are paid in full.  As a named beneficiary, HCI must be provided with notice of non-payment of any premium owed and notice of any intent to terminate the insurance.  In such event, HCI shall have the right to continue to make premium payments on said policy or policies in the event any premium payment is not made, which payments, if made by HCI, will be added to the entire balance owed to HCI.  Upon the death of Dr. Johnson, the entire balance then owed on the Promissory**

**Note will become immediately payable to HCI out of the policy proceeds.**  In addition, if the obligation to pay the Premium Payment has attached, the policy proceeds shall also be used to pay the Premium Payment.

See Exhibit B at para. 5. (emphasis added).

6.      Dr. Johnson also executed a Pledge Agreement, in order to perform under the Settlement Agreement, pledging a life insurance policy to HCI and to "assign the death benefits under such Policy to HCI as additional collateral to secure the payment of that certain promissory note dated June 7, 2006 (the "Note") made by NEA to HCI and guaranteed by the Insured [Dr. Johnson] in accordance with the terms of the Settlement Agreement."  A true and correct copy of the executed Pledge Agreement is attached hereto as Exhibit C.

7.      The Pledge also states that "The Insured shall execute and shall cause the issuer of the Policy to execute the issuer's standard form of assignment evidencing transfer of the Policy to HCI."  See Exhibit C.  To date, however, Dr. Johnson, has not executed any assignment.

8.      From June 2006 to January 2007, HCI repeatedly requested that defendants obtain and produce various materials as required under the Settlement Agreement, including a life insurance policy (or policies) in the face amount of at least $1,274,000.00 naming HCI as the primary beneficiary.  True and correct copies of various written requests from counsel for HCI asking for this information and documents are attached hereto as Exhibits D through K.

9.      Despite these requests, defendants only provided the unexecuted pledge agreement and proof of a policy owned by Carleen Johnson, as Trustee Owner, Dr. Johnson's spouse, which did not fulfill the defendants' obligations under the Settlement Agreement.

10.      In light of defendants' actions, HCI filed a Renewed Motion to Enforce Settlement Agreement on January 5, 2007.  See Docket No. 30-31.

11.     On January 17, 2007, the parties were before the Court on HCI's Renewed Motion to Enforce Settlement Agreement.  After hearing from all parties, the Court ordered that the Settlement Agreement between the parties was to be entered as an Order of the Court and further ordered that "Defendants shall perform under the Settlement Agreement, including without limitation, by providing documents and/or information necessary to comply with the settlement with HCI and by executing the appropriate documents to effect the settlement between HCI and Defendants."  A true and correct copy of the Court's Order dated January 17, 2007 ("January 17 Order") (Docket No. 35) is attached hereto as Exhibit L.

12.     Additionally, with respect to the life insurance security, the Court specifically ordered that:

> Defendants New England Allergy Asthma Immunology & Primary Care, P.C. and Thomas F. Johnson shall use its best efforts to provide plaintiff HCI with the information and/or documents listed below, no later than January 31, 2007:
>
> - Insurance information
>   - A copy of the insurance policy (or policies) with all riders;
>   - Documents evidencing that HCI is listed as the owner and the primary beneficiary of the policy;
>   - Confirmation that HCI will be provided with notice of non-payment of any premium owed and notice of intent to terminate; and
>   - Waivers from other beneficiaries.

See Exhibit L at para. 2 (January 17 Order).

13.     While the Court determined at the January 17, 2007 hearing that the payment of attorneys' fees and costs for HCI having to bring the Renewed Motion to Enforce Settlement Agreement were not appropriate at that time, the Court informed the parties that such relief may be appropriate in the future.

14.     On January 31, 2007, the date set forth in the January 17 Order for compliance, defendants forwarded to HCI, for the first time, executed versions of the settlement documents.

15.     The required life insurance documentation and information was not provided to HCI at that time.  The cover letter from defendants' counsel stated that the "completed assignment and information had been sent out yesterday, January 30, 2007, by first class mail" from the insurance agent New England Financial to Carleen Johnson.  A true and correct copy of the January 31, 2007 cover letter from defendants' counsel is attached hereto as Exhibit M.

16.     After the January 31st deadline expired, HCI continued to request that defendants' counsel obtain copies of the insurance documents and information from the insurance company and/or the Johnsons.  True and correct copies of the email correspondence dated February 1, 2007 and February 5, 2007 are attached hereto as Exhibit N and O.

17.     On February 6, 2007, nearly one week after the Court imposed deadline, defendants provided, for the first time, a PDF copy of an Assignment of Life Insurance Policy as Collateral executed on February 6, 2007 by Carleen Johnson, Trustee Owner ("Assignment").  A true and correct copy of the Assignment provided to HCI is attached hereto as Exhibit P.

18.     The Assignment, however, does not comply with the defendants' obligations under the January 17 Order or the Settlement Agreement between the parties.

19.     Counsel for HCI identified its specific concerns with the Assignment and lack of documentation in a detailed email dated February 8, 2007.  A true and correct copy of the email dated February 8, 2007 is attached hereto as Exhibit Q.

20.     Problems with the Assignment identified by HCI are numerous and include:

**(A)     Lack of Insurance Documents:** Defendants still have not produced a copy of the insurance policy (with riders) itself.  Without a copy of the insurance policy and all riders, HCI cannot be assured that the policy is suitable for the settlement.

**(B)**  **The Assignment Does Not Bind Defendants/HCI has No Agreement with the Assignor (Section D):** The assignment of the policy is from "Carleen Johnson, Trustee Owner" for the "Johnson Trust Agreement dtd 4-12-00." The assignment from Carleen Johnson raises several issues, including a conflict between the Settlement Agreement and the provisions of the Assignment. Notably, **Section D** of the Assignment states:

> This assignment is made and the policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise between any of the undersigned and the Assignee with respect to the above policy (all of which liabilities secured or to become secured are herein call "Liabilities").

See Exhibit P to Forbes Decl.

**(1)**  The "undersigned" identified is Carleen Johnson, Trustee Owner, not Dr. Johnson. Because the liability to HCI is from NEA/Dr. Johnson, not Carleen Johnson or the Trust, the Assignment is wholly deficient, as it purports to secure liabilities that do not exist.

**(2)**  It is also not clear that Carleen Johnson has the power as trustee to assign the policy to HCI. If the trust is an irrevocable trust, there may be restrictions on her ability to assign the policy. HCI has asked for a copy of the trust agreement to ensure that Mrs. Johnson has such rights. To date, despite repeated requests, evidence that Mrs. Johnson has the power to assign the policy to HCI has not been provided.

**(C)**  **Primary Beneficiary Designation**: While the Assignment as drafted, permits HCI as Assignee, "the sole right to collect from the Insurer the net proceeds of the policy when it becomes a claim by death or maturity" (See Exhibit P at Section B), the Assignment nevertheless permits the Assignor, Carleen Johnson, as non-party to action and settlement agreement, "the right to designate and change the beneficiary." See Exhibit P at Section C. At the same time, HCI had not been provided with  documents/information that HCI is the primary beneficiary of the policy and that there are appropriate waivers from other beneficiaries, if necessary.

**(D)**  **Key Notice Requirements are Absent From the Assignment:** Notably absent from the Assignment is assurance that HCI will be provided with notice of non-payment of any premium owed and notice of intent to terminate, as is required under the Settlement Agreement. See Exhibit B at para. 5. Also, per the Settlement Agreement, the Assignment must reflect that in the event any premium payment is not made, HCI shall have the right to continue to make premium payments on the policy, which payments will be added to the entire balance owed to HCI. Id. These provisions are significant because: (1) the failure to make an insurance premium payment constitutes a breach of the settlement agreement and

triggers accelerated payment obligations (see id. at para. 7); and (2) HCI requires notice in order to make payments to ensure that the policy remains current to cover any balance owed.

**(E)    Superior Liens on the Policy:** The reference in Section A that the Assignment is "subject to all the terms and conditions of the policy and to all superior liens, if any, which the Insurer may have against the policy" - HCI must be provided with information regarding whether there are any superior liens, which may ultimately make this policy unsuitable.  HCI has not been provided with such information from defendants or the insurance company.

**(F)    Other rights excluded by the Assignment and retained by the Assignor (Section C):**  In addition to the right to designate and change the beneficiary, certain rights are excluded from the Assignment to be retained by the Assignor -- rights that appear to diminish the value of the policy to the detriment of HCI, and conflict with the obligations of the Settlement Agreement.

**(G)    Conflicts between the Assignment and the Settlement Agreement:**  Section J of the Assignment states, "in the event there is conflict between the provisions of the assignment and the provisions of the note or other evidence of any Liability, with respect to the policy or rights of collateral security therein, the provisions of the assignment shall prevail."  This provision is unacceptable – first, Mrs. Johnson is not bound by the promissory note, the settlement agreement, or any other evidence of liability to HCI, and second, the Assignment must yield to, and not trump, the settlement agreement, promissory note, or any liability to HCI.

21.    On February 9 and 13, 2007, counsel for HCI again noted its concerns with the Assignment and the continued lack of insurance documentation, and notified defendants' counsel of its intent to seek relief from the Court due to defendants' continue pattern of delay and non-compliance.  True and correct copies of emails between counsel for HCI and counsel for defendants dated February 9 and 13, 2007 are attached hereto as Exhibits R and S.

22.    In response, defendants' counsel indicated in a voicemail, a telephonic Rule 7.1 conference, and through email correspondence defendants' willingness to modify the Assignment because the Assignment was not consistent with the Settlement Agreement.  True and correct copies of correspondence between counsel for HCI and the defendants' counsel dated February 13 and 14, 2007, including summary of Rule 7.1 conference on February 14, 2007 are

attached hereto as Exhibit T.  A true and correct copy of transcript of voicemail message from defendants' counsel to counsel for HCI on February 13, 2007 is attached hereto as Exhibit U.

23.     Counsel for defendants also indicated that based on prior communications with the insurance company, he reasonably expected "that other than section J they will agree – and that as far as I know section J is their only issue" to the modifications to the Assignment.  See Exhibit T.

24.     Thereafter, the parties worked together to send a letter to New England Life Insurance Company outlining the problems with the Assignment and why it did not satisfy the requirements of the Settlement Agreement.  A true and correct copy of email correspondence dated February 16, 2007 from counsel for HCI to defendants' counsel attaching edits to draft letter to be sent to New England Life Insurance Company is attached hereto as Exhibit V.

25.     A true and correct copy of the final letter to Kathleen M. Topp, New England Life Insurance Company dated February 16, 2007, is attached hereto as Exhibit W.

26.     Contrary to defendants' counsel's representation that the insurance company had concerns with respect to only one of the proposed amendment to the Assignment, on February 26, 2007, defendants' counsel forwarded to counsel for HCI a letter from Ms. Topp stating that the insurance company would not amend its collateral agreement form as requested in the February 16, 2007 letter "because it would take away the rights of the policy owner."  A true and correct copy of an email from defendants' counsel dated February 26 attaching letter from Kathleen Topp dated February 22, 2007 is attached hereto as Exhibit X.  Therein, Ms. Topp further suggested that a "change of owner" may be required.  See Exhibit X.

27.     Upon receipt of the letter from Ms. Topp, HCI again notified defendants that they were still in violation of the Settlement Agreement and January 17 Order. A true and correct

copy of correspondence from HCI's counsel to counsel for defendants' counsel dated March 1, 2007 is attached hereto as Exhibit Y.   HCI also suggested alternatives, including change of ownership of the policy (which was also suggested by the insurance company), to effect an insurance security that is in compliance with the Settlement Agreement.

28.     Defendants have rejected that proposal and now take the position that the "assignment form provided by MetLife is again more than sufficient for the purposes of the settlement agreement."  A true and correct copy of an email dated March 2, 2007 from defendants' counsel is attached hereto as Exhibit Z.

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.  EXECUTED THIS 7th DAY OF MARCH 2007, AT BOSTON, MASSACHUSETTS.

/s/ Brian M. Forbes
Brian M. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed on March 7, 2007 through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 7, 2007.

Peter J. Haley
Leslie F. Su
Gordon Haley LLP
101 Federal Street
Boston, MA 02110

William H. DiAdamo
DiAdamo Law Office, LLP
40 Appleton Way
Lawrence, MA 01840

/s/ Brian M. Forbes
Brian M. Forbes

# EXHIBIT A

HCI v. NEA/Dr. Johnson

## Forbes, Brian M. (Boston)

**From:**   Peter Haley [haley@gordonhaley.com]
**Sent:**   Wednesday, June 07, 2006 4:01 PM
**To:**     Forbes, Brian M. (Boston); william@diadamo.com
**Cc:**     'Art McCabe'; King, Jeffrey S.
**Subject:** RE: HCI v. NEA/Dr. Johnson

Brian

This is to confirm the Defendants' agreement to the terms set forth below, subject only to the completion of the necessary documentation in a form and manner acceptable to both parties.

Please forward the settlement documents at your first convenience.

Thanks

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-261-0789 (facsimile)
haley@gordonhaley.com

> -----Original Message-----
> **From:** Forbes, Brian M. (Boston) [mailto:bforbes@king.com]
> **Sent:** Thursday, June 01, 2006 1:48 PM
> **To:** Peter Haley; william@diadamo.com
> **Cc:** Art McCabe; King, Jeffrey S.
> **Subject:** HCI v. NEA/Dr. Johnson
>
>
> Gentleman,
> Based on the parties extended settlement negotiations, the terms set forth below are the terms to which HCI will agree to settle the instant litigation. Please confirm that defendants agree to these terms. Once we have confirmation that both defendants agree to these terms, we will be able to forward to you draft settlement documents in fairly short order. Because we do not want completion of the settlement to drag on indefinitely, as a condition of HCI's agreement to settle this matter, once we forward the first drafts of the Settlement Agreement and Note to you for your review, HCI will require that the final settlement documents must be finalized and executed within 15 days of our sending you the first drafts. If all settlement documents are not finalized within that 15 day time period, HCI reserves the right to rework/renegotiate the terms of the deal and/or to resume the litigation if HCI has a good faith basis for believing that defendants are unreasonably delaying completion of the settlement.
>
> Please get back to us by the close of business on Wednesday, June 7th with defendants' confirmation that they agree to the terms set forth below. I will be out of the office next week and will not have access to email. To that end, during the week June 5th, I ask that you direct all communications to Jeff King. Thank you.
>
> We look forward to hearing from you.

08/31/2006

Regards,
Brian

- $250,000.00 cash
- Promissory Note with payments of $13,000 per month thereafter for 48 months; payments on the Note must be received by HCI by the first of each month following closing and must be made by certified check or wire transfer; 10-day cure period that starts on the day notice of default is sent -- notice will be sent by manners we need to agree upon (fax? etc.)
- Total payment of $874,000.00
- Dr. Johnson guaranty of entire payment amounts
- Full security interest in New England Allergy with UCCs etc., covering all assets of NEA (including, A/R which includes the loans/notes/amounts owed by other entities, inventory, etc.)
- The security would be subject to the final approval of Banknorth, which would remain first in line on its secured position on its $500k line of credit. HCI would be in second position to Banknorth but ahead of all other creditors as to all secured assets. Written confirmation from Banknorth must be in a form that is acceptable to HCI.
- Dismissal with prejudice for NEA and Johnson -- releases except for new obligations created by settlemen
- Agreement for judgment in case of any default, with reasonable opportunity to cure period, and joint and several liability. The judgment will be in the amount of the balance then owed on the Promissory Note, plus $400k (this reflects the out of pocket losses HCI has suffered, costs to collect, and risk premium for non-collection).
- Cumulative term life insurance policies with a face value of $1,274,000 would remain in place-- all premiums must be made until the Note is paid in full. Failure to maintain this coverage will constitute a default under the Note. HCI will be named as 1st beneficiary in line for the payment in full on the total valu of the Promissory Note. Upon the death of Dr. Johnson, the entire balance then owed under the Promisso Note will become immediately payable to HCI out of the policy proceeds. We will require all appropriate documentation, beneficiary designations, notices of premium payment for insurer, and waivers from other beneficiaries and heirs.
- Breach of any of the foregoing provisions constitutes default under the Note (and triggers all correspondin remedies)
- HCI will draft the Settlement Agreement and the Note
- Defendants will draft the documents associated with the security interest and insurance issues: UCCs, beneficiary forms, etc.

08/31/2006

# EXHIBIT B

SETTLEMENT AGREEMENT AND MUTUAL RELEASE

*THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE* (the "Agreement") is entered into the /6 th day of January, 2007, by and between Health Coalition, Inc. ("HCI"), New England Allergy Asthma Immunology & Primary Care, P.C. ("NEA"), and Dr. Thomas F. Johnson ("Dr. Johnson"), collectively, the "Parties."

*WHEREAS*, HCI has asserted certain claims against NEA and Dr. Johnson arising from the alleged breach of their agreements with HCI in connection with HCI's sale of blood derivative products to NEA and Dr. Johnson's guaranty of all purchases of NEA from HCI; and

*WHEREAS*, HCI, as plaintiff, brought a lawsuit against NEA and Dr. Johnson, as defendants, entitled "Health Coalition, Inc. v. New England Allergy Asthma Immunology & Primary Care, P.C. and Thomas F. Johnson, Individually," in the United States District Court for the District of Massachusetts, Civil Action No. C.A. 05-cv-11816 MEL, in which HCI asserted claims against NEA for breach of contract, goods sold and delivered, account stated, breach of implied covenant of good faith and fair dealing, and violation Mass. Gen. Laws ch. 93A, and for claims asserted against Dr. Johnson for breach of guaranty agreement (the "Lawsuit"); and

*WHEREAS*, NEA and Dr. Johnson have denied all material allegations in the Lawsuit and have asserted various defenses; and

*WHEREAS*, the Parties hereto desire to avoid further expense in the pursuit of the Lawsuit and thus have agreed to resolve by this Agreement all disputes between them;

*NOW THEREFORE*, the Parties covenant and agree as follows:

1.      In consideration of the execution of this Agreement and of the payments and actions called for herein, the Parties and their respective insurers, officers, directors, stockholders, attorneys, members, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns, and all other persons, firms, associations, or corporations with whom any of the former have been, are now, or may hereafter be affiliated (hereinafter "Releasors") hereby completely release and forever discharge each other, and their respective insurers, officers, directors, stockholders, attorneys, members, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns, and all other persons, firms, associations, or corporations with whom any of the former have been, are now, or may hereafter be affiliated (hereinafter "Releasees") of and from any and all past, present, and future claims, demands, actions, causes of action, debts, and dues, whether in law or equity, of any nature or description whatsoever, whether now known or unknown, anticipated or unanticipated, asserted or unasserted, whether based on statute, contract, tort, or otherwise, whether for compensatory, punitive damages or civil penalties, on account of or in any way growing out of, related to directly or indirectly, resulting or to result from the claims or causes of action set forth in the Lawsuit, including without limitations, any and all known or unknown claims of bodily, property, personal, loss of consortium, and economic injuries to the Releasors and the consequences thereof, including but not limited to any claims arising from the handling of any insurance claim or the defense of any

legal proceeding concerning the Lawsuit; except, however, that the foregoing release shall not apply to: (1) the continuing obligations of NEA and Dr. Johnson set forth elsewhere in this Agreement including those obligations concerning an Agreement for Judgment, (2) the continuing obligations of NEA set forth in a separate Promissory Note executed on or about the date hereof; and (3) the continuing obligations of Dr. Johnson set forth in a separate Guaranty executed on or about the date hereof.

Subject to the limitations set forth above, this release shall be a fully binding and complete settlement and release between HCI, NEA, Dr. Johnson, and Releasees with respect to the matters addressed herein.

2.    NEA agrees to pay EIGHT HUNDRED SEVENTY-FOUR THOUSAND AND 00/100 DOLLARS ($874,000.00), to HCI as follows: $250,000, which was paid by wire transfer on December 2̱8̱, 2006 and the remaining $624,000.00 is to be paid pursuant to the terms of a Promissory Note in the form attached hereto as Exhibit A and including the following terms: forty-eight (48) monthly installments of $13,000.00 by certified bank check or wire in readily available funds by the first of each month, with the principal balance payable in full by January 1, 2011.

3.    The obligations of the Promissory Note are to be secured by all assets of NEA through the filing of UCCs or any other necessary and appropriate documents which will be filed and recorded with the appropriate secretary of state or other entity of the Commonwealth of Massachusetts, the State of New Hampshire, and any other states necessary to cover all assets of NEA. HCI's security interest in the assets of NEA are to be junior only to the secured position of TD BankNorth's $500,000.000 line of credit. HCI's secured position is to remain senior to and ahead of all other creditors until such time as all obligations of HCI are satisfied.

4.    In the event NEA defaults under the Promissory Note, or if NEA and/or Dr. Johnson otherwise breach the terms and obligations set forth in this Agreement, the Parties agree that judgment shall enter in a new action for breach of contract as further detailed in paragraph 7 below and that NEA and Dr. Johnson are to be jointly and severally liable for the balance remaining on the Promissory Note, and an additional premium payment of FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($400,000.00) ("Premium Payment"). It is specifically agreed that the Premium Payment is reasonable and appropriate and that adequate consideration has been exchanged for the inclusion of this Premium Payment in this Agreement.

5.    The payment obligations of the Promissory Note and Premium Payment are also to be secured by a term life insurance policy or policies that cover the life of Dr. Johnson, with HCI named as the first beneficiary in line for the payment in full on the total value of the Promissory Note and Premium Payment. Said policy or policies are to have a face value of at least $1,274,000.00 and must remain in place with all premiums paid current until the Promissory Note and Premium Payment (if appropriate) are paid in full. As a named beneficiary, HCI must be provided with notice of non-payment of any premium owed and notice of any intent to terminate the insurance. In such event, HCI shall have the right to continue to make premium payments on said policy or policies in the event any premium payment is not made, which payments, if made by HCI, will be added to the entire balance owed to HCI. Upon the death of

Dr. Johnson, the entire balance then owed on the Promissory Note will become immediately payable to HCI out of the policy proceeds. In addition, if the obligation to pay the Premium Payment has attached, the policy proceeds shall also be used to pay the Premium Payment.

6.    Dr. Johnson agrees to personally guaranty the payment obligations of NEA described above and in the Promissory Note, and agrees to pay to HCI all amounts owed by NEA to HCI upon any default under the Promissory Note and this Agreement, including the Premium Payment if it becomes due. This personal guaranty will be evidenced by a signed Guaranty in the form attached hereto as Exhibit B.

7.    In the event that NEA defaults under the Promissory Note, or if NEA and/or Dr. Johnson otherwise breach the terms and obligations set forth in this Agreement, then the Parties agree that HCI may file a new action in the United States District Court for the District of Massachusetts or the courts of the Commonwealth of Massachusetts against NEA and Dr. Johnson, and may file the Agreement for Judgment that the Parties have signed and that is attached hereto as Exhibit C which allows judgment to be entered jointly and severally against NEA and Dr. Johnson in the amount of any outstanding balance owed under the Promissory Note plus the $400,000.00 Premium Payment. NEA and Dr. Johnson agree to accept service of the new action and expressly waive any and all defenses of lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service of process, failure to state a claim upon which relief can be granted, and failure to join a necessary party, and expressly waive any and all appeal rights in connection with the filing of the Agreement for Judgment and the entry of judgment against NEA and Dr. Johnson and in favor of HCI as set forth in this paragraph. In addition, NEA and Dr. Johnson agree to pay all fees, including, but not limited to, reasonable attorneys' fees, and costs incurred by HCI in connection with HCI's filing of the new action and execution and collection on the Agreement for Judgment. NEA and Dr. Johnson also expressly agree that their consent to acceptance of service of a new action and Agreement for Judgment as further detailed above, will apply to and be binding upon their respective insurers, officers, directors, stockholders, attorneys, members, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns, and all other persons, firms or corporations with whom any of the former have been, are now, or may hereafter be affiliated. The Agreement for Judgment will be executed by NEA and Dr. Johnson and will be returned to counsel for HCI within three (3) business days of the date of execution of this Agreement and will be held in escrow until such time as it is filed, if ever.

8.    The Parties agree to dismiss the Lawsuit with prejudice to all claims, and with all rights of appeal waived. Each party will bear its own costs and attorneys' fees incurred in connection with the commencement, prosecution, and defense of the above-referenced Lawsuit. The Stipulation of Dismissal With Prejudice that the Parties have signed and that will be filed by HCI is attached hereto as Exhibit D.

9.    The Parties agree and acknowledge that, except as provided to the contrary herein, they take the actions specified in this Agreement, and make or accept payment of the sums specified in this Agreement, as a full and complete compromise of all matters involving disputed issues between HCI, NEA, and Dr. Johnson and that neither payment of any sum by any party,

- 3 -

performance of any act as specified herein, nor the negotiations for this settlement (including all statements, admissions or communications) by HCI, NEA or Dr. Johnson or their attorneys or representatives shall be considered admissions by any of said Parties, and that no past or present wrongdoing or liability on the part of any party shall be implied by such payment, actions, or negotiations.

10.     The Parties warrant and represent that:

a)     the Parties rely wholly on their own judgment as to the extent of the damages they have sustained, or will sustain in the future, and the Parties have not been influenced by any statement made by or on behalf of any of the other Parties to this Agreement;

b)     to the extent that the damages, if any, sustained by the Parties, or any of them, are unknown, the Parties understand, agree and warrant that the release contained in this Agreement extends to all unknown or unanticipated damages related to the claims asserted in the Lawsuit as well as those which are now known or disclosed;

c)     the Parties have been fully informed and have full knowledge of the terms, conditions, and effects of this Agreement, and have read this Agreement and are executing it under advice of counsel;

d)     the Parties have fully investigated, to each party's full satisfaction, all of the facts surrounding the various claims, controversies, and disputes and are fully satisfied with the terms and effects of this Agreement;

e)     the Parties have executed and agreed to this Agreement and made or accepted payment of the sums specified herein as a complete compromise of matters involving disputed issues of law and fact and fully assume the risk that the facts or law may be other than they believe; and

f)     no relative, or any other person or entity, has or has had any interest in the claims, demands, obligations, or causes of action in the Lawsuit or referred to in this Agreement; that they have the sole right and exclusive authority to execute this Agreement, perform their respective obligations hereunder, and pay or receive the sums specified in it; and that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations or causes of actions referred to in the above-referenced Lawsuit or this Agreement.

11.     NEA and Dr. Johnson further warrant and represent that by signing this Agreement and all attendant documents and by entering into the obligations set forth herein and in all attendant documents, the Parties are not putting themselves individually or collectively, into default or breach of any other documents, agreements, or obligations.

12.     The provisions of this Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the Commonwealth of Massachusetts without regard to its conflict of law principles.

- 4 -

13.    This Agreement may be executed in any number of counterparts, which shall together constitute but one and the same instrument. To make proof of this Agreement it shall only be necessary to produce any one such counterpart.

14.    This Agreement contains the entire agreement between the Parties with regard to the matters set forth herein, and may not be changed orally.

*IN WITNESS WHEREOF*, Health Coalition, Inc., New England Allergy Asthma Immunology & Primary Care, P.C. and Dr. Thomas F. Johnson have executed this Settlement Agreement and Mutual Release on the date first written above.

HEALTH COALITION, INC.

By: Walter Shikany
Its: President

APPROVED AS TO FORM:

Jeffrey S. King (BBO# 559000)
Brian M. Forbes (BBO# 644787)
Attorneys for Health Coalition, Inc.
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100

NEW ENGLAND ALLERGY
ASTHMA IMMUNOLOGY &
PRIMARY CARE, P.C.

By: Dr. Thomas F. Johnson
Its: Director and President

APPROVED AS TO FORM:

Peter J. Haley (BBO# 543858)
Attorney for New England Allergy Asthma
Immunology & Primary Care, P.C.
GORDON HALEY LLP
101 Federal Street
Boston, MA 02110
(617) 261-0100

- 5 -

DR. THOMAS F. JOHNSON

_Dr. Thomas F. Johnson_

APPROVED AS TO FORM:

William H. DiAdamo (BBO #558883)
Attorney for Dr. Thomas F. Johnson
WILLIAM H. DIADAMO LAW OFFICE
40 Appleton Way
Lawrence, MA 01840
(978) 685-4271

**PROMISSORY NOTE**                                  EXHIBIT A

$624,000.00                                          January 19, 2007

For value received, New England Allergy Asthma Immunology & Primary Care, P.C., a Massachusetts professional corporation ("Debtor", which expression shall include its successors and assigns), promises to pay to Health Coalition, Inc., a Florida corporation, or its successors and assigns ("Holder") the principal amount of $624,000.00 without interest. The Debtor will pay $13,000.00 per month for 48 months, by the first day of each month commencing February 1, 2007. All outstanding principal shall be payable no later than January 1, 2011.

Debtor shall have the right to prepay the outstanding principal of this Promissory Note, in whole or in part, at any time or times, without penalty. Any partial prepayment shall not postpone the maturity date of this Promissory Note.

In the event that the assets of the Debtor are sold, liquidated, or extinguished prior to January 1, 2011, at or before the time of such event the Debtor shall make one lump sum payment in the amount of the outstanding principal amount then owed.

Payment of principal shall be made in lawful money of the United States of America at the address of Holder set forth below or at such other place as Holder shall have designated to Debtor by notice as provided herein. All payments made hereunder shall be made by certified bank check or wire in readily available funds.

Debtor hereby waives presentment, demand for payment, notice, protest, and all other demands and notices in connection with the delivery, acceptance, performance, default, or enforcement of this Promissory Note, except as expressly provided in this Promissory Note.

The occurrence of any of the following events shall constitute an event of default ("Events of Default") hereunder, and shall entitle the Holder to the remedies provided herein for such Events of Default:

      1.     In the event that Debtor makes an assignment for the benefit of creditors, petitions or applies for the appointment of a receiver, commences or consents to any proceeding relating to it under any bankruptcy, insolvency or similar law, has an order for relief entered in a bankruptcy proceeding relating to it, or admits in writing its inability to pay its debts as they mature. Debtor shall have ten (10) calendar days from the occurrence of any of these events to cure the Event of Default.

      2.     In the event that Debtor fails to make any required monthly payment when due, Holder shall provide notice of such failure which shall be deemed effective when sent, and Debtor shall have ten (10) calendar days to cure such Event of Default.

If any Event of Default occurs that has not been cured in a timely manner, then the entire unpaid principal balance hereof shall become immediately due and payable without further action required by Holder. After the occurrence of an Event of Default, Holder, if owed any

amount with respect to this Promissory Note, may proceed to protect and enforce Holder's rights by suit in equity, action at law and/or any other appropriate proceeding.

Debtor hereby promises to pay on demand all legal fees and other costs and expenses reasonably paid or incurred by Holder in enforcing or collecting this Promissory Note after any occurrence of an Event of Default.

No course of dealing of Holder or any failure or delay by Holder to exercise any right, power or privilege under this Promissory Note shall operate as a waiver hereunder and any single or partial exercise of any such right, power, or privilege shall not preclude any right or exercise thereof or any exercise of any other right, power, or privilege hereunder. No covenant, obligation, or other provision of this Promissory Note may be waived, and no consent contemplated hereby may be given, other than in a writing signed by Holder waiving such covenant, obligation, or provision or giving such consent.

Any notice provided for or given hereunder shall be in writing and shall be 1) sent by facsimile, and 2) mailed by certified mail, return receipt requested, or by overnight express courier, or delivered by hand to the following addresses and facsimile numbers, or to such address or number as a party may provide to the other party by notice in accordance herewith.

If to the Beneficiary:  Health Coalition, Inc.,
                            c/o Brian M. Forbes, Esq.
                            Kirkpatrick & Lockhart Preston Gates Ellis LLP
                            State Street Financial Center
                            One Lincoln Street
                            Boston, MA 02111
                            facsimile 617-261-3175.

If to the Debtor:  Peter J. Haley, Esq.
                            Gordon Haley LLP
                            101 Federal Street
                            Boston, MA 02110
                            facsimile (617) 261-0789

All such notices shall be effective when sent.

The provisions of this Promissory Note shall be governed by, and construed and enforced in accordance with, the substantive laws of the Commonwealth of Massachusetts without regard to its conflict of law principles.

This Promissory Note may not be amended without the prior written consent of the Holder.

No assignment of this Promissory Note shall release Debtor from its obligations hereunder.

The obligations hereunder are the subject of a Guaranty of even date herewith executed by Dr. Thomas F. Johnson personally (the "Guarantor").

-2-

The obligations of the Promissory Note are to be secured by all assets of the Debtor. The Debtor acknowledges and agrees that all appropriate documents will be filed with the appropriate secretary of state or other entity of the Commonwealth of Massachusetts, the State of New Hampshire, and any other states necessary to cover all assets of NEA, as may be required to perfect Holder's security interest. HCI's security interest in the assets of Debtor shall be subordinate only to the lien on such assets currently held by TD BankNorth in connection with a $500,000.000 line of credit.

Debtor represents and warrants that it has full power and authority to execute and deliver this Promissory Note and to perform its obligations hereunder. This Promissory Note constitutes the valid and legally binding obligation of the Debtor, enforceable in accordance with its terms and conditions.

IN WITNESS WHEREOF, the undersigned have executed this Promissory Note as an instrument under seal as of the _G_ th day of January 2007.

New England Allergy Asthma Immunology & Primary Care, P.C. ('Debtor")

By: _____

Printed Name: Dr. Thomas F. Johnson

Title: Director and President

Address:_____

_____

-3-

# GUARANTY

For valuable consideration, the receipt of which is hereby acknowledged, and subject only to the limitations provided elsewhere herein, the undersigned does hereby guaranty to Health Coalition, Inc. or its successors in interest or assigns ("Beneficiary") due payment, performance, and fulfillment of all obligations, liabilities, and undertakings of New England Allergy & Asthma Immunology & Primary Care, P.C., a Massachusetts professional corporation, having its principal places of business in North Andover, Massachusetts ("Obligor"), to Beneficiary under the Settlement Agreement and Mutual Release dated January 16, 2007 (including without limitation the obligation to pay the Premium Payment as defined in that Agreement) and that certain Promissory Note in the original amount of Six Hundred Twenty-Four Thousand Dollars and No Cents ($624,000.00) executed and delivered by the Obligor to Beneficiary dated as of January 19, 2007 (the "Promissory Note").  Notwithstanding anything to the contrary herein or in the Promissory Note, the undersigned shall be liable for costs of collection incurred in any action to enforce this Guaranty, the Promissory Note, or the Settlement Agreement and Mutual Release.

The obligations of the undersigned Guarantor are also to be secured by cumulative proceeds of a term life insurance policy or policies on the life of Dr. Johnson, with the Beneficiary to be named as the primary beneficiary in line for the payment in full on the total value of the Promissory Note plus the Premium Payment if it has become due.  Said policy or policies are to have a face value of $1,274,000.00 and must remain in place with all premiums paid until the Promissory Note is paid in full.  Upon the death of Dr. Johnson, the entire outstanding principal balance of the Promissory Note (plus the Premium Payment if it has become due) shall become immediately due and payable to the Beneficiary.

The undersigned waives all requirements of demand, presentment or protest, and any right which the undersigned might otherwise have to require Beneficiary first to proceed against the Obligor or first to realize on any security held by Beneficiary before proceeding against the undersigned for the enforcement of this Guaranty.  As conditions of enforcement of Beneficiary's rights hereunder, Beneficiary shall have first given Obligor and the undersigned at least ten (10) day advance written notice, in accordance with the provisions hereof and of the Promissory Note, of the occurrence of such event of default and Beneficiary's intention to enforce its rights under this Guaranty.

Except as provided to the contrary herein, the liability of the undersigned shall not be terminated or otherwise affected or impaired by Beneficiary granting time to Obligors (regardless of the number or length of such grants of time) or by any other indulgence or indulgences granted by Beneficiary to Obligor, or by Beneficiary's acquiring, releasing, or in any way modifying any guaranty from any other person or persons or by any substitution, exchange, modification, or release of collateral or security for the Promissory Note hereby guaranteed, whether or not notice thereof shall have been given to the undersigned, or by any change with respect to the Obligors in the form or manner of doing business, whether by incorporation, consolidation, merger, partnership formation, or change in membership, or otherwise, or because of any fraud, or illegal or improper acts of Obligors.

If for any reason the Obligor has no legal existence or is under no legal obligation to discharge the Promissory Note, or if any amounts included in the Promissory Note shall have become irrecoverable from the Obligor by operation of law or for any other reason, or if any security or other guaranty shall be found invalid, the undersigned shall nonetheless be and remain bound upon this Guaranty.

This Guaranty shall be binding upon the heirs, personal representatives, and assigns of the undersigned. This Guaranty may be modified only by an agreement in writing executed by Beneficiary and the undersigned. No assignment of this Guaranty by the undersigned shall release the undersigned from the undersigned's obligations hereunder.

Any notice provided for or given hereunder shall be in writing and shall be 1) sent by facsimile, and 2) mailed by certified mail, return receipt requested, or by overnight express courier, or delivered by hand to the following addresses and facsimile numbers, or to such address or number as a party may provide to the other party by notice in accordance herewith.

If to the Beneficiary:  Health Coalition, Inc.,
                       c/o Brian M. Forbes, Esq.
                       Kirkpatrick & Lockhart Preston Gates Ellis LLP
                       State Street Financial Center
                       One Lincoln Street
                       Boston, MA 02111
                       Facsimile 617-261-3175

If to the Obligor or the undersigned:

                       Peter J. Haley, Esq.
                       Gordon Haley LLP
                       101 Federal Street
                       Boston, MA 02110
                       Facsimile (617) 261-0789

                       William H. DiAdamo, Esq.
                       William H. DiAdamo Law Office
                       40 Appleton Way
                       Lawrence, MA 01840
                       Facsimile (978) 794-4743

All such notices shall be effective when sent.

This instrument is intended to take effect as a sealed instrument, and this instrument and all rights, duties, and remedies of the parties shall be governed as to interpretation, validity, effect, and enforcement, and in all other respects, by the law of the Commonwealth of Massachusetts, without regard to its conflict of law provisions.

Dated: January 19 , 2007

-2-

Dr. Thomas F. Johnson

Address:

# EXHIBIT B

**EXHIBIT C**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH COALITION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. _____ |
| NEW ENGLAND ALLERGY ASTHMA | ) |
| IMMUNOLOGY & PRIMARY CARE, | ) |
| P.C. and THOMAS F. JOHNSON, | ) |
| Individually | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AGREEMENT FOR JUDGMENT

The undersigned, being all of the parties to this matter, hereby stipulate and agree to entry of the following judgment:

1)       Defendants New England Allergy Asthma Immunology & Primary Care, P.C. ("NEA") and Dr. Thomas F. Johnson ("Dr. Johnson") (collectively "defendants"), jointly and severally shall pay $_____, which is the amount of the balance owed on the Promissory Note executed by NEA dated January __, 2007 and an additional previously negotiated premium payment of Four Hundred Thousand Dollars ($400,000.00) to plaintiff, Health Coalition, Inc. ("HCI");

2)       A writ of execution effectuating the judgment for the amount of $_____ shall be issued immediately;

3)       Defendants shall pay to HCI all costs and fees, including, but not limited to, reasonable attorneys' fees, incurred by HCI in connection with HCI's efforts to collect on this

BOS-974195 v2 0435260-0903

judgment. To the extent any dispute exists with respect to what amount of attorneys' fees is reasonable, the Parties agree that this issue can be submitted to this Court for resolution, in which case defendants shall pay to HCI all costs and fees, including, but not limited to, reasonable attorneys' fees, incurred by HCI in connection with such proceedings in the event that defendants' challenge was not reasonable;

    4)      The Court shall retain jurisdiction to enforce this Agreement for Judgment and the judgment finally entered by the Court in the event of breach of any of the terms and conditions contained herein, and the parties agree to submit to the jurisdiction of this Court for the purposes of such enforcement;

    5)      The parties hereby expressly waive any and all defenses to this Agreement for Judgment or any component thereof, and they likewise expressly waive any and all rights to appeal any decision or judgment made or entered in this action; and

    6)      Except as set forth above, the parties agree to pay their own attorneys' fees incurred in connection with this action.

    WHEREFORE, the parties request that the above Judgment enter.

Dated: January ____, 2007

2

Respectfully submitted,

HEALTH COALITION, INC.,

By its attorneys,

_____
Jeffrey S. King (BBO# 559000)
 jeffrey.king@klgates.com
Brian M. Forbes (BBO# 644787)
 Brian.m.forbes@klgates.com
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
Tele:   (617) 261-3100
Fax:    (617) 261-3175

DR. THOMAS F. JOHNSON,

By his attorneys,

_____
William H. DiAdamo (BBO #558883)
WILLIAM H. DIADAMO LAW OFFICE LLP
40 Appleton Way
Lawrence, MA 01840
(978) 685-4271

Arthur J. McCabe
artmccabe@mccabeassoc.com
ARTHUR J. MCCABE & ASSOCIATES, P.C.
One Elm Square
Andover, MA 01810


NEW ENGLAND ALLERGY ASTHMA
IMMUNOLOGY & PRIMARY CARE, P.C.,

By its attorneys,

_____
Peter J. Haley (BBO# 543858)
 haley@gordonhaley.com
Leslie F. Su
 LSU@gordonhaley.com
GORDON HALEY LLP
101 Federal Street
Boston, MA 02110
(617) 261-0100
(617) 261-0789

Dated: : January ___, 2007

## SECURITY AGREEMENT

### (ALL ASSETS)

AGREEMENT made this *k*. day of January, 2007, by and between **New England Allergy Asthma Immunology & Primary Care, P.C.**, a Massachusetts professional corporation with a usual place of business at 555 Turnpike Street, North Andover, Massachusetts 01845 (herein, the "Debtor") and **Health Coalition, Inc.**, a Florida corporation with a usual place of business at 255 Alhambra Circle, Suite 900, Coral Gables, Florida 33134 (herein, the "Secured Party").

## W I T N E S S E T H:

The Debtor and Secured Party hereby agree as follows:

1.     As used herein, the following words shall have the meanings assigned to each such word, as follows:

(a)     Accounts:  All rights of Debtor to payment of all monetary obligations; all accounts receivable of Debtor; all obligations owing to Debtor and evidenced by an instrument or chattel paper; all rights of Debtor to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper; all obligations owing to Debtor of any kind or nature, including all writings, if any, evidencing the same, including all instruments, drafts, acceptances and chattel paper; and all proceeds of any of the foregoing.  There is further included within the term "Accounts" all rights, title and interest of Debtor in and to the Inventory, General Intangibles and Equipment (as those terms are hereinafter defined) which give rise to any Account (including the right of stoppage in transit), all guaranties of, and security and liens with respect to, any Account, and all accounts, documents and contract rights of Debtor, as these terms are defined in the Uniform Commercial Code.  The term "Accounts" shall also include any of the foregoing types of property in which the Debtor has any interest.  The term "Accounts" shall also include, without limitation, all amounts due Debtor from any affiliates of Debtor, including, but not limited to, Shareholders, Invisishield, CTTJ, Kira Med Spa, as those terms are used on Debtor's books and records.

(b)     Account Debtor:  Any person, firm, corporation or other entity who is obligated to the Debtor on an Account.

(c)     Inventory:  All of the Debtor's inventory, goods, merchandise, raw materials, work-in-progress, finished inventory and other tangible personal property held by Debtor for sale or lease, furnished or to be furnished under contracts of service, or used or consumed in Debtor's business, goods in transit, any and all returned or repossessed inventory or merchandise and all documents of title (whether negotiable or non-negotiable) representing any of

the foregoing, and all proceeds thereof. There is further included within the term "Inventory" any of the foregoing types of property in which the Debtor has any interest.

(d)     General Intangibles: All of Debtor's general intangibles as defined in the Uniform Commercial Code and all proceeds thereof, including without limitation, any and all rights of Debtor to any refund of any tax assessed against Debtor or paid by Debtor, loss carryback tax refunds, insurance premium rebates, unearned premiums, insurance proceeds, choses in action, names, tradenames, good will, trade secrets, computer programs, computer records, data, computer software, customer lists, patents, patent applications, patents pending, patent licenses or assignments, development ideas and concepts, licenses, permits, franchises, telephone numbers, literary rights, rights to performance, copyrights, proprietary or other processes, blueprints, drawings, designs, diagrams, plans, reports, charts, catalogs, manuals, research, literature, proposals, cost estimates, business plans and projections, routes, and other reproductions on paper or otherwise, of any and all concepts or ideas, whether or not related to the business or operations of Debtor. The term "General Intangibles" shall also include any of the foregoing types of property in which the Debtor has interest.

(e)     Equipment: All of Debtor's machinery, tools, dies, equipment, furniture, fixtures, trade fixtures, rolling stock, and motor vehicles, and intending to include all tangible personal property utilized in the conduct of Debtor's business (but excluding any property hereinbefore defined as "Inventory") and all additions, accessions, substitutions, components and replacements thereto, therefor and thereof and all proceeds thereof. There is further included within the term "Equipment", any of the foregoing types of property in which the Debtor has any interest. (The reservation by Secured Party of its right to proceeds shall not be construed as a consent by Secured Party to the sale or other disposition of Equipment or of any interest therein.)

(f)     Collateral: All present and future right, title and interest of Debtor in all Accounts, Inventory, General Intangibles and Equipment and all of Debtor's other real and personal property of every kind and nature, whether now existing or hereafter arising or acquired, and wherever located, and all proceeds and products thereof, including, without limitation, all proceeds of fire, credit and other insurance. The Collateral shall include, without limitation, the following categories of assets as defined in Revised Article 9 of the Uniform Commercial Code ("Revised Article 9"): goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit

2

rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, wherever located, whether now owned and hereafter acquired. If the Debtor shall at any time, whether or not Revised Article 9 is in effect in any particular jurisdiction, acquire a commercial tort claim, as defined in Revised Article 9, the Debtor shall immediately notify the Secured Party in a writing signed by the Debtor of the brief details thereof and grant to the Secured Party in such writing a security interest therein and in the proceeds thereof, all upon the terms of this Agreement, with such writing to be in form and substance satisfactory to the Secured Party.

(g)    Obligations:  All debts, liabilities and obligations of Debtor to Secured Party, of every kind, nature and description (whether or not evidenced by a note or other instrument or agreement, and whether or not for the payment of money), direct or indirect, primary or secondary, absolute or contingent, liquidated or unliquidated, secured or unsecured, joint, several or joint and several, due or to become due, now existing or hereafter arising, including, without limitation, all debts, liabilities and obligations of Debtor (1) under a promissory note of even date herewith from Debtor to Secured Party in the original principal amount of $624,000.00 (herein, the "Note"); (2) under this Security Agreement; (3) under the Settlement Agreement dated as of June 7, 2006, by and among Debtor, Dr. Thomas F. Johnson and Secured Party; (4) under all rewrites, renewals, extensions, supplements, amendments, replacements and substitutions of, for and to the Note and this Security Agreement (herein collectively called "Financing Agreements"); (5) for any and all loans, advances, credit or other financial accommodations at any time heretofore or hereafter made by Secured Party to Debtor; and (6) under all guaranties or endorsements by Debtor to Secured Party with respect to the debts, obligations or liabilities of another person to Secured Party.

2.    Debtor grants to Secured Party a continuing security interest in all of the Collateral, which security interest is to secure the prompt, punctual, faithful and complete payment and performance of all of the Obligations.

3.    Debtor hereby warrants, represents, covenants and agrees:

(a)    The execution and delivery of this agreement, and the performance by Debtor of its obligations hereunder, are within Debtor's corporate powers, have been duly authorized by all necessary corporate action, are not in contravention of any law or the terms of Debtor's charter, by-laws, or other incorporation papers, and will not violate or create an event of default under any indenture, agreement or undertaking to which Debtor is a party or

3

by which it or any of its properties is bound, and is not in violation of any agreement with other secured creditors.

(b)     The place where all records relating to the Accounts are and will be kept is situated exclusively at the following location:

555 Turnpike Street          North Andover          MA

---

No. and Street               City                   State

(c)     Whether or not any change in location violates the terms hereof, Debtor shall notify Secured Party not less than ten (10) days before any change is intended to be made in the foregoing address.

(d)     All information furnished to Secured Party concerning any of the Collateral or otherwise, is, or will be at the time the same is furnished, accurate and correct in all material respects and complete in so far as completeness may be necessary to give Secured Party a true and accurate knowledge of the subject matter.

(e)     Debtor shall at all reasonable times and from time to time allow Secured Party, by or through any of its officers, agents, attorneys or accountants, to examine or inspect the Collateral wherever located and to examine, inspect and make extracts from Debtor's books and records. Debtor shall do, make, execute and deliver all such additional and further acts, things, deeds, assurances and instruments as Secured Party may require, to vest more completely in and assure to Secured Party its rights hereunder and in or to the Collateral. Without limiting the generality of the foregoing, Debtor will deliver to Secured Party, promptly at Secured Party's request at any time and from time to time, such schedules of Inventory and Accounts as Secured Party may, in its sole discretion, deem to be desirable to obtain information on the Collateral.

(f)     Each Account will represent an undischarged bona fide indebtedness, in the face amount thereof, of an Account Debtor to Debtor. There will be no defenses, set-offs, counterclaims, or any other claims of any nature whatsoever to or against any Account. No agreement under which any deduction or discount may be claimed will be made with any Account Debtor except as shown on the original statement or invoice furnished to Secured Party with reference thereto.

(g)     Secured Party shall not be deemed to have assumed any liability or responsibility to Debtor or any third person for the correctness, validity or genuineness of any instruments or documents that may be released

4

or endorsed by Secured Party to Debtor (which shall automatically be deemed to be without recourse to Secured Party in any event), or for the existence, character, quantity, quality, condition, value or delivery of any goods purported to be represented by any such documents; and Secured Party, by accepting such security interest in the Collateral, or by releasing any Collateral to Debtor, shall not be deemed to have assumed any obligation or liability to any supplier or Account Debtor or to any other third party, and Debtor agrees to indemnify and defend Secured Party and hold it harmless in respect to any claim or proceeding arising out of any matter referred to in this paragraph.

(h)    Upon Secured Party's request, Debtor will cause each present and future mortgagee and landlord of the premises used by Debtor in the conduct of its business promptly to execute and deliver to Secured Party such instruments and documents which shall provide that such mortgagees and landlords waive and disclaim their rights and interests, if any, in the Collateral.

4.    Each and every statement of account transmitted by Secured Party to Debtor hereunder, whether in person, by ordinary mail or otherwise, shall be final, conclusive and binding upon Debtor in all respects as to all loans, fees, interest charges, Collateral, payments, receipts, balances and all other matters reflected therein, unless Debtor, within ten (10) days after the delivery or mailing thereof, shall give notice to Secured Party in writing of any objections which Debtor may have to any such statement of account; and, in such event, only those items expressly objected to in such written notice shall be considered to be disputed by Debtor and all other items shall be binding as aforesaid.

5.    (a)  Debtor will keep the Collateral in good condition and will not waste or destroy any of the same.  Debtor will not use the Collateral in violation of any statute of ordinance. Debtor will immediately notify Secured Party of any loss or damage to, or material diminution in or any occurrence which would adversely affect the value of any of the Collateral.

(a)    Debtor will pay promptly when due all taxes and assessments upon the Collateral, upon the proceeds thereof, upon this Agreement, upon any note or notes evidencing Obligations, or otherwise due by Debtor.  Debtor will deliver to Secured Party, on demand, certificates satisfactory to Secured Party evidencing the payment of such taxes and assessments.

(b)    At its option, Secured Party may (but shall not be obligated to) discharge taxes, liens, security interest or other encumbrances at any time

5

levied or placed on the Collateral and may pay for the maintenance and preservation of the Collateral. Debtor agrees to reimburse Secured Party, on demand, for any payment made, or any expense incurred by Secured Party pursuant to the foregoing authorization with interest at the rate of eighteen percent (18%) per annum, and such obligation, including interest, shall constitute one of the Obligations hereunder.

(c)     Until default, Debtor may use the Collateral in any lawful manner not inconsistent with this Agreement or with the terms or conditions of any policy of insurance thereon but may not sell, lease or otherwise dispose or attempt to sell, lease or otherwise dispose of any of the Collateral or any interest therein, except that Debtor may sell Inventory in the ordinary course of its business.

6.     (a) At the request of Secured Party, Debtor will join with Secured Party in executing one or more Financing Statements pursuant to the Uniform Commercial Code in form and substance satisfactory to Secured Party and will pay all costs and expenses, including, without limitation, filing and recording fees, mortgage, document or transfer taxes, correspondent's fees, and attorneys' fees incurred in filing or recording the same in all public offices where filing is deemed by Secured Party to be necessary or desirable. Secured Party is authorized by Debtor to file financing statements, amendments thereto, and continuation statements therefor, with respect to this Security Agreement, without the signatures of Debtor, wherever such filing is permitted by law. If any Collateral is in or shall hereafter come into the possession or control of any of the Debtor's agents or bailees, upon the request of Secured Party, Debtor shall notify such agents or bailees of the security interest granted herein and, upon request, instruct them to hold such Collateral for the account of and subject to the instructions of the Secured Party. If documents are issued or outstanding with respect to any of the Inventory, Debtor will cause the interest of Secured Party to be properly noted thereon at Debtor's expense.

(a)     All Collateral evidenced by an instrument or chattel paper shall, forthwith upon receipt thereof by Debtor, be delivered to Secured Party (duly endorsed or assigned to Secured Party).

(b)     If any of the Accounts arise out of contracts with the United States, any state, municipality, or any department, agency or instrumentality thereof, Debtor will immediately notify Secured Party thereof in writing and execute any instrument and take any steps required by Secured Party in order that all monies due and to become due under such contracts shall be assigned to Secured Party and notice thereof given to such governmental entity under the Federal Assignment of Claims Act or other applicable law.

6

7.    Any and all Obligations shall, at the option of Secured Party and notwithstanding any time or credit allowed by any instrument or invoice evidencing an Obligation, become immediately due and payable without notice or demand (and Debtor shall be in default hereunder) upon the occurrence of any of the following events of default:

(a)    Debtor shall fail, after the expiration of any applicable grace period, to pay any installment of principal or interest on account of the Obligations when such payment is due;

(b)    Debtor shall fail, after the expiration of any applicable grace period, to observe or perform any covenant or agreement contained in any of the Financing Agreements;

(c)    Debtor shall otherwise be in default under the terms of any of the Financing Agreements, after the expiration of any applicable grace period;

(d)    Any warranty, representation or statement made or furnished to Secured Party by or on behalf of Debtor proves to have been false in any material respect when made or furnished;

(e)    Any event which results in the acceleration of the maturity of the indebtedness of Debtor to others under any indenture, agreement, undertaking or otherwise;

(f)    Loss, theft, damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy, seizure, injunction or attachment thereof or thereon;

(g)    Death, dissolution, termination of existence, insolvency , business failure, cessation, suspension or termination of the active conduct of its normal business activities of or by Debtor.

(h)    The service upon Secured Party of a writ or other court document in which Secured Party is named as trustee of the Debtor, which attachment remains undischarged for a period of 20 days.

(i)    The entry or imposition of any lien or encumbrance upon any assets of the Debtor, which lien or encumbrance remains in effect for more than 20 days;

(j)    The calling of a meeting of creditors, appointment of a committee of creditors or liquidating agents, or offering of a composition of or extension to creditors by, for or of the Debtor;

(k)    Debtor shall make any assignment for the benefit of creditors, or enter into any composition, trust mortgage or similar arrangement with its creditors;

(l)    Debtor shall cease, be unable or admit in writing its inability to pay its debts as the mature;

(m)    The commencement by or against Debtor of a case under the federal bankruptcy laws, as now or hereafter constituted, or under any other applicable federal or state bankruptcy, insolvency or other laws relating to relief for debtors, or the readjustment, reorganization, composition or extension of debt, unless, in the case of involuntary proceedings, such proceedings are dismissed within 60 days of such commencement.

(n)    The entry of a decree or order against, or consent by Debtor to the appointment of a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar official) of the Debtor or for any part of the property of Debtor, or the winding-up or liquidation of the affairs of the Debtor;

(o)    The taking of any corporate action by Debtor in furtherance of any of the acts described in paragraphs 7(j), (k), (l), (m) and (n) hereof;

(p)    A criminal or quasi-criminal indictment is issued by any federal, state or municipal authority against Debtor or any officer of Debtor;

(q)    An event of default shall have occurred in or under any obligation, covenant or liability to Secured Party of the Debtor.

8.    Upon the occurrence of any such event of default, and at any time thereafter, Secured Party shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to the rights and remedies provided herein or in any other instrument or paper executed by Debtor. Secured Party shall have the right at all times after the occurrence of any event of default, to enter, with or without legal process and without being deemed guilty of any manner of trespass, any premises where the Collateral may be found, to take possession of the Collateral and to maintain such possession where the Collateral is located or to remove the Collateral or any part thereof to such other places as Secured Party may desire. Debtor agrees not to resist or interfere with any such action by Secured Party. Unless the Collateral or any portion thereof is perishable or threatens to decline speedily in value or is of a

8

type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made. The requirement of reasonable notice shall be met if such notice is mailed by certified mail, postage prepaid, to the address of Debtor shown in paragraph 3(b) of this Agreement at least ten (10) days before the time of the sale or disposition. No purchaser at any sale (public or private) shall be responsible for the application of the proceeds of sale. Before applying to the Obligations any proceeds of sale of Collateral, Secured Party is hereby authorized to apply said proceeds to all costs and expenses of collecting, holding, storing, insuring, manufacturing, processing, advertising, appraising, completing, delivering, selling, installing and discharging liens against or security interests in, the Collateral. Expenses of retaking, holding, selling and the like shall include reasonable attorneys' fees and expenses.

9.    (a) At the request of Debtor, Secured Party hereby authorizes and appoints Debtor, to collect, as trustee of Secured Party, at and through the office of Debtor, all Accounts, and to hold all collections and other proceeds therefrom without commingling the same with other funds of the Debtor. Upon Secured Party's request made at any time and from time to time, (whether or not an event of default has occurred hereunder) Debtor hereby specifically covenants and agrees to turn over, by mailing or otherwise delivering to the offices of Secured Party, on the day of Debtor's receipt thereof, and in the exact form received by Debtor, all cash, checks, drafts, notes and other evidences of payment received by Debtor in full or part payment of said Accounts, with full power in Secured Party to endorse and deposit such checks and other remittances in its own banking depositories, whether said checks or other remittances are made payable to the order of Secured Party or Debtor. Such privilege of collecting as trustee for Secured Party may be terminated by Secured Party at any time without notice or demand. Debtor shall and hereby agrees to submit to Secured Party with all remittances, a report in such form as Secured Party, from time to time, may require.

(a)    Debtor does hereby irrevocably make, constitute and appoint Secured Party or any officer or agent designated by Secured Party, Debtor's true and lawful attorney-in-fact, with power of substitution (i) to endorse the name of Debtor upon any notes, checks, drafts, money orders, or other instruments in payment of Accounts; to sign and endorse the name of Debtor upon any invoice, freight or expense bill, bill of lading, storage or warehouse receipts, other documents of title, any Collateral, drafts against Account Debtors, assignments, verifications, and notices in connection with Accounts, and any document relating thereto or to Debtor's rights therein; and (ii) to give such notice and directions, in writing or otherwise, to the United States Post

9

Office as may be necessary to effect delivery to Secured Party or any of its designated agents of all mail addressed to Debtor; hereby granting unto Debtor's said attorney full power to do any and all things necessary to be done in and about the premises as fully and effectually as Debtor might or could do, and hereby ratifying all that said attorney shall do or cause to be done by virtue hereof. This power of attorney, being coupled with an interest, shall be irrevocable until all Obligations are fully paid and performed.

    (b)  Secured Party may, at any time and from time to time (whether or not an event of default has occurred hereunder) and without notice to Debtor, notify Account Debtors that the Accounts have been assigned to Secured Party and that the Obligations of the Account Debtors to Debtor shall be paid directly to Secured Party. Upon request of Secured Party, at any time, Debtor shall so notify Account Debtors and shall indicate on all billings to Account Debtors that all monies due or owing thereon are payable directly to Secured Party. The giving of any such notification or the making of such a request shall not affect the duties of the Debtor described in paragraph 9(a) hereof with respect to proceeds of collection of Accounts received by the Debtor. Secured Party shall further have the right at any time, and from time to time (whether or not an event of default has occurred hereunder), directly or through its agents, (i) to collect any or all of the Accounts and, in its own or Debtor's name, to sell, transfer, set over, release, compromise, adjust, discharge or extend the time for payment or performance of the whole or any part of the Accounts or grant any discounts, allowances or credits thereon or bring any suit to enforce payments thereof; (ii) to arrange for verification of any of the Accounts under reasonable procedures directly with Account Debtors or by other methods; and (iv) to do all acts and things necessary or incidental to the effectuation of the purposes set forth in provisions (i), (ii) next preceding, including the right of suit; Debtor hereby ratifying and approving all that Secured Party may do by virtue hereof. Granting extensions to Account Debtors or to Debtor, suffering any delay, or permitting any breach by Debtor or Account Debtors in connection with any transactions between the parties hereto, shall in no way be construed as a waiver of or license to commit any subsequent breach, nor as a waiver of any further or other delays or of any of the rights of Secured Party against Debtor or Account Debtors, and Debtor's liability shall in no way be restricted, diminished or abated by virtue of any extensions or privileges so granted.

10

(c)     The remedies, rights and powers granted to Secured Party in paragraphs 9(a), (b) and (c) of this Agreement are solely to protect the interest of Secured Party and shall not impose any duty upon Secured Party to exercise any such remedy, right or power.  If Secured Party shall exercise any such remedy, right or power, Secured Party shall not be accountable for more than it actually receives as a result of the exercise of such remedy, right or power, but, in any event, Secured Party shall not be accountable except for authorized willful misconduct done in bad faith.  Neither Secured Party nor any of its officers, agents or attorneys will otherwise be liable for any acts or omissions nor for any error of judgment or mistake of fact or law.

(d)     Whether or not notice of assignment has been given, Debtor will not, without the express written consent of Secured Party, release, compromise or adjust any Account, or any guaranty, security or lien therefor, or grant any discounts, allowances or credits thereon, or bring any suit to enforce payment thereof.

10.     Any and all deposits or other sums at any time credited by or due from Secured Party to Debtor shall at all times constitute additional security for the Obligations and may be set-off against any Obligations at any time, whether or not they are then due or other security held by Secured Party is considered by Secured Party to be adequate. Any and all instruments, documents, policies and certificates of insurance, securities, goods, accounts receivable, chooses in action, chattel paper, cash, property and the proceeds thereof (whether or not the same are Collateral or proceeds thereof hereunder) owned by Debtor or in which Debtor has an interest, which now or hereafter are at any time in possession or control of Secured Party or in transit by mail or carrier to or from Secured Party or in the possession of any third party acting on Secured Party's behalf, without regard to whether Secured Party received the same in pledge, for safekeeping, as agent for collection or transmission or otherwise or whether Secured Party has conditionally released the same, shall constitute additional security for Obligations and may be applied at any time to Obligations which are then owing, whether due or not due, in any order and manner that Secured Party may, in its absolute discretion, determine.

11.     Debtor shall pay to Secured Party on demand any and all costs and expenses, including, but not limited to, all attorneys' fees and expenses (whether or not any legal action or proceeding is actually commenced), and all other expenses of like or unlike nature which may be expended or incurred by Secured Party to prepare any of the Financing Agreements or any amendments thereto, to obtain, maintain, protect, review, supervise, collect, realize or

11

enforce any Obligations or any Collateral, either as against Debtor, any Account Debtor or any guarantor or surety of Debtor, or in the prosecution or defense of any action, or concerning any matter growing out of or connected with the subject matter of this Agreement, the Obligations or the Collateral or any of Secured Party's rights or interests therein or thereto, including, without limiting the generality of the foregoing, any counsel fees or expenses including those incurred in any bankruptcy or insolvency proceedings. Secured Party is hereby authorized by Debtor to charge the foregoing costs and expenses to any deposit account maintained by Debtor with Secured Party.

12.    To the fullest extent permitted by law, Debtor hereby waives presentment, demand, notice of default, notice of dishonor, protest and all other forms of demand and notice with respect to the Obligations and the Collateral and all suretyship defenses. Debtor assents, with respect both to the Obligations and Collateral, to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of Collateral, to the addition or release or any party or person primarily or secondarily liable, to the acceptance of partial payments thereon and the settlement, compromise or adjustment thereof, all in such manner and at such time or times as Secured Party may deem advisable, at its sole discretion. Secured Party shall have no duty as to the preservation of rights against prior parties.

13.    Secured Party shall not be deemed to have waived any of Secured Party's rights hereunder or under any other agreement, instrument or paper signed by Debtor unless such waiver be in writing and signed by Secured Party. No delay or omission on the part of Secured Party in exercising any right shall operate as waiver of such right or any other right. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion. All Secured Party's rights and remedies, whether evidenced hereby or by any other agreement, instrument or paper, shall be cumulative and may be exercised separately or concurrently. Debtor agrees that Secured Party is not and shall not be obligated to exercise any particular right or remedy prior to the exercise of any other right or remedy. Any demand upon, or notice to, Debtor that Secured Party may elect to give shall be effective when deposited in the mails addressed to Debtor at the address shown in paragraph 3 (b) of this Agreement, as modified by any notice give pursuant thereto. Demands or notices addressed to Debtor's address at which Secured Party customarily communicates with Debtor shall also be effective.

12

14.    If at any time or times, by assignment or otherwise, Secured Party transfers any Obligations and Collateral or other security therefor, such transfer shall carry with it Secured Party's powers and rights under this Agreement with respect to the Obligations and Collateral or other security transferred and the transferee shall become vested with said powers and rights, whether or not they are specifically referred to in the transfer.  If and to the extent that Secured Party retains any other Obligation or Collateral or other security, Secured Party will continue to have the rights and powers herein set forth with respect thereto.

15.    All provisions herein shall inure to the benefit of, and become binding upon, the heirs, executors, administrators, successors, representatives, receivers, trustees, assignees, and legal representatives of the parties.

16.    Neither Debtor nor Secured Party shall be bound by any undertaking not expressed in writing.  This Agreement, all amendments thereto, all supplements thereof, and all acts, transactions, agreements, certificates, assignments and transfers thereunder, and all rights or the parties thereto, shall be  governed as to their validity, enforcement, construction and effect, and in all other respects, by the law of the Commonwealth of Massachusetts.  This Agreement shall become effective when executed by Debtor.

17.    It is further understood and agreed by the parties hereto that if any of the provisions of this Agreement shall contravene, or be invalid under, the law of the particular state, country or jurisdiction where used, such contravention or invalidity shall not invalidate the whole Agreement, but it shall be construed as if not containing the particular provision or provisions held to be invalid in the said particular state, country or jurisdiction, and the rights and obligations of the parties shall be construed and enforced accordingly.

13

18.   Debtor further agrees to execute and deliver to the Secured Party any instrument or instruments necessary, proper, or convenient to the Secured Party, as determined by Secured Party, to carry into effect the terms, provisions and conditions of this Agreement, and/or to facilitate the collection of Accounts.

Executed to take effect as an instrument under seal this _16th_ day of January 2007.

Attest:                          DEBTOR:

                                 NEW ENGLAND ALLERGY ASTHMA
                                 IMMUNOLOGY & PRIMARY CARE,
                                 P.C.,

                                 By: _____
                                     Dr. Thomas F. Johnson
                                     Director and President

Attest:                          SECURED PARTY:

                                 HEALTH COALITION, INC.

                                 By: _____
                                     Walter Shikany
                                     President

KENNETH G. SOUSA
MY COMMISSION # DD 455812
EXPIRES: August 30, 2009
Bonded Thru Budget Notary Services

P:\Clients\NE Allergy Asthma\Agreements\Security Agreement.doc

14

# EXHIBIT C

## PLEDGE AGREEMENT

**KNOW ALL BY THESE PRESENTS** that I, Dr. Thomas F. Johnson (the "Insured"), for valuable consideration, including the undertakings and performance mutually rendered under Settlement Agreement and Mutual Release ("Settlement Agreement") dated June 7, 2006 by and among New England Allergy Asthma Immunology & Primary Care, P.C. ("NEA") and Health Coalition ("HCI") and Dr. Thomas F. Johnson, hereby pledge that certain Term Life Insurance Policy No. Y096·106 having a face value of One Million Two Hundred Seventy-Four Dollars ($~~1,274,000.00~~) 1,978,789 (the "Policy") to HCI and assign the death benefits under such Policy to HCI as additional collateral to secure the payment of that certain promissory note dated June 7, 2006 (the "Note") made by NEA to HCI and guaranteed by the Insured in accordance with the terms of the Settlement Agreement.

Upon the death of the Insured HCI shall collect the proceeds of the Policy to satisfy the outstanding obligations of the Insured and NEA to HCI. In the event the proceeds of the Policy exceed the outstanding balance of such obligations, the HCI shall deliver such excess amount to the estate of the Insured.

The Insured shall execute and shall cause the issuer of the Policy to execute the issuer's standard form of assignment evidencing the transfer of the Policy to HCI. Upon payment in full of all obligations owed to HCI by NEA and Insured, HCI shall assign the Policy to Insured.

This Agreement is intended to take effect as a sealed instrument and has been executed or completed and is to be performed in Massachusetts, and it and all transactions hereunder or pursuant hereto shall be governed as to interpretation, validity, effect, rights, duties and remedies of the parties hereunder and in all other respects by the domestic laws of Massachusetts.

Executed this _16_ day of January, 2007.


Dr. Thomas F. Johnson

HEALTH COALITION, INC.

By: _____
Walter Shikany
President

# EXHIBIT D

**Forbes, Brian M. (Boston)**

| | |
|---|---|
| **From:** | Forbes, Brian M. (Boston) |
| **Sent:** | Monday, August 28, 2006 5:44 PM |
| **To:** | 'Peter Haley'; william@diadamo.com; 'Art McCabe' |
| **Cc:** | King, Jeffrey S. |
| **Subject:** | HCI v. NEA/Dr. Johnson |
| | |
| **Attachments:** | BOS-#974192-v6-HCI_NEA_Settlement_Agreement_and_Mutual_Release.DOC; BOS-#974194-v5-NEA_Promisory_Note.DOC; BOS-#974193-v2-Dr__Johnson_Guaranty.DOC; BOS-#974195-v2-Agreement_for_Judgment.DOC; BOS-#974196-v1-HCI_Stipulation_of_Dismissal_w_prejudice.DOC; BOS-#987341-v2-NEA_Life_Insurance_Pledge.DOC; BOS-#987342-v3-NEA_Security_Agreement.DOC; BOS-#994952-v2-Account_Control_Agreement.DOC |

Peter,

As you requested, I am attaching copies of the most recent versions of the following settlement documents:

1.    Settlement Agreement and Mutual Release
2.    Promissory Note
3.    Guaranty
4.    Agreement for Judgment
5.    Stipulation of Dismissal
6.    Pledge Agreement
7.    Security Agreement
8.    Account Control Agreement

The defendants have agreed to the terms and form of the attached documents. As I have mentioned in a number of emails and telephone messages/calls over the past several weeks, we still need some information and documents that are called for by the settlement agreement. Specifically, we need information/documents regarding the life insurance policy (or policies). Dr. Johnson has not yet provided us with a copy of the policy (or policies). We also need to see that HCI is listed as the primary beneficiary. Moreover, we need an assignment form from the insurance company that would effectuate assignment of the policy to HCI. Because the Settlement Agreement requires that the life insurance policy (or policies) must remain in place with all premiums paid current until the Promissory Note and Premium Payment (if appropriate) are paid in full, and that HCI will be provided with notice of non-payment of any premium owed and notice of any intent to terminate, we need to see documents evidencing this notice requirement. Defendants have had months to obtain this information/documentation and have provided nothing.

As for the account control agreement, we need to see evidence that the bank has signed off on it and has listed all of the NEA's accounts.

As I mentioned on the phone on Friday, August 25th if we do not have the required information by the close of business on Wednesday, August 30th we will move to enforce the Settlement Agreement and will seek costs for having to do so.

We look forward to your prompt response.

      

BOS-#974192-v6-H BOS-#974194-v5-N BOS-#974193-v2-D BOS-#974195-v2-A BOS-#974196-v1-H BOS-#987341-v2-N BOS-#987342-v3-N
CI_NEA_Settlem... EA_Promisory_N... r__Johnson_Gua... greement_for_J... CI_Stipulation... EA_Life_Insura... EA_Security_Ag...



BOS-#994952-v2-A
ccount_Control...

1

# EXHIBIT E

**Forbes, Brian M. (Boston)**

| | |
|---|---|
| **From:** | Gorman, Stacey |
| **Sent:** | Wednesday, November 29, 2006 5:14 PM |
| **To:** | 'haley@gordonhaley.com' |
| **Cc:** | Forbes, Brian M. (Boston); King, Jeffrey S. |
| **Subject:** | HCI v. New England Allergy |

Peter,

Following up on my message from earlier this evening, I write on behalf of Brian Forbes to discuss the execution of the settlement papers in the HCI v. NEA matter. As the Stipulation of Dismissal has been executed in the Atlantic Biological matter, we hope to gather the outstanding materials and execute the settlement papers in short order. To that end, please contact me at your earliest convenience to discuss the outstanding issues. Specifically, we need a copy of the insurance policy which lists HCI as the beneficiary as well as the control letter from the bank.

I look forward to working with you to close out this matter.

Regards,

Stacey

Stacey L. Gorman
Kirkpatrick & Lockhart Nicholson Graham LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617-261-3242

This electronic message contains information from the law firm of Kirkpatrick & Lockhart Nicholson Graham LLP that may be privileged and confidential. The information is intended for the use of the addressee(s) only. If you are not an addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at sgorman@klng.com

1

# EXHIBIT F

## Forbes, Brian M. (Boston)

**From:**   Gorman, Stacey
**Sent:**   Thursday, December 14, 2006 4:51 PM
**To:**    King, Jeffrey S.; Forbes, Brian M. (Boston)
**Subject:** FW: HCI v. NEA

**From:** Peter Haley [mailto:haley@gordonhaley.com]
**Sent:** Thursday, December 14, 2006 3:11 PM
**To:** Gorman, Stacey
**Subject:** RE: HCI v. NEA

Bank is considering our proposal on an unrelated issue, I expect both to be resolved as the Bank has put an end of week deadline in place.

Dr. Johnson has instructed his insurance broker to provide all necessary information and I am chasing him around to that end.  I am focused, albeit not as quick as I might like, on completing these issues.

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-261-0789 (facsimile)
haley@gordonhaley.com

    -----Original Message-----
    **From:** Gorman, Stacey [mailto:sgorman@klng.com]
    **Sent:** Thursday, December 14, 2006 2:46 PM
    **To:** Peter Haley
    **Cc:** Forbes, Brian M. (Boston); King, Jeffrey S.
    **Subject:** RE: HCI v. NEA

    Peter,

    Please provide me with a status update regarding the control agreement.  Additionally, has Dr. Johnson forwarded the insurance information to you?

    Thanks.

    Stacey

    **From:** Gorman, Stacey
    **Sent:** Tuesday, December 12, 2006 5:00 PM
    **To:** 'Peter Haley'
    **Cc:** Forbes, Brian M. (Boston); King, Jeffrey S.

12/28/2006

**Subject:** RE: HCI v. NEA

Peter,

In following up, did you receive a final answer on the control agreement today?

Stacey

---

**From:** Peter Haley [mailto:haley@gordonhaley.com]
**Sent:** Monday, December 11, 2006 4:13 PM
**To:** Gorman, Stacey
**Subject:** RE: HCI v. NEA

Stacey

Attached is the stipulation you requested as executed by both parties.  I believe I will have a final answer on the account control agreement tomorrow and will keep you advised.  Dr. Johnson advises that he is forwarding the insurance information.

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-261-0789 (facsimile)
haley@gordonhaley.com

----Original Message----
**From:** Gorman, Stacey [mailto:sgorman@klng.com]
**Sent:** Monday, December 11, 2006 3:59 PM
**To:** haley@gordonhaley.com
**Cc:** King, Jeffrey S.; Forbes, Brian M. (Boston)
**Subject:** HCI v. NEA


Peter,

I'm just checking in on the status of the insurance policy and control agreement.  I need to provide a status update by COB today so any information would be helpful.


Thanks.

Stacey


12/28/2006

# EXHIBIT G



State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
617.261.3100
Fax 617.261.3175
www.klng.com

Brian M. Forbes

617.261.3152
Fax: 617.261.3175
bforbes@klng.com

December 19, 2006

**Via Facsimile & Hand Delivery**

Peter J. Haley, Esq.
Gordon Haley LLP
101 Federal Street
Boston, MA  02110

> **Health Coalition, Inc. v. New England Allergy Asthma &
> Immunology & Primary Care, P.C. and Thomas F. Johnson
> <u>Civil Action No. 05-cv-11816 MEL</u>**

Dear Peter:

I write with respect to the settlement reached by and between Health Coalition, Inc. ("HCI"),
New England Allergy Asthma & Immunology & Primary Care, P.C. ("New England Allergy")
and Thomas F. Johnson, MD ("Dr. Johnson").

As you are well aware, the parties reached agreement on the settlement in the above-reference
matter in June 2006.  Thereafter, the parties worked to prepare the settlement documents and to
obtain the documentation required under the settlement, including an account control agreement
and a life insurance policy (or polices) covering the life of Dr. Johnson and naming Health
Coalition, Inc. as the first beneficiary.

In August 2006, you informed us for the first time that New England Allergy and Dr. Johnson
could not execute the settlement documents due to the issuance of a restraining order in another
case against your clients, styled <u>Atlantic Biologicals Corporation v. New England Allergy
Asthma Immunology & Primary Care, P.C. and Thomas F. Johnson, M.D.</u>, Essex Superior Court
Civil Action No. 06-640D ("Atlantic Biological").

On November 28, 2006, you informed us that the Atlantic Biological matter had settled and
provided us with a stipulation of dismissal signed by Atlantic Biological.  At that time, New
England Allergy and Dr. Johnson were no longer restrained from completing and executing the
settlement documents with HCI.  Despite repeated requests, New England Allergy and Dr.
Johnson have not provided HCI the documentation required under the settlement agreement,
including copies of the life insurance policy (or policies) and all riders, with a face value of



**Kirkpatrick & Lockhart Nicholson Graham** LLP

Peter J. Haley, Esq.
December 19, 2006
Page 2

$1,274,000.00, an appropriate assignment of the policy (or policies) to HCI, beneficiary designations naming HCI as the first beneficiary in line for payment, notices of premium payment, and waivers from other beneficiaries and heirs. The Pledge Agreement and the "Inforce" Statement dated September 7, 2006 for the policy owned by Carleen Johnson that you forwarded to Stacey Gorman on December 19, 2006 do not satisfy defendants' requirements under the settlement agreement. Further, despite your repeated assurances to the contrary, you have failed to inform us whether NEA's bank will agree to execute the control agreement.

New England Allergy and Dr. Johnson's continued delay is in disregard for their obligations under the settlement agreement with NEA. New England Allergy and Dr. Johnson have known about their obligations and the documentary requirement since June. Yet, it appears that defendants have not taken the necessary steps to complete this transaction. In fact, despite reaching agreement on the material terms of this settlement over six months ago, HCI has yet to obtain any benefit from the settlement.

Given the protracted delay, HCI hereby demands that a copy of an executed account control agreement and finalized life insurance policy and other required documentation be transmitted to our office by close of business on December 20, 2006. If New England Allergy and Dr. Johnson fail to provide these materials, HCI will have no choice but to file with the court a Renewed Motion to Enforce the Settlement Agreement and seek sanctions and attorneys fees for the repeated delays.

Please feel free to contact me if you have any questions.

Sincerely,

Brian M. Forbes

cc:     William H. DiAdamo, Esq. (via facsimile)
        Jeffrey S. King, Esq.

# EXHIBIT H

**Forbes, Brian M. (Boston)**

| | |
|---|---|
| **From:** | Forbes, Brian M. (Boston) |
| **Sent:** | Thursday, December 21, 2006 5:23 PM |
| **To:** | 'Peter Haley' |
| **Cc:** | King, Jeffrey S. |
| **Subject:** | RE: NEA |

Peter,

With respect to the life insurance, we have informed you several times about the
information/documents that we still need. To begin, the defendants drafted the Pledge
Agreement, not us. Regardless, the deficiency is not with the pledge. The deficiency is
with the absence of documents still needed to effect the life insurance security. We
still need to see the following:

1)    A copy of the policy (or policies) with all riders;

2)    Documents evidencing that HCI is listed as the owner and the primary beneficiary.
The "Inforce Statement" that you recently sent us is for a life policy owned by Carleen
Johnson, not Dr. Johnson. To that end, there must be documentation effecting an
assignment of the policy to HCI;

3)    Because the Settlement Agreement requires that the life insurance policy (or
policies) must remain in place with all premiums paid current until the Promissory Note
and Premium Payment (if appropriate) are paid in full, we need documents confirming that
HCI will be provided with notice of non-payment of any premium owed and notice of any
intent to terminate; and

4)    Waivers from other beneficiaries.

We have requested this information/documents for months, both in telephone calls and in
writing. This information/documents should not be difficult to obtain. Again, to
facilitate the process, we can contact the insurance agent directly if you provide us with
his/her contact information.

With respect to the control agreement, we request a letter from the bank stating that they
will not execute a control agreement with any of its borrowers, including NEA and any of
its creditors. At that same time, we would like to talk to the bank to get a better
understanding of concerns that they may have with the control agreement and see if there
are some changes to the agreement that would make it acceptable. To that end, we request
that you provide contact information for the appropriate person at the bank.

Given the protracted delay, we demand that you provide the above referenced
information/documents by the close of business on December 27th, so that HCI can proceed
accordingly. We look forward to hearing from you.

Regards,

Brian

-----Original Message-----
From: Peter Haley [mailto:haley@gordonhaley.com]
Sent: Thursday, December 21, 2006 11:32 AM
To: Forbes, Brian M. (Boston)
Subject: RE: NEA

Brian

Pursuant to your request, I have asked TD Banknorth for their final position on this
matter, they have stated that they will not execute any control agreements with HCI and
have informed me that this is not an issue with HCI or Dr. Johnson but they will not
execute such an agreement with any of their borrowers.

You have not stated what the deficiency is with the life insurance provided.
The form of pledge agreement was drafted by you, so I assume that is not the problem.    The
policy has a death benefit of $1,978,789.04.   Please provide me with notice of any
deficiencies so I can amend or correct them to your satisfaction.

Thanks

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-261-0789 (facsimile)
haley@gordonhaley.com


-----Original Message-----
From: Forbes, Brian M. (Boston) [mailto:bforbes@klng.com]
Sent: Wednesday, December 20, 2006 1:39 PM
To: Peter Haley
Subject: RE: NEA

December 19, 2006

Via Facsimile & Hand Delivery

Peter J. Haley, Esq.
Gordon Haley LLP
101 Federal Street
Boston, MA  02110

        Health Coalition, Inc. v. New England Allergy Asthma &
Immunology & Primary Care,    P.C. and Thomas F. Johnson
        Civil Action No. 05-cv-11816 MEL

Dear Peter:

I write with respect to the settlement reached by and between Health Coalition, Inc.
("HCI"), New England Allergy Asthma & Immunology & Primary Care, P.C. ("New England
Allergy") and Thomas F. Johnson, MD ("Dr. Johnson").

As you are well aware, the parties reached agreement on the settlement in the above-
reference matter in June 2006.  Thereafter, the parties worked to prepare the settlement
documents and to obtain the documentation required under the settlement, including an
account control agreement and a life insurance policy (or polices) covering the life of
Dr. Johnson and naming Health Coalition, Inc. as the first beneficiary.

In August 2006, you informed us for the first time that New England Allergy and Dr.
Johnson could not execute the settlement documents due to the issuance of a restraining
order in another case against your clients, styled Atlantic Biologicals Corporation v. New
England Allergy Asthma Immunology & Primary Care, P.C. and Thomas F. Johnson, M.D., Essex
Superior Court Civil Action No. 06-640D ("Atlantic Biological").

On November 28, 2006, you informed us that the Atlantic Biological matter had settled and
provided us with a stipulation of dismissal signed by Atlantic Biological.  At that time,
New England Allergy and Dr. Johnson were no longer restrained from completing and
executing the settlement documents with HCI.  Despite repeated requests, New England
Allergy and Dr. Johnson have not provided HCI the documentation required under the
settlement agreement, including copies of the life insurance policy (or policies) and all
riders, with a face value of $1,274,000.00, an appropriate assignment of the policy (or
policies) to HCI, beneficiary designations naming HCI as the first beneficiary in line for
payment, notices of premium payment, and waivers from other beneficiaries and heirs.  The
Pledge Agreement and the "Inforce"

# EXHIBIT I

**Forbes, Brian M. (Boston)**

| | |
|---|---|
| **From:** | Peter Haley [haley@gordonhaley.com] |
| **Sent:** | Friday, December 22, 2006 8:28 AM |
| **To:** | Forbes, Brian M. (Boston) |
| **Cc:** | King, Jeffrey S. |
| **Subject:** | RE: NEA |

Brian

I have copied you on my email to Dana Wedge at TD Banknorth relaying your request.  I am informed that the responsible agent at Metropolitan Life Policy is Chris Psaledas with New England Financial phone number 603-668-8380.

I will call him with the additional insurance requests.  NEA is prepared to wire the 250k and begin payments.  I suggest that we move forward on that. Please send me wire instructions for the initial payment.

Thanks

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-261-0789 (facsimile)
haley@gordonhaley.com


-----Original Message-----
From: Forbes, Brian M. (Boston) [mailto:bforbes@klng.com]
Sent: Thursday, December 21, 2006 5:23 PM
To: Peter Haley
Cc: King, Jeffrey S.
Subject: RE: NEA

Peter,

With respect to the life insurance, we have informed you several times about the   information/documents that we still need.  To begin, the defendants drafted the Pledge Agreement, not us.  Regardless, the deficiency is not with the pledge.  The deficiency is with the absence of documents still needed to effect the life insurance security.  We still need to see the following:

1)    A copy of the policy (or policies) with all riders;

2)    Documents evidencing that HCI is listed as the owner and the primary beneficiary.  The "Inforce Statement" that you recently sent us is for a life policy owned by Carleen Johnson, not Dr. Johnson.  To that end, there must be documentation effecting an assignment of the policy to HCI;

3)    Because the Settlement Agreement requires that the life insurance policy (or policies) must remain in place with all premiums paid current until the Promissory Note and Premium Payment (if appropriate) are paid in full, we need documents confirming that HCI will be provided with notice of non-payment of any premium owed and notice of any intent to terminate; and

4)    Waivers from other beneficiaries.

We have requested this information/documents for months, both in telephone calls and in

1

writing.  This information/documents should not be difficult to obtain.  Again, to facilitate the process, we can contact the insurance agent directly if you provide us with his/her contact information.

With respect to the control agreement, we request a letter from the bank stating that they will not execute a control agreement with any of its borrowers, including NEA and any of its creditors.  At that same time, we would like to talk to the bank to get a better understanding of concerns that they may have with the control agreement and see if there are some changes to the agreement that would make it acceptable.  To that end, we request that you provide contact information for the appropriate person at the bank.

Given the protracted delay, we demand that you provide the above referenced information/documents by the close of business on December 27th, so that HCI can proceed accordingly.  We look forward to hearing from you.

Regards,

Brian

-----Original Message-----
From: Peter Haley [mailto:haley@gordonhaley.com]
Sent: Thursday, December 21, 2006 11:32 AM
To: Forbes, Brian M. (Boston)
Subject: RE: NEA

Brian

Pursuant to your request, I have asked TD Banknorth for their final position on this matter, they have stated that they will not execute any control agreements with HCI and have informed me that this is not an issue with HCI or Dr. Johnson but they will not execute such an agreement with any of their borrowers.

You have not stated what the deficiency is with the life insurance provided.  The form of pledge agreement was drafted by you, so I assume that is not the problem.  The policy has a death benefit of $1,978,789.04.  Please provide me with notice of any deficiencies so I can amend or correct them to your satisfaction.

Thanks

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-261-0789 (facsimile)
haley@gordonhaley.com


-----Original Message-----
From: Forbes, Brian M. (Boston) [mailto:bforbes@klng.com]
Sent: Wednesday, December 20, 2006 1:39 PM
To: Peter Haley
Subject: RE: NEA

December 19, 2006

Via Facsimile & Hand Delivery

Peter J. Haley, Esq.
Gordon Haley LLP
101 Federal Street
Boston, MA  02110

          Health Coalition, Inc. v. New England Allergy Asthma &
Immunology & Primary Care,    P.C. and Thomas F. Johnson
          Civil Action No. 05-cv-11816 MEL

Dear Peter:

I write with respect to the settlement reached by and between Health Coalition, Inc.
("HCI"), New England Allergy Asthma & Immunology & Primary Care, P.C. ("New England
Allergy") and Thomas F. Johnson, MD ("Dr. Johnson").

As you are well aware, the parties reached agreement on the settlement in the above-
reference matter in June 2006.  Thereafter, the parties worked to prepare the settlement
documents and to obtain the documentation required under the settlement, including an
account control agreement and a life insurance policy (or polices) covering the life of
Dr. Johnson and naming Health Coalition, Inc. as the first beneficiary.

In August 2006, you informed us for the first time that New England Allergy and Dr.
Johnson could not execute the settlement documents due to the issuance of a restraining
order in another case against your clients, styled Atlantic Biologicals Corporation v. New
England Allergy Asthma Immunology & Primary Care, P.C. and Thomas F. Johnson, M.D., Essex
Superior Court Civil Action No. 06-640D ("Atlantic Biological").

On November 28, 2006, you informed us that the Atlantic Biological matter had settled and
provided us with a stipulation of dismissal signed by Atlantic Biological.  At that time,
New England Allergy and Dr. Johnson were no longer restrained from completing and
executing the settlement documents with HCI.  Despite repeated requests, New England
Allergy and Dr. Johnson have not provided HCI the documentation required under the
settlement agreement, including copies of the life insurance policy (or policies) and all
riders, with a face value of $1,274,000.00, an appropriate assignment of the policy (or
policies) to HCI, beneficiary designations naming HCI as the first beneficiary in line for
payment, notices of premium payment, and waivers from other beneficiaries and heirs.  The
Pledge Agreement and the "Inforce"
Statement dated September 7, 2006 for the policy owned by Carleen Johnson that you
forwarded to Stacey Gorman on December 19, 2006 do not satisfy defendants' requirements
under the settlement agreement.
Further, despite your repeated assurances to the contrary, you have failed to inform us
whether NEA's bank will agree to execute the control agreement.

New England Allergy and Dr. Johnson's continued delay is in disregard for their
obligations under the settlement agreement with NEA.  New England Allergy and Dr. Johnson
have known about their obligations and the documentary requirement since June.  Yet, it
appears that defendants have not taken the necessary steps to complete this transaction.
In fact, despite reaching agreement on the material terms of this settlement over six
months ago, HCI has yet to obtain any benefit from the settlement.

Given the protracted delay, HCI hereby demands that a copy of an executed account control
agreement and finalized life insurance policy and other required documentation be
transmitted to our office by close of business on December 20, 2006.  If New England
Allergy and Dr.
Johnson fail to provide these materials, HCI will have no choice but to file with the
court a Renewed Motion to Enforce the Settlement Agreement and seek sanctions and
attorneys fees for the repeated delays.

Please feel free to contact me if you have any questions.

Sincerely,

Brian M. Forbes


cc:   William H. DiAdamo, Esq. (via facsimile)
Jeffrey S. King, Esq.

-----Original Message-----
From: Peter Haley [mailto:Haley@gordonhaley.com]
Sent: Wednesday, December 20, 2006 12:04 PM
To: Forbes, Brian M. (Boston)

                                    3

Subject: NEA

Brian

I am in NY until tomorrow.  I am advised that you have sent a ltr dated yesterday with a deadline of today.  I will be unable to review or respond until tomorrow. If you could paste the text in an email msg that wld facilitate my response. Thanks.

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617 261 0100
haley@gordonhaley.com

# EXHIBIT J

**Gorman, Stacey**

| | |
|---|---|
| **From:** | Forbes, Brian M. (Boston) |
| **Sent:** | Friday, December 22, 2006 12:38 PM |
| **To:** | 'Peter Haley' |
| **Cc:** | King, Jeffrey S. |
| **Subject:** | RE: NEA |

Peter,

I spoke with Chris Psaledas at New England Financial regarding the life insurance. The broker was cordial, but he indicated that they could not provide HCI with any information in my email below without written authorization from the Johnsons.  Mr. Psaledas also indicated that the matter will be handled by his supervisor, Dana Phillips at 603.668.8380 x1116.  Mr. Psaledas also indicated that it should not take long to provide what is necessary.

Again, it is defendants' obligation to resolve these issues and obtain the required information/documents necessary under the settlement agreement from the insurance agent. Defendants have had over 6 months to obtain the necessary documents/information/authorizations.  These issues are yours issues to work out and must be done by Wednesday of next week.

Brian

-----Original Message-----
From: Peter Haley [mailto:haley@gordonhaley.com]
Sent: Friday, December 22, 2006 8:28 AM
To: Forbes, Brian M. (Boston)
Cc: King, Jeffrey S.
Subject: RE: NEA

Brian

I have copied you on my email to Dana Wedge at TD Banknorth relaying your request.  I am informed that the responsible agent at Metropolitan Life Policy is Chris Psaledas with New England Financial phone number 603-668-8380.

I will call him with the additional insurance requests.  NEA is prepared to wire the 250k and begin payments.  I suggest that we move forward on that.
Please send me wire instructions for the initial payment.

Thanks

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-261-0789 (facsimile)
haley@gordonhaley.com


-----Original Message-----
From: Forbes, Brian M. (Boston) [mailto:bforbes@klng.com]
Sent: Thursday, December 21, 2006 5:23 PM
To: Peter Haley
Cc: King, Jeffrey S.
Subject: RE: NEA

1

Peter,

With respect to the life insurance, we have informed you several times
about the   information/documents that we still need.  To begin, the
defendants drafted the Pledge Agreement, not us.  Regardless, the deficiency is not with
the pledge.  The deficiency is with the absence of documents still needed to effect the
life insurance security.  We still need to see the following:

1)    A copy of the policy (or policies) with all riders;

2)    Documents evidencing that HCI is listed as the owner and the
primary beneficiary.  The "Inforce Statement" that you recently sent us is for a life
policy owned by Carleen Johnson, not Dr. Johnson.  To that end, there must be
documentation effecting an assignment of the policy to HCI;

3)    Because the Settlement Agreement requires that the life
insurance policy (or policies) must remain in place with all premiums paid current until
the Promissory Note and Premium Payment (if
appropriate) are paid in full, we need documents confirming that HCI will be provided with
notice of non-payment of any premium owed and notice of any intent to terminate; and

4)    Waivers from other beneficiaries.

We have requested this information/documents for months, both in telephone calls and in
writing.  This information/documents should not be difficult to obtain.  Again, to
facilitate the process, we can contact the insurance agent directly if you provide us with
his/her contact information.

With respect to the control agreement, we request a letter from the bank stating that they
will not execute a control agreement with any of its borrowers, including NEA and any of
its creditors.  At that same time, we would like to talk to the bank to get a better
understanding of concerns that they may have with the control agreement and see if there
are some changes to the agreement that would make it acceptable.  To that end, we request
that you provide contact information for the appropriate person at the bank.

Given the protracted delay, we demand that you provide the above referenced
information/documents by the close of business on December 27th, so that HCI can proceed
accordingly.  We look forward to hearing from you.

Regards,

Brian

-----Original Message-----
From: Peter Haley [mailto:haley@gordonhaley.com]
Sent: Thursday, December 21, 2006 11:32 AM
To: Forbes, Brian M. (Boston)
Subject: RE: NEA

Brian

Pursuant to your request, I have asked TD Banknorth for their final position on this
matter, they have stated that they will not execute any control agreements with HCI and
have informed me that this is not an issue with HCI or Dr. Johnson but they will not
execute such an agreement with any of their borrowers.

You have not stated what the deficiency is with the life insurance provided.
The form of pledge agreement was drafted by you, so I assume that is not the problem.  The
policy has a death benefit of $1,978,789.04.  Please provide me with notice of any
deficiencies so I can amend or correct them to your satisfaction.

Thanks

PJH

2

Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-261-0789 (facsimile)
haley@gordonhaley.com


-----Original Message-----
From: Forbes, Brian M. (Boston) [mailto:bforbes@klng.com]
Sent: Wednesday, December 20, 2006 1:39 PM
To: Peter Haley
Subject: RE: NEA

December 19, 2006

Via Facsimile & Hand Delivery

Peter J. Haley, Esq.
Gordon Haley LLP
101 Federal Street
Boston, MA  02110

     Health Coalition, Inc. v. New England Allergy Asthma &
Immunology & Primary Care,    P.C. and Thomas F. Johnson
     Civil Action No. 05-cv-11816 MEL

Dear Peter:

I write with respect to the settlement reached by and between Health Coalition, Inc.
("HCI"), New England Allergy Asthma & Immunology & Primary Care, P.C. ("New England
Allergy") and Thomas F. Johnson, MD ("Dr. Johnson").

As you are well aware, the parties reached agreement on the settlement in the above-
reference matter in June 2006.  Thereafter, the parties worked to prepare the settlement
documents and to obtain the documentation required under the settlement, including an
account control agreement and a life insurance policy (or polices) covering the life of
Dr. Johnson and naming Health Coalition, Inc. as the first beneficiary.

In August 2006, you informed us for the first time that New England Allergy and Dr.
Johnson could not execute the settlement documents due to the issuance of a restraining
order in another case against your clients, styled Atlantic Biologicals Corporation v. New
England Allergy Asthma Immunology & Primary Care, P.C. and Thomas F. Johnson, M.D., Essex
Superior Court Civil Action No. 06-640D ("Atlantic Biological").

On November 28, 2006, you informed us that the Atlantic Biological matter had settled and
provided us with a stipulation of dismissal signed by Atlantic Biological.  At that time,
New England Allergy and Dr. Johnson were no longer restrained from completing and
executing the settlement documents with HCI.  Despite repeated requests, New England
Allergy and Dr. Johnson have not provided HCI the documentation required under the
settlement agreement, including copies of the life insurance policy (or policies) and all
riders, with a face value of $1,274,000.00, an appropriate assignment of the policy (or
policies) to HCI, beneficiary designations naming HCI as the first beneficiary in line for
payment, notices of premium payment, and waivers from other beneficiaries and heirs.  The
Pledge Agreement and the "Inforce"
Statement dated September 7, 2006 for the policy owned by Carleen Johnson that you
forwarded to Stacey Gorman on December 19, 2006 do not satisfy defendants' requirements
under the settlement agreement.
Further, despite your repeated assurances to the contrary, you have failed to inform us
whether NEA's bank will agree to execute the control agreement.

New England Allergy and Dr. Johnson's continued delay is in disregard for their
obligations under the settlement agreement with NEA.  New England Allergy and Dr. Johnson
have known about their obligations and the documentary requirement since June.  Yet, it
appears that defendants have not taken the necessary steps to complete this transaction.
In fact, despite reaching agreement on the material terms of this settlement over six

months ago, HCI has yet to obtain any benefit from the settlement.

Given the protracted delay, HCI hereby demands that a copy of an executed account control agreement and finalized life insurance policy and other required documentation be transmitted to our office by close of business on December 20, 2006.  If New England Allergy and Dr.
Johnson fail to provide these materials, HCI will have no choice but to file with the court a Renewed Motion to Enforce the Settlement Agreement and seek sanctions and attorneys fees for the repeated delays.

Please feel free to contact me if you have any questions.

Sincerely,

Brian M. Forbes


cc:   William H. DiAdamo, Esq. (via facsimile)
Jeffrey S. King, Esq.

-----Original Message-----
From: Peter Haley [mailto:Haley@gordonhaley.com]
Sent: Wednesday, December 20, 2006 12:04 PM
To: Forbes, Brian M. (Boston)
Subject: NEA

Brian

I am in NY until tomorrow.  I am advised that you have sent a ltr dated yesterday with a deadline of today.  I will be unable to review or respond until tomorrow. If you could paste the text in an email msg that wld facilitate my response. Thanks.

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617 261 0100
haley@gordonhaley.com

4

# EXHIBIT K

**Gorman, Stacey**

| | |
|---|---|
| **From:** | Gorman, Stacey |
| **Sent:** | Wednesday, January 03, 2007 7:21 PM |
| **To:** | 'Peter Haley' |
| **Cc:** | King, Jeffrey S.; Forbes, Brian M. (Boston) |
| **Subject:** | HCI v. NEA |

Peter,

I write to confirm our discussion from earlier today regarding the Rule 7.1 conference for HCI's Renewed Motion to Enforce the Settlement Agreement and our efforts to narrow the scope of the issues.

1) As a result of our discussions, you provided us with a copy of the letter that Carlene Johnson's intended to deliver to New England Financial, stating that she sought to pledge the policy for the benefit of HCI and requested that New England Financial provide her with copies of the policy and all riders, documents evidencing that HCI is listed as the owner and primary beneficiary, and documents confirming that HCI will be provided with notice of nonpayment of any premium owned and notice of any intent to terminate. We requested that the letter include a statement whereby Mrs. Johnson would grant New England Financial permission to provide HCI's counsel with information and/or documents regarding this pledge and policy. You agreed to include such language. Please provide us with a copy of the executed letter containing the language discussed.

2) You represented that the letter from Carlene Johnson to New England Financial would be delivered today. We requested that you provide proof of delivery of this letter. Please provide us with proof of delivery of the executed letter from Mrs. Johnson to New England Financial.

3) We informed you that this matter needed to be buttoned up by noon on Friday, January 5, 2007 or we would need to file our Renewed Motion. "Buttoned up" includes production of all necessary insurance documents to effect the pledge, as well as original signatures in hand on the Settlement Agreement and all other documents related to the Settlement Agreement, including without limitation, the Pledge Agreement, the Promissory Note, the Personal Guaranty, the Agreement for Judgment, the Stipulation of Dismissal, the Security Agreement and the Account Control Agreement. If NEA and Dr. Johnson are unable to provide all necessary information and/or document by 12 p.m. on Friday, January 5, 2007, our client has instruct us to file the Motion.

4) Please note that we are in receipt of your email concerning communications with TD BankNorth related to the Account Control Agreement as we requested. We will be in touch regarding this issue in the near future.

If you have any questions, please feel free to contact me.


Regards,

Stacey L. Gorman
K&L Gates
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617-261-3242

1

# EXHIBIT L

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH COALITION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NEW ENGLAND ALLERGY ASTHMA | ) |
| IMMUNOLOGY & PRIMARY CARE, | ) |
| P.C. and THOMAS F. JOHNSON, | ) |
| Individually | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 05-cv-11816 MEL

**[Proposed] ORDER**

HAVING CONSIDERED all relevant submissions in connection with Plaintiff Health

Coalition, Inc.'s Renewed Motion to Enforce Settlement Agreement (Docket No. 30 ), it is

hereby ORDERED that:

1) The Settlement Agreement by and between Plaintiffs Health Coalition, Inc. ("HCI")

and Defendants New England Allergy Asthma Immunology & Primary Care, P.C. and Thomas

F. Johnson shall be entered as an Order of the Court.

2) Defendants New England Allergy Asthma Immunology & Primary Care, P.C. and

Thomas F. Johnson shall *use its best efforts to* provide plaintiff HCI with the information and/or documents listed

below, no later than *Jan 51*, 2007:

- Insurance information

  - A copy of the insurance policy (or policies) with all riders;

  - Documents evidencing that HCI is listed as the owner and the primary
    beneficiary of the policy;

- Confirmation that HCI will be provided with notice of non-payment of any premium owed and notice of intent to terminate; and

- Waivers from other beneficiaries.

- Control Agreement

  - Formal written documentation from TD BankNorth to HCI confirming that TD BankNorth will not execute a control agreement for Defendants and HCI, or Defendants and any of their creditors.

3) Defendants shall perform under the Settlement Agreement, including without limitation, by providing documents and/or information necessary to comply with the settlement with HCI, and by executing the appropriate documents to effect the settlement between HCI and Defendants.

4) Defendants New England Allergy Asthma Immunology & Primary Care, P.C. and Thomas F. Johnson shall pay HCI for all costs associated with its efforts to obtain the above-referenced documentation, including but not limited to all attorneys' fees and costs incurred in connection with the Renewed Motion to Enforce the Settlement.

IT IS SO ORDERED

Dated: _Jan 17_____, 2007

_____
Judge Morris E. Lasker
United States District Court Judge

- 2 -

# EXHIBIT M

GORDON HALEY LLP

COUNSELLORS AT LAW
101 FEDERAL STREET
BOSTON, MASSACHUSETTS 02110-1844

(617) 261-0100
FAX (617) 261-0789

January 31, 2007

By Hand

Brian M. Forbes, Esquire
Kirkpatrick & Lockhart Nicholson Graham LLP
75 State Street, 6th Floor
Boston, Massachusetts 02110

Re:   Health Coalition, Inc. v. New England Allergy Asthma Immunology & Primary Care,
      P.C., et al
      United States District Court Civil Action No. 05-cv-11816-MEL

Dear Brian:

Enclosed please find the following:

    1.     Settlement Agreement and Mutual Release;
    2.     Promissory Note;
    3.     Guaranty;
    4.     Agreement for Judgment;
    5.     Security Agreement; and
    6.     Pledge Agreement.

Please hold these documents in escrow until such time as you have filed Exhibit D to the Settlement
Agreement, the Stipulation of Dismissal, with the Court.

On January 3, 2007, Carleen Johnson sent by overnight delivery a letter to New England
Financial requesting the documents and appropriate forms for assignment of the insurance
policy. On or about January 18, 2007, Mrs. Johnson received a letter dated January 10, 2007
requesting that she complete and sign a form necessary for the assignment. She completed and
returned the form by facsimile on that day. By telephone inquiry today, Mrs. Johnson was
informed that the completed assignment and information had been sent out yesterday, January
30, 2007, by first class mail. We will, of course, forward that when received.

## GORDON HALEY LLP

Brian M. Forbes, Esquire
January 31, 2007
Page 2

Please let me know if you require anything further.

Sincerely,

Peter J. Haley

PJH:vsh

cc:    Thomas F. Johnson, M.D. (with enclosures)
        William H. DiAdamo, Esquire

P:\Clients\NE Allergy Asthma\Health\Corr\Forbes ltr03 013107.doc

# EXHIBIT N

| | |
|---|---|
| **From:** | Forbes, Brian M. (Boston) |
| **Sent:** | Thursday, February 01, 2007 9:57 AM |
| **To:** | 'Peter Haley' |
| **Cc:** | King, Jeffrey S. |
| **Subject:** | HCI v. NEA |

Peter,

Yesterday afternoon I received the executed settlement documents in the above-reference case. It appears that Dr. Johnson did not date some of the documents. Specifically, part of the Promissory Note (w/the exception of the signature block) and Guaranty are not dated. Because it appears that Dr. Johnson executed these documents on January 19, 2007, I plan fill in the missing dates for January 19th. At the same time, the Guaranty, which mentions both the Settlement Agreement and Promissory Note, does not have the dates of those documents filled in. I plan to indicate on the Guaranty that the Settlement Agreement is dated January 16, 2007 and the promissory note is dated January 19, 2007. Please let me know immediately if you do not agree with this approach.

As you mentioned in your cover letter dated January 31, 2007, the completed assignment of the insurance policy and related documents have been sent by U.S. Mail. Because we have not received the required insurance documentation in compliance with the Court's order dated January 17, 2007 we request that you/New England Financial immediately fax copies of those documents to me. We look forward to hearing from you.

Regards,

Brian

# EXHIBIT O

**From:** Forbes, Brian M. (Boston)
**Sent:** Monday, February 05, 2007 2:57 PM
**To:** 'Peter Haley'; william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** RE: HCI v. NEA

Peter and Bill,

We are very troubled by the absence of insurance documents produced in connection with the settlement of the above-reference matter.  At a minimum, we believe that you are in breach of paragraph 2 of the attached Court Order dated January 17, 2007.  It appears that you are not using your "best efforts" to provide HCI with the insurance documents identified in paragraph 2 of the Order. In Peter's letter dated January 31, 2007, you mentioned that the insurance information/documents were in the mail to Mrs. Johnson.  Nearly a three weeks have gone by since the Court issued its Order and we still do not have any of the insurance documents identified in the Order. Please outline the steps you have taken to comply with paragraph 2.  If we do not have full compliance with the Order, including defendants providing all required insurance information/documents by the close of business on Wednesday, we will go back to the Court and seek appropriate relief, which may include, without limitation: contempt, sanctions, and attorneys' fees.  We look forward to your immediate response and compliance.

Regards,

Brian


**From:** Forbes, Brian M. (Boston)
**Sent:** Thursday, February 01, 2007 10:07 AM
**To:** 'Peter Haley'
**Cc:** King, Jeffrey S.
**Subject:** RE: HCI v. NEA

Peter,

I will fill in the dates as noted below.  Given that New England Financial will also have copies of the documents, please have them fax the documents to me.  Thanks.

Brian

**From:** Peter Haley [mailto:haley@gordonhaley.com]
**Sent:** Thursday, February 01, 2007 10:04 AM
**To:** Forbes, Brian M. (Boston)

03/04/2007

Brian

I am in agreement with the dates. I apologize for the oversight.

The insurance documents were sent by the insurance company to Mrs. Johnson.  As soon as she receives them we will have them faxed over immediately.

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-261-0789 (facsimile)
haley@gordonhaley.com

-----Original Message-----
**From:** Forbes, Brian M. (Boston) [mailto:brian.m.forbes@klgates.com]
**Sent:** Thursday, February 01, 2007 9:57 AM
**To:** Peter Haley
**Cc:** King, Jeffrey S.
**Subject:** HCI v. NEA


Peter,

Yesterday afternoon I received the executed settlement documents in the above-reference case.  It appears that Dr. Johnson did not date some of the documents.  Specifically, part of the Promissory Note (w/the exception of the signature block) and Guaranty are not dated.  Because it appears that Dr. Johnson executed these documents on January 19, 2007, I plan fill in the missing dates for January 19th. At the same time, the Guaranty, which mentions both the Settlement Agreement and Promissory Note, does not have the dates of those documents filled in.  I plan to indicate on the Guaranty that the Settlement Agreement is dated January 16, 2007 and the promissory note is dated January 19, 2007.   Please let me know immediately if you do not agree with this approach.

As you mentioned in your cover letter dated January 31, 2007, the completed assignment of the insurance policy and related documents have been sent by U.S. Mail.  Because we have not received the required insurance documentation in compliance with the Court's order dated January 17, 2007 we request that you/New England Financial immediately fax copies of those documents to me.  We look forward to hearing from you.


Regards,


Brian

This electronic message contains information from the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at brian.m.forbes@klgates.com.

03/04/2007

# EXHIBIT P

New England Life Insurance Company

# MetLife®

## Assignment of Life Insurance Policy as Collateral

**A.** For Value Received the undersigned hereby assign, transfer and set over to:

> **Health Coalition, Inc.**
> **255 Alhambra Circle Ste 900**
> **Coral Gables FL 33134**

Its successors and assigns, (herein called the "Assignee") Policy Number 0Y096406 issued by the Metropolitan Life Insurance Company / New England Life Insurance Company (herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "policy"), upon the life of:

> **Thomas F. Johnson, Jr., MD**
> **34 Samoset Dr**
> **Salem NH 03079**

and all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the policy and to all superior liens, if any, which the Insurer may have against the policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

**B.** It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof

**1.** The sole right to collect from the Insurer the net proceeds of the policy when it becomes a claim by death or maturity;

**2.** The sole right to surrender the policy and receive the surrender value thereof at any time provided by the terms of the policy and at such other times as the Insurer may allow;

**3.** The sole right to obtain one or more loans or advances on the policy, either from the Insurer or, at any time from other persons, and to pledge or assign the policy as security for such loans or advances;

**4.** The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the policy with respect thereto; provided, that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment; and

**5.** The sole right to exercise all nonforfeiture rights permitted by the terms of the policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

AG-496

*Page 1 of 3*

**C.** It is expressly agreed that the following specific rights, so long as the policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:

    **1.** The right to collect from the insurer any disability benefit payable in cash that does not reduce the amount of insurance;

    **2.** The right to designate and change the beneficiary;

    **3.** The right to elect any optional mode of settlement permitted by the policy or allowed by the insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

**D.** This assignment is made and the policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise between any of the undersigned and the Assignee with respect to the above policy (all of which liabilities secured or to become secured are herein called "Liabilities").

**E.** The Assignee covenants and agrees with the undersigned as follows:

    **1.** That any balance of sums received hereunder from the insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the policy had this assignment not been executed;

    **2.** That the Assignee will not exercise either the right to surrender the policy or (except for the purpose of paying premiums) the right to obtain policy loans from the insurer, until there has been default in any of the Liabilities or a failure to pay any premiums when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the addresses last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and

    **3.** That the Assignee will upon request forward without unreasonable delay to the insurer the policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement;

**F.** The insurer is hereby authorized to recognize the Assignee's claims to the rights hereunder without investigation the reason for any action taken by the Assignee, or the validity of the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient of the exercise of any rights under the policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefore to the insurer. Checks for all or any part of the sums payable under the policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be, requested by the Assignee.

AG-498

*Page 2 of 3*

**G.** The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the policy whether or not obtained by the Assignee, or any other charges on the policy.

**H.** The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

**I.** The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the policy hereby assigned or any amount received on account of the policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.

**J.** *In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the policy or rights of collateral security therein, the provisions of this assignment shall prevail.*

**K.** Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to any assignment for the benefit of creditors.

**Johnson Trust Agreement dtd 4-12-00**

_Carleen Johnson, TTE_

Carleen Johnson, Trustee Owner, Sign Here

Date  2-6-07

AG-496

*Page 3 of 3*

# EXHIBIT Q

| | |
|---|---|
| **From:** | Forbes, Brian M. (Boston) |
| **Sent:** | Thursday, February 08, 2007 9:46 AM |
| **To:** | 'Peter Haley'; william@diadamo.com |
| **Cc:** | King, Jeffrey S. |
| **Subject:** | HCI v. NEA/Dr. Johnson |

Counsel:

We recently received the attached PDF copy of the "Assignment of Life Insurance Policy as Collateral" ("Assignment"). Providing the "Assignment" alone does not fully comply with defendants obligations under the Court order dated January 17, 2007 or the Settlement Agreement between the parties. Moreover, upon review of the Assignment, HCI needs clarification and revision to several of the conditions and provisions set forth therein. Below is a list of our concerns that must immediately be addressed:

1.      First and foremost, we still need to see a copy of the insurance policy itself (with all riders). This will help resolve some questions. To date the policy has not been provided.

2.      The assignment of the policy is from "Carleen Johnson, Trustee Owner" for the "Johnson Trust Agreement dtd 4-12-00." This raises a couple of issues. We will need to see a copy of the trust agreement to ensure that Carleen has the power as trustee to assign the policy to HCI (the Assignee). If it is a irrevocable trust, there may be restrictions on her ability to assign the policy. More importantly Section D of the Assignment states as follows:

> **D.  This assignment is made and the policy is to be held as collateral security for any and all liabilities or any of them, to the Assignee, either now existing or that may hereafter arise between any of the the Assignee with respect to the above policy (all of which liabilities secured or to become secured "Liabilities").**

Here, the "undersigned" identified above is Carleen Johnson, Trustee Owner, not Dr. Johnson. Because the liability to HCI is from NEA/Dr. Johnson, not Carleen Johnson or the Trust, this concern needs to be addressed. One way for this to be addressed is to have the Trust transfer ownership of the policy to Dr. Johnson and have Dr. Johnson assign the policy to HCI. We would also want to strike the phrase "with respect to the above policy" and replace it with the phrase "as set forth in the Settlement Agreement dated January 16, 2007 between Health Coalition, Inc. and New England Allergy Immunology & Primary Care, P.C. and Dr. Thomas Johnson."

3.      With respect to Section A, it states in part, that the Assignment is "subject to all the terms and conditions of the policy and to all superior liens, if any, which the Insurer may have against the policy." We need to know whether there are any "superior liens" against the policy.

4.      Based on Section B of the Assignment, it appears that HCI is the beneficiary of the policy, but we need clarification. We also need confirmation that there are no other beneficiaries and possible waivers from other beneficiaries if they exist.

5.      We also have concerns with Section C of the Assignment, the provisions of which are contrary to other provisions of the Assignment and appear to allow the assignor to retain certain rights that could diminish the value of the policy. We do not think that Section C of the Assignment as written should be included.

6.      With respect to Section G, which currently states as follows:

**G. The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any advances on the policy whether or not obtained by the Assignee, or any other charges on the policy**

This section needs to be amended to reflect that per the Settlement Agreement between HCI and NEA/Dr. Johnson, HCI will be provided with notice of non-payment of any premium owed and notice of intent to terminate the policy. Also, per the settlement agreement, this section needs to be amended to reflect that in the event any premium payment is not made, HCI shall have the right to continue to make premium payments on the policy, which will be added to the entire balance owed to HCI.

7.      We also have concerns with Section J which states:

**J. In the event of any conflict between the provisions of this assignment and provisions of the note o any Liability, with respect to the policy or rights of collateral security therein, the provisions of this prevail.**

In light of the Settlement Agreement, we think that Section J should be revised to state:

 J. "In the event of a conflict regarding the obligations between NEA/Dr.Johnson and HCI, the provisions of the Settlement Agreement shall prevail. With respect to the policy, the provisions of the assignment shall be construed in a manner that is not inconsistent with the Settlement Agreement."

We look forward to your immediate response and full compliance with the Settlement Agreement Court and Order dated January 17, 2007. If we do not have full compliance with the Order and Settlement Agreement by noon on Monday, February 12, 2007, we will go back to the Court and seek appropriate relief.

Regards,

Brian

**Brian M. Forbes
K&L Gates
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Tel: 617-261-3152, Fax: 617-261-3175
brian.m.forbes@klgates.com**

**www.klgates.com**



Metlife -
.ssignment of Life I.

2

# MetLife®

## Assignment of Life Insurance Policy as Collateral

**A.** For Value Received the undersigned hereby assign, transfer and set over to:

> **Health Coalition, Inc.**
> **255 Alhambra Circle Ste 900**
> **Coral Gables FL 33134**

Its successors and assigns, (herein called the "Assignee") Policy Number 0Y096406 issued by the Metropolitan Life Insurance Company / New England Life Insurance Company (herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "policy"), upon the life of:

> **Thomas F. Johnson, Jr., MD**
> **34 Samoset Dr**
> **Salem NH 03079**

and all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the policy and to all superior liens, if any, which the Insurer may have against the policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

**B.** It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof

**1.** The sole right to collect from the Insurer the net proceeds of the policy when it becomes a claim by death or maturity;

**2.** The sole right to surrender the policy and receive the surrender value thereof at any time provided by the terms of the policy and at such other times as the Insurer may allow;

**3.** The sole right to obtain one or more loans or advances on the policy, either from the Insurer or, at any time from other persons, and to pledge or assign the policy as security for such loans or advances;

**4.** The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the policy with respect thereto; provided, that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment; and

**5.** The sole right to exercise all nonforfeiture rights permitted by the terms of the policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

AG-496

*Page 1 of 3*

C. It is expressly agreed that the following specific rights, so long as the policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:

1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;

2. The right to designate and change the beneficiary;

3. The right to elect any optional mode of settlement permitted by the policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

D. This assignment is made and the policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise between any of the undersigned and the Assignee with respect to the above policy (all of which liabilities secured or to become secured are herein called "Liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:

1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the policy had this assignment not been executed;

2. That the Assignee will not exercise either the right to surrender the policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premiums when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the addresses last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and

3. That the Assignee will upon request forward without unreasonable delay to the Insurer the policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement;

F. The Insurer is hereby authorized to recognize the Assignee's claims to the rights hereunder without investigation the reason for any action taken by the Assignee, or the validity of the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient of the exercise of any rights under the policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefore to the Insurer. Checks for all or any part of the sums payable under the policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be, requested by the Assignee.

AG-498

*Page 2 of 3*

G. The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the policy whether or not obtained by the Assignee, or any other charges on the policy.

H. The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

I. The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the policy hereby assigned or any amount received on account of the policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.

J. In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the policy or rights of collateral security therein, the provisions of this assignment shall prevail.

K. Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to any assignment for the benefit of creditors.

**Johnson Trust Agreement dtd 4-12-00**

_Carleen Johnson, TTE_
Carleen Johnson, Trustee Owner, Sign Here

Date _2-6-07_

AG-496

*Page 3 of 3*

# EXHIBIT R

**From:** Forbes, Brian M. (Boston)
**Sent:** Friday, February 09, 2007 1:17 PM
**To:** 'Peter Haley'; william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** RE: HCI v. NEA/Dr. Johnson

Peter,

The facts are clear  here -- your clients have engaged in a pattern of delay and our client has been pushed to its limits on these issues.  The parties reached agreement on the material terms of the settlement in June 2006, including the terms with respect to the life insurance security.  Defendants have had  8 months to complete their obligations with respect to the "details"  of the Settlement.   The fact that we just received a proposed form of assignment this week confirms the delay.  The fact that the assignment does not meet the requirements of the settlement agreement only makes matters worse.  Moreover, we have not even been provided with a copy of the insurance policy yet.   These are not "minor details"  -- the assignment is a material term of the settlement.  Not only are defendants failing to comply with the terms of the Settlement Agreement, defendants are not in compliance with the Court Order dated January 17, 2007.  We are not making "threats"  -- we are simply informing you of the urgency of this and the need for us to protect our client's rights as were agreed upon in the settlement.  If that means we need to do this with the court's assistance, that is exactly what the court is for, as it does not appear that this will get done without the court's assistance.

  Brian


**From:** Peter Haley [mailto:haley@gordonhaley.com]
**Sent:** Friday, February 09, 2007 10:05 AM
**To:** Forbes, Brian M. (Boston); william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** RE: HCI v. NEA/Dr. Johnson

Brian

I will forward your requests directly to Metropolitan Life and will copy you on the correspondence.  You cannot keep threatening to go to Court.  The Court is not there to resolve these issues.  These are minor details of a settlement on which we are in agreement and on which the parties are already performing.  The issuance of these ultimatums does not serve anyone's interest, nor does it further the goal of completing the documentation on a form acceptable to your client; it belittles all of us.

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-456-1271(direct)
617-261-0789 (facsimile)
haley@gordonhaley.com


03/04/2007

-----Original Message-----
**From:** Forbes, Brian M. (Boston) [mailto:brian.m.forbes@klgates.com]
**Sent:** Thursday, February 08, 2007 9:46 AM
**To:** Peter Haley; william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** HCI v. NEA/Dr. Johnson


Counsel:

We recently received the attached PDF copy of the "Assignment of Life Insurance Policy as Collateral" ("Assignment"). Providing the "Assignment" alone does not fully comply with defendants obligations under the Court order dated January 17, 2007 or the Settlement Agreement between the parties. Moreover, upon review of the Assignment, HCI needs clarification and revision to several of the conditions and provisions set forth therein. Below is a list of our concerns that must immediately be addressed:

1.     First and foremost, we still need to see a copy of the insurance policy itself (with all riders). This will help resolve some questions. To date the policy has not been provided.

2.     The assignment of the policy is from "Carleen Johnson, Trustee Owner" for the "Johnson Trust Agreement dtd 4-12-00." This raises a couple of issues. We will need to see a copy of the trust agreement to ensure that Carleen has the power as trustee to assign the policy to HCI (the Assignee). If it is a irrevocable trust, there may be restrictions on her ability to assign the policy. More importantly Section D of the Assignment states as follows:

> **D.**  **This assignment is made and the policy is to be held as collateral security for any and all liabilities or any of them, to the Assignee, either now existing or that may hereafter arise  between any of the the Assignee with respect to the above policy (all of which liabilities secured or to become secured "Liabilities").**

Here, the "undersigned" identified above is Carleen Johnson, Trustee Owner, not Dr. Johnson. Because the liability to HCI is from NEA/Dr. Johnson, not Carleen Johnson or the Trust, this concern needs to be addressed. One way for this to be addressed is to have the Trust transfer ownership of the policy to Dr. Johnson and have Dr. Johnson assign the policy to HCI. We would also want to strike the phrase "with respect to the above policy" and replace it with the phrase "as set forth in the Settlement Agreement dated January 16, 2007 between Health Coalition, Inc. and New England Allergy Immunology & Primary Care, P.C. and Dr. Thomas Johnson."

3.     With respect to Section A, it states in part, that the Assignment is "subject to all the terms and conditions of the policy and to all superior liens, if any, which the Insurer may have against the policy." We need to know whether there are any "superior liens" against the policy.

4.     Based on Section B of the Assignment, it appears that HCI is the beneficiary of the policy, but we need clarification. We also need confirmation that there are no other beneficiaries and possible waivers from other beneficiaries if they exist.

5.     We also have concerns with Section C of the Assignment, the provisions of which are contrary to other provisions of the Assignment and appear to allow the assignor to retain certain rights that could diminish the value of the policy. We do not think that Section C of the Assignment as written should be included.

6.     With respect to Section G, which currently states as follows:

> **G.**  **The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any advances on the policy whether or not obtained by the Assignee, or any other charges on the policy**

This section needs to be amended to reflect that per the Settlement Agreement between HCI and NEA/Dr. Johnson, HCI will be provided with notice of non-payment of any premium owed and notice of intent to terminate the policy. Also, per the settlement agreement, this section needs to be amended to reflect that in the event any premium payment is not made, HCI shall have the right to continue to make premium payments on the policy, which will be added to the entire balance owed to HCI.

7.    We also have concerns with Section J which states:

**J.** *In the event of any conflict between the provisions of this assignment and provisions of the note or any Liability, with respect to the policy or rights of collateral security therein, the provisions of this prevail.*

In light of the Settlement Agreement, we think that Section J should be revised to state:

J. "In the event of a conflict regarding the obligations between NEA/Dr.Johnson and HCI, the provisions of the Settlement Agreement shall prevail.  With respect to the policy, the provisions of the assignment shall be construed in a manner that is not inconsistent with the Settlement Agreement."

We look forward to your immediate response and full compliance with the Settlement Agreement Court and Order dated January 17, 2007.  If we do not have full compliance with the Order and Settlement Agreement by noon on Monday, February 12, 2007, we will go back to the Court and seek appropriate relief.

Regards,
Brian
**Brian M. Forbes**
**K&L Gates**
**State Street Financial Center**
**One Lincoln Street**
**Boston, MA 02111-2950**
**Tel: 617-261-3152, Fax: 617-261-3175**
**brian.m.forbes@klgates.com**
**www.klgates.com**


<<Metlife - Assignment of Life Ins. Policy as Collateral.pdf>>

This electronic message contains information from the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at brian.m.forbes@klgates.com.

03/04/2007

# EXHIBIT S

**From:**   Forbes, Brian M. (Boston)
**Sent:**   Tuesday, February 13, 2007 1:03 PM
**Subject:** RE: HCI v. NEA/Dr. Johnson


**To:** 'Peter Haley'; william@diadamo.com
**Cc:** King, Jeffrey S.

Peter,

As detailed in my emails dated February 8th and 9th, defendants continue to be in breach of the Settlement Agreement and the Court Order dated January 17, 2007. Because defendants have not provided sufficient proof that they have taken steps to comply with the Court Order of the Settlement Agreement, we have no choice but to go back to the court to seek its assistance, including without limitation, asking for civil contempt, sanctions, and attorneys fees and costs. Please consider this a further and final attempt to meet and confer pursuant to Local Rule 7.1. If you wish to discuss this, please contact me today, as we plan to file our motion as early as tomorrow. Thanks.

Brian

---

**From:** Forbes, Brian M. (Boston)
**Sent:** Friday, February 09, 2007 1:17 PM
**To:** 'Peter Haley'; william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** RE: HCI v. NEA/Dr. Johnson

Peter,

The facts are clear here -- your clients have engaged in a pattern of delay and our client has been pushed to its limits on these issues. The parties reached agreement on the material terms of the settlement in June 2006, including the terms with respect to the life insurance security. Defendants have had 8 months to complete their obligations with respect to the "details" of the Settlement. The fact that we just received a proposed form of assignment this week confirms the delay. The fact that the assignment does not meet the requirements of the settlement agreement only makes matters worse. Moreover, we have not even been provided with a copy of the insurance policy yet. These are not "minor details" -- the assignment is a material term of the settlement. Not only are defendants failing to comply with the terms of the Settlement Agreement, defendants are not in compliance with the Court Order dated January 17, 2007. We are not making "threats" -- we are simply informing you of the urgency of this and the need for us to protect our client's rights as were agreed upon in the settlement. If that means we need to do this with the court's assistance, that is exactly what the court is for, as it does not appear that this will get done without the court's assistance.

Brian

---

**From:** Peter Haley [mailto:haley@gordonhaley.com]
**Sent:** Friday, February 09, 2007 10:05 AM
**To:** Forbes, Brian M. (Boston); william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** RE: HCI v. NEA/Dr. Johnson

Brian

I will forward your requests directly to Metropolitan Life and will copy you on the correspondence. You cannot keep threatening to

03/04/2007

go to Court.  The Court is not there to resolve these issues.  These are minor details of a settlement on which we are in agreement and on which the parties are already performing.  The issuance of these ultimatums does not serve anyone's interest, nor does it further the goal of completing the documentation on a form acceptable to your client; it belittles all of us.

PJH

Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-456-1271(direct)
617-261-0789 (facsimile)
haley@gordonhaley.com

-----Original Message-----
**From:** Forbes, Brian M. (Boston) [mailto:brian.m.forbes@klgates.com]
**Sent:** Thursday, February 08, 2007 9:46 AM
**To:** Peter Haley; william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** HCI v. NEA/Dr. Johnson


Counsel:

We recently received the attached PDF copy of the "Assignment of Life Insurance Policy as Collateral" ("Assignment"). Providing the "Assignment" alone does not fully comply with defendants obligations under the Court order dated January 17, 2007 or the Settlement Agreement between the parties.  Moreover, upon review of the Assignment, HCI needs clarification and revision to several of the conditions and provisions set forth therein.  Below is a list of our concerns that must immediately be addressed:

1.      First and foremost, we still need to see a copy of the insurance policy itself (with all riders). This will help resolve some questions.  To date the policy has not been provided.

2.      The assignment of the policy is from "Carleen Johnson, Trustee Owner" for the "Johnson Trust Agreement dtd 4-12-00." This raises a couple of issues.  We will need to see a copy of the trust agreement to ensure that Carleen has the power as trustee to assign the policy to HCI (the Assignee).  If it is a irrevocable trust, there may be restrictions on her ability to assign the policy.  More importantly Section D of the Assignment states as follows:

**D.  This assignment is made and the policy is to be held as collateral security for any and all liabilities or any of them, to the Assignee, either now existing or that may hereafter arise  between any of the the Assignee with respect to the above policy (all of which liabilities secured or to become secured "Liabilities").**

Here, the "undersigned" identified above is Carleen Johnson, Trustee Owner, not Dr. Johnson.  Because the liability to HCI is from NEA/Dr. Johnson, not Carleen Johnson or the Trust, this concern needs to be addressed.  One way for this to be addressed is to have the Trust transfer ownership of the policy to Dr. Johnson and have Dr. Johnson assign the policy to HCI.  We would also want to strike the phrase "with respect to the above policy" and replace it with the phrase "as set forth in the Settlement Agreement dated January 16, 2007 between Health Coalition, Inc. and New England Allergy Immunology & Primary Care, P.C. and Dr. Thomas Johnson."

3.      With respect to Section A, it states in part, that the Assignment is "subject to all the terms and conditions of the policy and to all superior liens, if any, which the Insurer may have against the policy."  We need to know whether there are any "superior liens" against the policy.

4.      Based on Section B of the Assignment, it appears that HCI is the beneficiary of the policy, but we need clarification. We also need confirmation that there are no other beneficiaries and possible waivers from other beneficiaries if they exist.

Case 1:05-cv-11816-MEL   Document 39-21   Filed 03/07/2007   Page 3 of 4

5.   We also have concerns with Section C of the Assignment, the provisions of which are contrary to other provisions of the Assignment and appear to allow the assignee to retain certain rights that could diminish the value of the policy.  We do not think that Section C of the Assignment as written should be included.

6.   With respect to Section G, which currently states as follows:

**G.  The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any advances on the policy whether or not obtained by the Assignee, or any other charges on the policy**

This section needs to be amended to reflect that per the Settlement Agreement between HCI and NEA/Dr. Johnson, HCI will be provided with notice of non-payment of any premium owed and notice of intent to terminate the policy.  Also, per the settlement agreement, this section needs to be amended to reflect that in the event any premium payment is not made, HCI shall have the right to continue to make premium payments on the policy, which will be added to the entire balance owed to HCI.

7.   We also have concerns with Section J which states:

**J.  In the event of any conflict between the provisions of this assignment and provisions of the note or any Liability, with respect to the policy or rights of collateral security therein, the provisions of this prevail.**

In light of the Settlement Agreement, we think that Section J should be revised to state:

 J.  "In the event of a conflict regarding the obligations between NEA/Dr.Johnson and HCI, the provisions of the Settlement Agreement shall prevail.  With respect to the policy, the provisions of the assignment shall be construed in a manner that is not inconsistent with the Settlement Agreement."

We look forward to your immediate response and full compliance with the Settlement Agreement Court and Order dated January 17, 2007.  If we do not have full compliance with the Order and Settlement Agreement by noon on Monday, February 12, 2007, we will go back to the Court and seek appropriate relief.

Regards,
Brian
**Brian M. Forbes**
**K&L Gates**
**State Street Financial Center**
**One Lincoln Street**
**Boston, MA 02111-2950**
**Tel: 617-261-3152, Fax: 617-261-3175**
**brian.m.forbes@klgates.com**
**www.klgates.com**

<<Metlife - Assignment of Life Ins. Policy as Collateral.pdf>>

This electronic message contains information from the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at brian.m.forbes@klgates.com.

# EXHIBIT T

## Forbes, Brian M. (Boston)

**From:**   Peter Haley [haley@gordonhaley.com]
**Sent:**   Wednesday, February 14, 2007 3:14 PM
**To:**   Forbes, Brian M. (Boston); william@diadamo.com
**Cc:**   King, Jeffrey S.
**Subject:** RE: HCI v. NEA/Dr. Johnson

Will do.

The statement that "With respect to our concerns/proposed revisions regarding the Assignment as detailed in my February 8th email, you indicated that the insurance company will agree to all of our proposed edits/changes" – is a little broad – it is my reasonable expectation that other than section J they will agree – and that as far as I know section J is their only issue.  In any event, I will press forward to get this done.

Thanks

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-456-1271(direct)
617-261-0789 (facsimile)
haley@gordonhaley.com

    -----Original Message-----
    **From:** Forbes, Brian M. (Boston) [mailto:brian.m.forbes@klgates.com]
    **Sent:** Wednesday, February 14, 2007 2:52 PM
    **To:** Peter Haley; william@diadamo.com
    **Cc:** King, Jeffrey S.
    **Subject:** RE: HCI v. NEA/Dr. Johnson


    Peter,

    Per our Rule 7.1 conference this morning, you represented that defendants are willing to do whatever it takes to get the insurance piece of the settlement done. With respect to our concerns/proposed revisions regarding the Assignment as detailed in my February 8th email, you indicated that the insurance company will agree to all of our proposed edits/changes.  The only provision that the insurance company still has under consideration is Section J ("in the event of conflict…the terms of the assignment shall prevail") of the assignment, but that they are considering our proposed language for Section J.  You also represented that there are no liens on the policy.

    You have indicated that you are going to draft a letter to Metropolitan to have the changes put in the assignment that we have requested, including our proposal for Section J.  Again, before you send the letter we request that you send us the draft before it is sent on to the insurance company.  Because it is not clear to us that defendants are using their "best efforts" to put this matter to a close, please cc us on all correspondence and communications

with the insurance company.

We insist that an assignment with terms that are consistent with the settlement agreement and acceptable to HCI, as well as all documentation/information requested by HCI and as further set forth in the January 17th Order, be in put place. We expect this matter to be resolved by the end of the week, and if it is not, we expect to have a commitment by the end of the week as to a firm schedule for addressing all open issues.   Because of the continued pattern of delay, we will go back to court, if necessary to get this done. We look forward to your prompt response.

Regards,

Brian

---

**From:** Forbes, Brian M. (Boston)
**Sent:** Tuesday, February 13, 2007 6:05 PM
**To:** 'Peter Haley'; william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** RE: HCI v. NEA/Dr. Johnson

Peter,

I left you a voicemail in return. Please call.  Thank you.

Brian

---

**From:** Peter Haley [mailto:haley@gordonhaley.com]
**Sent:** Tuesday, February 13, 2007 5:18 PM
**To:** Forbes, Brian M. (Boston); william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** RE: HCI v. NEA/Dr. Johnson

Brian

I have left you a voicemail message.  I would appreciate the opportunity to confer with you.  In essence, we will execute whatever HCI requests us to execute in terms of the assignment.  What we can not do obviously is cause Metropolitan to execute anything they do not want to execute.

Please call me so we can discuss a resolution that is acceptable to your client and achievable from NEA's perspective.

Thank you

PJH

Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-456-1271(direct)
617-261-0789 (facsimile)
haley@gordonhaley.com

-----Original Message-----
**From:** Forbes, Brian M. (Boston) [mailto:brian.m.forbes@klgates.com]
**Sent:** Tuesday, February 13, 2007 1:03 PM
**To:** Peter Haley; william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** RE: HCI v. NEA/Dr. Johnson

Peter,

As detailed in my emails dated February 8th and 9th, defendants continue to be in breach of the Settleme
Agreement and the Court Order dated January 17, 2007. Because defendants have not provided sufficien
proof that they have taken steps to comply with the Court Order of the Settlement Agreement, we have n
choice but to go back to the court to seek its assistance, including without limitation, asking for civil
contempt, sanctions, and attorneys fees and costs. Please consider this a further and final attempt to meet
and confer pursuant to Local Rule 7.1. If you wish to discuss this, please contact me today, as we plan tc
file our motion as early as tomorrow. Thanks.

Brian

---

**From:** Forbes, Brian M. (Boston)
**Sent:** Friday, February 09, 2007 1:17 PM
**To:** 'Peter Haley'; william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** RE: HCI v. NEA/Dr. Johnson

Peter,

The facts are clear here -- your clients have engaged in a pattern of delay and our client has been pushed to its
limits on these issues. The parties reached agreement on the material terms of the settlement in June 2006,
including the terms with respect to the life insurance security. Defendants have had 8 months to complete their
obligations with respect to the "details" of the Settlement. The fact that we just received a proposed form
of assignment this week confirms the delay. The fact that the assignment does not meet the requirements of the
settlement agreement only makes matters worse. Moreover, we have not even been provided with a copy of the
insurance policy yet. These are not "minor details" -- the assignment is a material term of the settlement. Not on
are defendants failing to comply with the terms of the Settlement Agreement, defendants are not in compliance wit
the Court Order dated January 17, 2007. We are not making "threats" -- we are simply informing you of the
urgency of this and the need for us to protect our client's rights as were agreed upon in the settlement. If
that means we need to do this with the court's assistance, that is exactly what the court is for, as it does not appea
that this will get done without the court's assistance.

Brian

---

**From:** Peter Haley [mailto:haley@gordonhaley.com]
**Sent:** Friday, February 09, 2007 10:05 AM
**To:** Forbes, Brian M. (Boston); william@diadamo.com
**Cc:** King, Jeffrey S.
**Subject:** RE: HCI v. NEA/Dr. Johnson

Brian

I will forward your requests directly to Metropolitan Life and will copy you on the correspondence. You cannot kee

threatening to go to Court.  The Court is not there to resolve these issues.  These are minor details of a settlement on which we are in agreement and on which the parties are already performing.  The issuance of these ultimatums does not serve anyone's interest, nor does it further the goal of completing the documentation on a form acceptable to your client; it belittles all of us.

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-456-1271 (direct)
617-261-0789 (facsimile)
haley@gordonhaley.com

     -----Original Message-----
     **From:** Forbes, Brian M. (Boston) [mailto:brian.m.forbes@klgates.com]
     **Sent:** Thursday, February 08, 2007 9:46 AM
     **To:** Peter Haley; william@diadamo.com
     **Cc:** King, Jeffrey S.
     **Subject:** HCI v. NEA/Dr. Johnson


Counsel:

We recently received the attached PDF copy of the "Assignment of Life Insurance Policy as Collateral" ("Assignment").  Providing the "Assignment" alone does not fully comply with defendants obligations under the Court order dated January 17, 2007 or the Settlement Agreement between the parties.  Moreover, upon review of the Assignment, HCI needs clarification and revision to several of the conditions and provisions set forth therein.  Below is a list of our concerns that must immediately be addressed:

1.    First and foremost, we still need to see a copy of the insurance policy itself (with all riders). This will help resolve some questions.  To date the policy has not been provided.

2.    The assignment of the policy is from "Carleen Johnson, Trustee Owner" for the "Johnson Trust Agreement dtd 4-12-00." This raises a couple of issues.  We will need to see a copy of the trust agreement to ensure that Carleen has the power as trustee to assign the policy to HCI (the Assignee).  If it is a irrevocable trust, there may be restrictions on her ability to assign the policy.  More importantly Section D of the Assignment states as follows:

**D.  This assignment is made and the policy is to be held as collateral security for any and or any of them, to the Assignee, either now existing or that may hereafter arise between the Assignee with respect to the above policy (all of which liabilities secured or to be "Liabilities").**

Here, the "undersigned" identified above is Carleen Johnson, Trustee Owner, not Dr. Johnson.  Because the liability to HCI is from NEA/Dr. Johnson, not Carleen Johnson or the Trust, this concern needs to be addressed.  One way for this to be addressed is to have the Trust transfer ownership of the policy to Dr. Johnson and have Dr. Johnson assign the policy to HCI.  We would also want to strike the phrase "with respect to the above policy" and replace it with the phrase "as set forth in the Settlement Agreement dated January 16, 2007 between Health Coalition, Inc. and New England Allergy Immunology & Primary Care, P.C. and Dr. Thomas Johnson."

3.    With respect to Section A, it states in part, that the Assignment is "subject to all the terms and conditions of the policy and to all superior liens, if any, which the Insurer may have against the policy." We need to know whether there are any "superior liens" against the policy.

4.    Based on Section B of the Assignment, it appears that HCI is the beneficiary of the policy, but we need clarification. We also need confirmation that there are no other beneficiaries and possible waivers from other beneficiaries if they exist.

5.    We also have concerns with Section C of the Assignment, the provisions of which are contrary to other provisions of the Assignment and appear to allow the assignor to retain certain rights that could diminish the value of the policy. We do not think that Section C of the Assignment as written should be included.

6.    With respect to Section G, which currently states as follows:

**G.  The Assignee shall be under no obligation to pay any premium, or the principal of or in advances on the policy whether or not obtained by the Assignee, or any other charges**

This section needs to be amended to reflect that per the Settlement Agreement between HCI and NEA/Dr. Johnson, HCI will be provided with notice of non-payment of any premium owed and notice of intent to terminate the policy. Also, per the settlement agreement, this section needs to be amended to reflect that in the event any premium payment is not made, HCI shall have the right to continue to make premium payments on the policy, which will be added to the entire balance owed to HCI.

7.    We also have concerns with Section J which states:

**J.  In the event of any conflict between the provisions of this assignment and provisions any Liability, with respect to the policy or rights of collateral security therein, the prov prevail.**

In light of the Settlement Agreement, we think that Section J should be revised to state:

J. "In the event of a conflict regarding the obligations between NEA/Dr. Johnson and HCI, the provisions o the Settlement Agreement shall prevail. With respect to the policy, the provisions of the assignment shall be construed in a manner that is not inconsistent with the Settlement Agreement."

We look forward to your immediate response and full compliance with the Settlement Agreement Court an Order dated January 17, 2007. If we do not have full compliance with the Order and Settlement Agreemen by noon on Monday, February 12, 2007, we will go back to the Court and seek appropriate relief.

Regards,
Brian
**Brian M. Forbes**
**K&L Gates**
**State Street Financial Center**
**One Lincoln Street**
**Boston, MA 02111-2950**
**Tel: 617-261-3152, Fax: 617-261-3175**
**brian.m.forbes@klgates.com**
**www.klgates.com**

<<Metlife - Assignment of Life Ins. Policy as Collateral.pdf>>

This electronic message contains information from the law firm of Kirkpatrick & Lockhart Preston Gates Ell LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at brian.m.forbes@klgates.com.

# EXHIBIT U

**<u>Voicemail from Peter Haley 2/13/07</u>**

      Brian, Peter Haley responding to your e-mail.  I would like to confer with you in accordance with the local rule before you file anything.  We are willing to modify the terms of the assignment in any way that you would like.  I'm not sure that I can guarantee that Metropolitan then becomes part of that assignment.  That's been my difficulty.  We have asked for some of the same changes that you're asking for.  But we will execute anything you'd like us to execute and/or amend anything you want us to amend.  So, I will be here this evening, and then I'll be here all day tomorrow.  Please give me a call at your convenience.  617-261-0100.

# EXHIBIT V

**Forbes, Brian M. (Boston)**

| | |
|---|---|
| **From:** | Forbes, Brian M. (Boston) |
| **Sent:** | Friday, February 16, 2007 11:20 AM |
| **To:** | 'Peter Haley'; 'william@diadamo.com' |
| **Cc:** | King, Jeffrey S. |
| **Subject:** | HCI v. NEA |

**Attachments:**      BOS-#1055998-v1-Ltr__Topp_re_Assignment.DOC

Peter,

I am attaching HCI's edits to the draft letter to be sent to New England Life/Metropolitan.  We believe that the modifications to the proposed Assignment are necessary and required to meet the requirements of the Settlement Agreement.  We also need to see a copy of the trust agreement to ensure that Mrs. Johnson has the power as trustee to assign the policy to HCI.

In the event that the proposed modifications are not acceptable to the insurance company, another option would be: (1) have Carleen Johnson transfer ownership of the policy to Dr. Johnson; (2) have Dr. Johnson assign the policy to HCI; (3) change the beneficiary to HCI; and (4) draft a rider to the Settlement Agreement addressing any issues with the form of assignment.  Please send the attached letter out by fax today to ensure prompt delivery.  Given the delays in this matter and given the applicable Court Orders we expect defendants to expedite and facilitate this process.  Thank you.

Regards,
Brian

BOS-#1055998-v1-
Ltr__Topp_re_A...

February 15, 2007

Via Facsimile and U.S. Mail

Kathleen M. Topp
Beneficiary and Ownership Unit
New England Life Insurance Company
P.O. Box 541
Warwick, Rhode Island 02887-0541

Re:    New England Life Insurance Company Policy 0Y096406
       Insured:       Thomas F. Johnson, Jr., M.D.

Dear Ms. Topp:

I am writing with respect to the assignment of the above-referenced policy to Health Coalition, Inc.("HCI").  I enclose a copy of the previously proposed Assignment of Life Insurance as Collateral ("Assignment Form") for your reference.

Counsel for HCI, Dr. Johnson, and New England Allergy Asthma Immunology & Primary Care, P.C. ("the parties") find the previously proposed Assignment Form unsatisfactory to accomplish the intent of the parties under their written Settlement Agreement, which was entered as an Order of the United States District Court for the District of Massachusetts.  In order to comply with the Settlement Agreement, the parties, including Carleen Johnson in her capacity as the named Trustee Owner, request that the following modifications be made to the Assignment Form:

Section D    This assignment is made and the policy is to be held as collateral security for any and all liabilities of the undersigned, Dr. Thomas F. Johnson, and New England Allergy Asthma Immunology & Primary Care, P.C. or any of them, to the assignee, either now existing or that may hereafter arise between any of the undersigned, Dr. Thomas F. Johnson, New England Allergy Asthma Immunology & Primary Care, P.C. and the assignee as set forth in the Settlement Agreement dated January 16, 2007 between Health Coalition, Inc. and New England Allergy Immunology & Primary Care, P.C. and Dr. Thomas F. Johnson.

The parties, including Carleen Johnson request that Section C of the Assignment Form be deleted.  As written in the current draft assignment, the provisions of Section C are inconsistent with both the Settlement Agreement between the parties as well as other provisions of the proposed assignment.

| **Deleted:** a |
| **Deleted:** language |
| **Deleted:** |
| **Deleted:** s |
| **Deleted:** proposed form |
| **Deleted:** pursuant to |
| **Deleted:** HCI |
| **Deleted:** s |
| **Deleted:** amendments |
| **Deleted:** ¶ |
| **Deleted:** Please strike |
| **Deleted:** A |

Kathleen M. Topp
February 15, 2007
Page 2

The parties, including Carleen Johnson, request that Section G be amended as follows:

Deleted: HCI
Deleted: s

> The assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the policy whether or not obtained by the assignee, or any other charges on the policy, provided, however, that the assignee must be provided with notice of nonpayment of any premium owed and notice of intent to terminate the policy. The assignee may, at its election, choose to continue to make the premium payments on the policy which amounts will be added to the obligations owed to HCI pursuant to the terms of the Settlement Agreement between the parties.

Deleted: . P

The parties both request that Section J be deleted as unnecessary. In the event New England Financial will not agree to strike Section J, the parties request that Section J be amended to read "In the event of a conflict regarding the obligations between NEA and Dr. Johnson and HCI, the provisions of the Settlement Agreement shall prevail. With respect to the policy, the provisions of the assignment shall be construed in a manner that is not inconsistent with the Settlement Agreement."

Deleted: HCI has
Deleted: ed
Deleted: i
Deleted:  to merit is
Deleted: "

In addition to these amendments to the proposed assignment, please confirm that during the period of assignment, HCI will be the primary beneficiary to collect the net proceeds of the policy and that no other waivers from current beneficiaries are necessary. Also, please confirm that there are no liens on the above-referenced policy.

Finally, HCI also requests, and Carleen Johnson, Dr. Thomas F. Johnson and NEA join in this request, to be provided immediately with a copy of the insurance policy and all relevant riders. This is a very important issue for all the parties and it is essential that these documents be provided as soon as possible.

Deleted: Mrs.

Counsel for HCI is:

> Brian M. Forbes, Esquire
> Kirkpatrick & Lockhart Preston Gates Ellis LLP
> State Street Financial Center
> One Lincoln Street
> Boston, Massachusetts 02111
> Tel:    (617) 261-3152

Deleted: & L
Deleted: 100

You may contact him directly to discuss these issues.

Because Dr. Johnson is under Court Order to provide an assignment of life insurance to HCI in a timely manner we ask for your prompt attention to these concerns.

Deleted: Thank you for

Kathleen M. Topp
February 15, 2007
Page 3

Sincerely,


Peter J. Haley

PJH:vsh
Enclosure

cc:    Brian M. Forbes, Esquire
       Thomas F. Johnson, Jr., M.D.
       Carleen Johnson, Trustee
P:\Clients\NE Allergy Asthma\Health\Corr\Topp ltr01 02-15-07.doc

# EXHIBIT W



# GORDON HALEY LLP

COUNSELLORS AT LAW

101 FEDERAL STREET

BOSTON, MASSACHUSETTS 02110-1844

(617) 261-0100

FAX (617) 261-0789

February 16, 2007

Kathleen M. Topp
Beneficiary and Ownership Unit
New England Life Insurance Company
P.O. Box 541
Warwick, Rhode Island 02887-0541

Re:    New England Life Insurance Company Policy 0Y096406
       Insured:      Thomas F. Johnson, Jr., M.D.

Dear Ms. Topp:

I am writing with respect to the assignment of the above-referenced policy to Health Coalition, Inc.("HCI"). I enclose a copy of the previously proposed Assignment of Life Insurance as Collateral ("Assignment Form") for your reference.

Counsel for HCI finds the previously proposed Assignment Form unsatisfactory to accomplish the intent of the parties under their written Settlement Agreement, which was entered as an Order of the United States District Court for the District of Massachusetts. In order to comply with the Settlement Agreement, the parties, including Carleen Johnson in her capacity as the named Trustee Owner, request that the following modifications be made to the Assignment Form:

> Section D    This assignment is made and the policy is to be held as collateral security for any and all liabilities of the undersigned, Dr. Thomas F. Johnson, and New England Allergy Asthma Immunology & Primary Care, P.C. or any of them, to the assignee, either now existing or that may hereafter arise between any of the undersigned, Dr. Thomas F. Johnson, New England Allergy Asthma Immunology & Primary Care, P.C. and the assignee as set forth in the Settlement Agreement dated January 16, 2007 between Health Coalition, Inc. and New England Allergy Immunology & Primary Care, P.C. and Dr. Thomas F. Johnson.

The parties, including Carleen Johnson request that Section C of the Assignment Form be deleted. As written in the current draft assignment, the provisions of Section C are inconsistent with both the Settlement Agreement between the parties as well as other provisions of the proposed assignment.

The parties, including Carleen Johnson, request that Section G be amended as follows:

# GORDON HALEY LLP

Kathleen M. Topp
February 16, 2007
Page 2

> The assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the policy whether or not obtained by the assignee, or any other charges on the policy, provided, however, that the assignee must be provided with notice of nonpayment of any premium owed and notice of intent to terminate the policy. The assignee may, at its election, choose to continue to make the premium payments on the policy which amounts will be added to the obligations owed to HCI pursuant to the terms of the Settlement Agreement between the parties.

The parties both request that Section J be deleted as unnecessary. In the event New England Financial will not agree to strike Section J, the parties request that Section J be amended to read "In the event of a conflict regarding the obligations between NEA and Dr. Johnson and HCI, the provisions of the Settlement Agreement shall prevail. With respect to the policy, the provisions of the assignment shall be construed in a manner that is not inconsistent with the Settlement Agreement."

In addition to these amendments to the proposed assignment, please confirm that during the period of assignment, HCI will be the primary beneficiary to collect the net proceeds of the policy and that no other waivers from current beneficiaries are necessary. Also, please confirm that there are no liens on the above-referenced policy.

Finally, HCI also requests, and Carleen Johnson, Dr. Thomas F. Johnson and NEA join in this request, to be provided immediately with a copy of the insurance policy and all relevant riders. This is a very important issue for all the parties and it is essential that these documents be provided as soon as possible.

Counsel for HCI is:

> Brian M. Forbes, Esquire
> Kirkpatrick & Lockhart Preston Gates Ellis LLP
> State Street Financial Center
> One Lincoln Street
> Boston, Massachusetts 02111
> Tel:    (617) 261-3152

You may contact him directly to discuss these issues.

# GORDON HALEY LLP

Kathleen M. Topp
February 16, 2007
Page 3

As these matters are the subject of a federal court order we ask for your prompt attention to these concerns.

Sincerely,

Peter J. Haley

PJH:vsh
Enclosure

cc:     Brian M. Forbes, Esquire
        Thomas F. Johnson, Jr., M.D.
        Carleen Johnson, Trustee

P:\Clients\NE Allergy Asthma\Health\Corr\Topp ltr 02 021607.DOC

# EXHIBIT X

## Forbes, Brian M. (Boston)

| | |
|---|---|
| **From:** | Peter Haley [haley@gordonhaley.com] |
| **Sent:** | Monday, February 26, 2007 12:11 PM |
| **To:** | Gorman, Stacey |
| **Cc:** | Forbes, Brian M. (Boston); King, Jeffrey S. |
| **Subject:** | RE: HCI v. NEA |
| **Attachments:** | Topp ltr01 to PJH 02-22-07 re reply to 2-16-07 ltr.pdf |

Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-456-1271(direct)
617-261-0789 (facsimile)
haley@gordonhaley.com

-----Original Message-----
**From:** Gorman, Stacey [mailto:stacey.gorman@klgates.com]
**Sent:** Friday, February 23, 2007 6:29 PM
**To:** Peter Haley
**Cc:** Forbes, Brian M. (Boston); King, Jeffrey S.
**Subject:** RE: HCI v. NEA

Dear Peter,

It has been over a month since the Court Order and a week since the letter to Ms. Topp at New England Life Insurance was sent out. We are concerned that at this late date we still do not have resolution to the insurance pa of the settlement.

Though it may be difficult to reach the insurance company, defendants are required pursuant to the Court's Orde of January 17, 2007, to take the steps necessary to effectuate the life insurance security in connection with the settlement with HCI. As such, we would have expected that defendants, their counsel and Ms. Johnson would have taken all necessary steps to procure the required insurance documents/information.

Further, based on our earlier discussions regarding the necessary modifications to the Assignment, it appeared to us that you had been in communication with someone from the insurance company. Please let us know what you have done to reach those contacts in addition to Ms. Topp.

Three weeks have passed since the expiration of Court imposed deadline of January 31, 2007. We expect that defendants, their counsel and Ms. Johnson treat this matter with the urgent attention that it is due.

If you have any questions, please feel free to contact us.

Regards,

Stacey

---

**From:** Peter Haley [mailto:haley@gordonhaley.com]
**Sent:** Friday, February 23, 2007 3:56 PM
**To:** Gorman, Stacey
**Cc:** Forbes, Brian M. (Boston); King, Jeffrey S.
**Subject:** RE: HCI v. NEA

Kathleen Topp does not apparently care to be reached by phone – and the 1-800 service line can only be dialed by the owner –as there are social security number screens on the 1-800 line.   I have Carleen working on this and I am contacting the agent and trying to reach counsel at the company.  I will report further.

PJH

Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-456-1271(direct)
617-261-0789 (facsimile)
haley@gordonhaley.com

-----Original Message-----
**From:** Gorman, Stacey [mailto:stacey.gorman@klgates.com]
**Sent:** Friday, February 23, 2007 11:20 AM
**To:** Peter Haley
**Cc:** Forbes, Brian M. (Boston); King, Jeffrey S.
**Subject:** HCI v. NEA

Peter,

I write to follow up on our conversation from yesterday.  You stated that you would get in touch with Kathleen Topp yesterday afternoon.  Were you successful in that endeavor?  If so, can you please provide me with a status report

Thanks.

Stacey

This electronic message contains information from the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at stacey.gorman@klgates.com

New England Life Insurance Company
PO Box 541
Warlock RI  02887-0541

## New England Financial®
A MetLife Company

February 22, 2007

Gordon Haley LLP
101 federal St
Boston MA 02110-01844

RE:  NEW ENGLAND LIFE INSURANCE COMPANY POLICY 0Y096406
        INSURED: Thomas F. Johnson, Jr. MD

Dear Mr. Haley:

We are writing in reply to your letter of February 16, 2007.

At the request of Carleen Johnson, Trustee of the Johnson Trust Agreement dated 4-12-200 we amended Paragraph G of our collateral assignment to Health Coalition, Inc.  This form was received and recorded, a copy of the recorded form is enclosed for review.

Please be advised that we cannot amend our collateral agreement form as requested because it would take away the rights of the policy owner.  In addition we are not a party to the private agreement between the borrower and Health Coalition, Inc.

Perhaps a collateral assignment is not what is needed; your client may require a change of owner. If there is a court order please submit a copy for review.  Once received we will proceed accordingly.

*Please Note*, this is the only letter you will receive.  We will take no further action regarding this matter until we hear from you.

If you have any questions, please contact your representative or call our Customer Service Center at 1-800-388-4000 Monday through Friday between 9 a.m. and 6 p.m., ET.

Sincerely,

*Kathleen M Topp*

Kathleen M Topp
Beneficiary and Ownership Unit

Metropolitan Life Insurance Company
New England Life Insurance Company

FEB 0 7 2007

27

# MetLife®

## Assignment of Life Insurance Policy as Collateral

**A.** For Value Received the undersigned hereby assign, transfer and set over to:

> **Health Coalition, Inc.**
> **255 Alhambra Circle Ste 900**
> **Coral Gables FL 33134**

its successors and assigns, (herein called the "Assignee") Policy Number 0Y096406 issued by the Metropolitan Life Insurance Company / New England Life Insurance Company (herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "policy"), upon the life of:

> **Thomas F. Johnson, Jr., MD**
> **34 Samoset Dr**
> **Salem NH 03079**

and all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the policy and to all superior liens, if any, which the Insurer may have against the policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

**B.** It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof

**1.** The sole right to collect from the Insurer the net proceeds of the policy when it becomes a claim by death or maturity;

**2.** The sole right to surrender the policy and receive the surrender value thereof at any time provided by the terms of the policy and at such other times as the Insurer may allow;

**3.** The sole right to obtain one or more loans or advances on the policy, either from the Insurer or, at any time from other persons, and to pledge or assign the policy as security for such loans or advances;

**4.** The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the policy with respect thereto; provided, that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment; and

**5.** The sole right to exercise all nonforfeiture rights permitted by the terms of the policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

AG-496

*Page 1 of 3*

**C.** It is expressly agreed that the following specific rights, so long as the policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:

    **1.** The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;

    **2.** The right to designate and change the beneficiary;

    **3.** The right to elect any optional mode of settlement permitted by the policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

**D.** This assignment is made and the policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise between any of the undersigned and the Assignee with respect to the above policy (all of which liabilities secured or to become secured are herein called "Liabilities").

**E.** The Assignee covenants and agrees with the undersigned as follows:

    **1.** That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the policy had this assignment not been executed;

    **2.** That the Assignee will not exercise either the right to surrender the policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premiums when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the addresses last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and

    **3.** That the Assignee will upon request forward without unreasonable delay to the Insurer the policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement;

**F.** The Insurer is hereby authorized to recognize the Assignee's claims to the rights hereunder without investigation the reason for any action taken by the Assignee, or the validity of the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient of the exercise of any rights under the policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefore to the Insurer. Checks for all or any part of the sums payable under the policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be, requested by the Assignee.

AG-496

*Page 2 of 3*

**G.** The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the policy whether or not obtained by the Assignee, or any other charges on the policy.

**H.** The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

**I.** The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the policy hereby assigned or any amount received on account of the policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.

**J.** In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the policy or rights of collateral security therein, the provisions of this assignment shall prevail.

**K.** Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to any assignment for the benefit of creditors.

Johnson Trust Agreement dtd 4-12-00

*Carleen Johnson, TTE*                              2-6-07
/ Carleen Johnson, Trustee Owner, Sign Here         Date

AG-496

*Page 3 of 3*

*Approved nstewart February 9, 2007*

# EXHIBIT Y

**Forbes, Brian M. (Boston)**

| | |
|---|---|
| **From:** | Forbes, Brian M. (Boston) |
| **Sent:** | Thursday, March 01, 2007 2:03 PM |
| **To:** | 'Peter Haley' |
| **Cc:** | 'william@diadamo.com'; King, Jeffrey S. |
| **Subject:** | HCI v. NEA |

**Attachments:**    Topp ltr01 to PJH 02-22-07 re reply to 2-16-07 ltr.pdf

Peter,

Based on the letter dated February 22nd from Ms. Topp at New England Financial/MetLife (attached below), it appears that no progress has been made with respect to the parties' jointly proposed amendments to the Assignment. As you know, the current assignment form is not in compliance with the terms of the Settlement Agreement or the Court Order. It also appears that despite your statement that "it is my reasonable expectation that other than Section J they will agree - and that as far as I know section J is their only issue" that the insurance company will not agree our proposed changes. Ms. Topp's statement that the insurance company cannot "amend our collateral agreement form as requested because it would take away the rights of the policy owner" doesn't make sense. You have control over the policy owner (whether it is currently the trust or Carleen Johnson). If, as Ms. Topp suggests, a change of ownership is required, then have that done. One viable option would be to have Carleen Johnson, as trustee, transfer ownership to HCI and make HCI primary beneficiary. Ms. Johnson, defendants, and HCI could enter into a side agreement that would detail the rights of the parties as further set forth in the Settlement Agreement (i.e., HCI to be provided with notice of non-payment of any insurance premium owed, right of HCI to make premium payments in the event a premium payment is not made and added to the balance owed to HCI, upon death of Dr. Johnson the entire balance owed on the Promissory Note will become immediately payable to HCI out of the policy proceeds). Once the obligation to HCI is satisfied, HCI would then transfer ownership back to Ms. Johnson. I also want to remind you again that regardless of what form the insurance security takes place, we still need to see copies of the insurance policy (with riders), and a copy of the trust agreement to ensure that Ms. Johnson has the power to make the appropriate changes to the insurance policy.

Defendants have an obligation under the Settlement Agreement and the Court Order to provide HCI with the appropriate life insurance security. To date, this has not been done. In light of Ms. Topp's letter, please let us know your intended plan of action by the close of business on Friday as to how you are going to accomplish getting the appropriate life insurance security in place. If we do not receive a satisfactory response by then, we plan to return to Court and seek appropriate relief. Please consider this a further and final attempt to meet and confer pursuant to Local Rule 7.

In addition to the insurance issue, we bring to your attention that HCI received today a company check from NEA in the amount of $13,000.00 for the March payment. This form of payment is not in compliance with the Settlement Agreement (at para. 2) which expressly states that all monthly installments of $13,000.00 must be made "by certified bank check or wire in readily available funds by the first of each month." HCI will deposit this check, and hopefully it will clear. Please note that by depositing the check, HCI is not waiving any of its rights under the Settlement Agreement. Going forward, we expect full compliance with the Settlement Agreement, including the form of payment.

Regards,

Brian



Topp ltr01 to PJH
02-22-07 re ...

# EXHIBIT Z

## Forbes, Brian M. (Boston)

| | |
|---|---|
| **From:** | Peter Haley [haley@gordonhaley.com] |
| **Sent:** | Friday, March 02, 2007 9:47 AM |
| **To:** | Forbes, Brian M. (Boston) |
| **Cc:** | william@diadamo.com; King, Jeffrey S. |
| **Subject:** | RE: HCI v. NEA |

Brian

Several vendors were having problems recognizing and properly crediting wire transfers by NEA and, accordingly, they switched to checks. They will switch back to wire transfers for HCI. I apologize for any inconvenience this may have caused.

In your message you state "[a]s you know, the current assignment form is not in compliance with the terms of the Settlement Agreement or the Court Order." NEA disagrees with that statement. NEA believes that the pledge agreement which they executed and was made a part of the settlement agreement by HCI was sufficient to fulfill the requirements of the settlement agreement and was in fact the very document made part of the court order. NEA was willing, and is willing, to take any and all reasonable steps to accommodate HCI. The assignment form provided by MetLife is again more than sufficient for purposes of the settlement agreement. I wish MetLife had simply acquiesced to the various edits and amendments you desired. They did not. There is not too much NEA can do about that. We have requested the policy numerous times and are informed it is on its way.

The suggestion that ownership of the policy be transferred goes far beyond the requirements of the settlement agreement.

PJH


Peter J. Haley
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
617-261-0100
617-456-1271(direct)
617-261-0789 (facsimile)
haley@gordonhaley.com

> -----Original Message-----
> **From:** Forbes, Brian M. (Boston) [mailto:brian.m.forbes@klgates.com]
> **Sent:** Thursday, March 01, 2007 2:03 PM
> **To:** Peter Haley
> **Cc:** william@diadamo.com; King, Jeffrey S.
> **Subject:** HCI v. NEA
>
>
> Peter,
>
> Based on the letter dated February 22nd from Ms. Topp at New England Financial/MetLife (attached below), it appears that no progress has been made with respect to the parties' jointly proposed amendments to the Assignment. As you know, the current assignment form is not in compliance with the terms of the Settlement Agreement or the Court Order. It also appears that despite your statement that "it is my reasonable expectation that other than Section J they will agree - and that as far as I know section J is their only issue" that the insurance company will not agree our proposed changes. Ms. Topp's statement that the insurance company cannot "amend our collateral agreement form as requested because it would take away the rights of the policy owner" doesn't make sense. You have control over the policy owner (whether it is currently the trust or Carleen Johnson). If, as Ms. Topp suggests, a change of ownership is required, then have that done. One viable option would be to have Carleen Johnson, as trustee, transfer ownership to HCI and make HCI primary beneficiary. Ms. Johnson, defendants, and HCI could enter into a side agreement that would detail the rights of the parties as further set

forth in the Settlement Agreement (i.e., HCI to be provided with notice of non-payment of any insurance premium owed, right of HCI to make premium payments in the event a premium payment is not made and added to the balance owed to HCI, upon death of Dr. Johnson the entire balance owed on the Promissory Note will become immediately payable to HCI out of the policy proceeds). Once the obligation to HCI is satisfied, HCI would then transfer ownership back to Ms. Johnson. I also want to remind you again that regardless of what form the insurance security takes place, we still need to see copies of the insurance policy (with riders), and a copy of the trust agreement to ensure that Ms. Johnson has the power to make the appropriate changes to the insurance policy.

Defendants have an obligation under the Settlement Agreement and the Court Order to provide HCI with the appropriate life insurance security. To date, this has not been done. In light of Ms. Topp's letter, please let us know your intended plan of action by the close of business on Friday as to how you are going to accomplish getting the appropriate life insurance security in place. If we do not receive a satisfactory response by then, we plan to return to Court and seek appropriate relief. Please consider this a further and final attempt to meet and confer pursuant to Local Rule 7.

In addition to the insurance issue, we bring to your attention that HCI received today a company check from NEA in the amount of $13,000.00 for the March payment. This form of payment is not in compliance with the Settlement Agreement (para. 2) which expressly states that all monthly installments of $13,000.00 must be made "by certified bank check or wire in readily available funds by the first of each month." HCI will deposit this check, and hopefully it will clear. Please note that by depositing the check, HCI is not waiving any of its rights under the Settlement Agreement. Going forward, we expect full compliance with the Settlement Agreement, including the form of payment.

Regards,

Brian

<<Topp ltr01 to PJH 02-22-07 re reply to 2-16-07 ltr.pdf>>

This electronic message contains information from the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at brian.m.forbes@klgates.com.