UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH COALITION, INC., )<br>)<br> Plaintiff, )<br>)<br>v. )<br>)<br>NEW ENGLAND ALLERGY ASTHMA )<br>IMMUNOLOGY & PRIMARY CARE, )<br>P.C. and THOMAS F. JOHNSON, )<br>Individually )<br>)<br> Defendants. )<br>) | Civil Action No. 05-cv-11816 MEL |

**OPPOSITION OF HEALTH COALITION, INC. TO MOTION OF DEFENDANTS FOR RECONSIDERATION OF ORDER OF MAY 15, 2007 AND REQUEST FOR PAYMENT OF PLAINTIFF'S ATTORNEY'S FEES AND COSTS**

Plaintiff Health Coalition, Inc. ("HCI") submits the following memorandum in opposition to defendant New England Allergy Asthma Immunology & Primary Care, P.C. ("New England Allergy") and defendant Thomas F. Johnson ("Dr. Johnson") (collectively "Defendants") Motion for Reconsideration of the Court's Order of May 15, 2007. Defendants offer no basis for the Court to reconsider the portion of its Order awarding HCI its attorneys' fees and costs. Despite Defendants' unsupported statement that they have been in "full and complete compliance with the terms of the Settlement Agreement," the record in this case (as detailed in the various motions filed by HCI) as well as the Court's Orders addressing those motions, illustrates Defendants' non-compliance with several key provisions of the Settlement Agreement over a course of several months. As such, the Court properly ordered that HCI should be paid its attorneys fees and costs as set forth in the May 15, 2007 Order and Defendants' Motion for Reconsideration should be denied. In further opposition to Defendants' Motion, HCI states:

1. On January 17, 2007 the parties were before the Court on HCI's Renewed Motion to Enforce Settlement Agreement. See Docket Nos. 30 through 32. As detailed in HCI's papers in connection with that motion, from June 2006 through January 2007, HCI repeatedly requested that Defendants obtain and produce various materials required under the Settlement Agreement between the parties, including a life insurance policy (or policies) in the face amount of at least $1,274,000.00 naming HCI as the primary beneficiary. After hearing from all parties on the Renewed Motion to Enforce Settlement Agreement, the Court ordered that the Settlement Agreement between the parties is to be entered as an Order of the Court and further ordered that "Defendants shall perform under the Settlement Agreement, including without limitation, by providing documents and/or information necessary to comply with the settlement with HCI and by executing the appropriate documents to effect the settlement between HCI and Defendants." See January 17 Order (Docket No. 35). The Court also ordered Defendants to fulfill their obligations under the Settlement Agreement with respect to the life insurance security. See id.

2. On April 19, 2007, the parties were again before the Court on HCI's Motion for Civil Contempt stemming from Defendants' failure to effect the life insurance security that is part of the Settlement Agreement and required by the January 17 Order. See Docket Nos. 36 through 38. The basis for HCI's motion was, in part, that the assignment Defendants' sought to utilize transferring the death benefits of a policy owned by a non-party to this action did not comply with Defendants' obligations under the Settlement Agreement or the Court's January 17 Order.

3. As a solution to the dispute, at the April 19th hearing, the Court recommended that the parties transfer ownership of an insurance policy to HCI and submit a proposed Order to that effect. Pursuant to the Court's Order dated April 19, 2007 (entered on April 23, 2007), the Court

requested that the parties submit on or before May 3, 2007, either a joint proposed or separate proposed orders addressing how to fulfill the terms of the Settlement Agreement in the above-referenced matter with regard to the insurance policy.  See Clerk's Notes for April 19, 2007.  Because the parties were still working on a joint proposed order, the parties requested that they be permitted to file a joint proposed order with the Court no later than May 10, 2007.  See Joint Status Report (Docket No. 40).  In the Joint Status Report, the parties agreed that, to extent the parties could not reach agreement on a joint proposed order, the parties would file separate proposed orders addressing how to fulfill the terms of the Settlement Agreement with regard to the insurance policy no later than May 10, 2007.

4.   After the April 19th hearing, Defendants' counsel indicated that Defendants intended to transfer ownership of the insurance policy to HCI.  See Declaration of Brian M. Forbes dated May 10, 2007 ("Forbes Decl.") at para. 2, and Exhibit A thereto (Docket No. 43).  On May 2, 2007, in response to a voicemail and email correspondence from counsel for HCI, Defendants' counsel further confirmed Defendants' intent to transfer ownership of the policy.  See Forbes Decl. at paras. 3, 4 Exhibits B and C (Docket No. 43).   In that email, Defendants' counsel indicated, that "if possible [Dr. Johnson] would like to use a third party escrow agent."  Id. at Exhibit C.

5.   In response, counsel for HCI requested details as to Defendants' proposal to use a third party escrow agent.  No details were forthcoming either by way of return phone call or correspondence.  See Forbes Decl. at para. 5, Exhibit D (Docket No. 43).  Defendants did not provide a draft proposed escrow agreement, did not identify who would act as an escrow agent for this matter, and did not indicate how the escrow agent was to be paid.  Id.

6.     Due to Defendants' failure to further pursue their request to involve a third party escrow agent, HCI sent to Defendants' counsel a draft proposed order for submission to the Court.  See Forbes Decl. at para. 6, Exhibit E (Docket No. 43).  Despite repeat attempts on May 10, 2007 to resolve the parties' differences as to the language of the proposed order, Defendants' counsel did not respond to HCI's counsel's email.  See Forbes Decl. at para. 7, Exhibit F (Docket No. 43).  At 5:45 p.m. on May 10, 2007, just before filing, Defendants' counsel called counsel for HCI and raised Defendants' concern that they do not have control over the insurance company and would not agree to the date limitation as proposed by HCI to have ownership of the policy transferred to HCI.

7.     HCI disagreed with that position; Defendants do have control over the situation as they agreed in the settlement to provide insurance as security, they could have purchased insurance for this purpose, they selected the policy at issue, and they have the ability to make sure that the transfer happens in a timely manner.  Because the parties were not able to reach agreement on a joint proposed order, HCI separately submitted its proposed order by way of a Motion dated May 10, 2007.  See Motion of Health Coalition, Inc. for Entry of Proposed Order Regarding Settlement (Docket Nos. 42 and 43).

8.     As detailed in HCI's Motion for Entry of Proposed Order, HCI explained that it incurred significant attorneys' fees and costs as a result of Defendants' failure to comply with the terms of the January 17 Order and the Settlement Agreement.  See Docket No. 42.  As further detailed in HCI's Motion to Enforce the Settlement Agreement and Motion for Civil Contempt, HCI's counsel has engaged in numerous communications with Defendants' counsel and insurance companies seeking the required insurance documentation, has parsed through a defective insurance assignment form, identified numerous problems associated with the original

assignment of the policy to HCI, and has been forced to seek relief from the Court on numerous occasions. HCI has incurred tens of thousands of dollars in attorneys fees and costs as a direct result of the actions (and inaction) of the Defendants. Because the facts demonstrate that Defendants' failure to fulfill the terms of the settlement agreement with respect to the insurance policy was done with indifference to the consequences, HCI requested all fees and costs associated with procuring, reviewing, and discussing the insurance information as well as bringing its motion for entry of a proposed order (see Docket No. 42) and other motions addressing this issue.

9. On May 15, 2007, as warranted by the factual record, the Court agreed with HCI by entering the proposed Order submitted by HCI and including an award to HCI for its costs, including attorneys' fees incurred in attempting to obtain Defendants' compliance with the Court's Order dated January 17, 2007, including but not limited to its costs and attorneys' fees associated with HCI's Motion for Civil Contempt and HCI's efforts and to reach agreement with Defendants on a joint proposed order. HCI herewith submits a Declaration of Brian M. Forbes dated June 8, 2007 (attached as Exhibit A) detailing the costs and attorneys' fees HCI has incurred in connection with HCI's efforts in attempting to obtain Defendants' compliance with the above referenced Court Orders. HCI requests that the Court order Defendants to pay the costs and attorney's fees detailed in the attached Declaration.

10. Finally, defendants now complain that HCI has failed to comply with the Settlement Agreement by failing to file a Stipulation of Dismissal. As detailed in HCI's various filings, because of Defendants' continued failure to comply with the Settlement Agreement and Court Orders, and the protracted delays in obtaining documents and/or information from Defendants, HCI was left with little choice but to seek relief, time and time again from the Court.

HCI is still seeking information to confirm the proper transfer of the insurance policy pursuant to the Court's May 15, 2007 Order.  To date, HCI has still not received a copy of the updated insurance policy after the purported transfer of the policy to HCI.  Thus, the filing of the Stipulation of Dismissal would be premature.  HCI agrees the Stipulation can be filed once the open issues before the Court are resolved.

WHEREFORE, for the foregoing reasons, HCI requests that the Court deny Defendants' Motion for Reconsideration, and order that Defendants pay HCI its costs and attorneys fees as set forth in the attached Declaration of Brian M. Forbes dated June 8, 2007.  HCI further requests that the Court grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

HEALTH COALITION, INC.,

By its attorneys,

Dated:  June 8, 2007

/s/ Brian M. Forbes
Jeffrey S. King (BBO # 559000)
  jeffrey.king@klgates.com
Brian M. Forbes (BBO# 644787)
  brian.m.forbes@klgates.com
Stacey L. Gorman (BBO# 655147)
  stacey.gorman@klgates.com
KIRKPATRICK & LOCKHART
     PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
Tele:   (617) 261-3100
Fax:    (617) 261-3175

- 7 -

### CERTIFICATE OF SERVICE

      I hereby certify that this document, filed on June 8, 2007 through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

Peter J. Haley
Leslie F. Su
Gordon Haley LLP
101 Federal Street
Boston, MA 02110

William H. DiAdamo
DiAdamo Law Office, LLP
40 Appleton Way
Lawrence, MA 01840

                                    /s/ Brian M. Forbes
                                    Brian M. Forbes

# EXHIBIT A

BOS-1091219 v1 0435260-0903

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH COALITION, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) Civil Action No. 05-cv-11816 MEL<br>NEW ENGLAND ALLERGY ASTHMA )<br>IMMUNOLOGY & PRIMARY CARE, )<br>P.C. and THOMAS F. JOHNSON, )<br>Individually )<br>)<br>Defendants. )<br>) | |

**DECLARATION OF BRIAN M. FORBES
IN SUPPORT OF ATTORNEYS' FEES AND COSTS**

I, Brian M. Forbes hereby declare under oath as follows:

1.    I am an attorney and associate at the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP ("K&L Gates"), State Street Financial Center, One Lincoln Street, Boston, Massachusetts.  K&L Gates represents plaintiff Health Coalition, Inc. ("HCI") in this action.  I respectfully submit this Declaration as support and justification for the amount of attorney's fees and costs that Defendants are required to pay to HCI in connection with and as required by the Order of this Court dated May 15, 2007.

2.    On May 10, 2007, HCI filed a Motion for entry of Proposed Order Regarding Settlement.  See Docket Nos. 42 and 43.

3.    The Court adopted HCI's Proposed Order Regarding Settlement.  See Docket No. 44.  The Order specifically provides:

> Upon submission by Health Coalition, Inc. to defendants, New England Allergy
> Asthma Immunology & Primary Care, P.C. and Thomas Johnson shall pay Health

- 2 -

Coalition, Inc. for all costs, including attorneys' fees incurred in attempting to obtain defendants' compliance with the Court's Order dated January 17, 2007, including but not limited to Health Coalition's costs and attorneys' fees associated with plaintiff's motion for Civil Contempt and Health Coalition's efforts to reach agreement with defendants on a joint proposed order.

May 15, 2007 Order at para. 5.

4. Accordingly, I hereby confirm that in connection with HCI's efforts in attempting to obtain defendants' compliance with the Court's Order dated January 17, 2007, including HCI's costs and attorneys' fees associated with plaintiff's motion for Civil Contempt and HCI's efforts to reach agreement with defendants on a joint proposed order, as well as HCI's fees and costs incurred in connection with seeking confirmation of the transfer of the policy, efforts to obtain policy documents, and opposing the motion for reconsideration, HCI has incurred legal fees and costs for the period from January 19, 2007 through June 6, 2007 in the amount of $28,230.00.

5. From January 19, 2007 through June 6, 2007, as detailed below, I spent 31.7 hours attending to the issues related to the tasks referred to in the May 15, 2007 Order. The legal fees incurred include time I spent performing the following tasks:

- January 2007 - .3 hours for conferences and correspondence regarding settlement document production;

- February 2007 – 10.0 hours for correspondence with defendants' counsel regarding production of insurance policy and settlement documents; review and analysis of insurance assignment provided by defendants; conferences regarding problems with insurance assignment; communications with defendants' counsel regarding deficiencies in assignment; conferences regarding and edits and revisions to Motion for Contempt; and correspondence with insurance company regarding insurance assignment deficiencies;

- March 2007 — 11.1 hours for communications regarding insurance documentation deficiencies and form of payment issues; drafting and revisions to Motion for Contempt; review and analysis of Opposition to Motion for Contempt; and analysis of policy provided by defendants;

- April 2007 — 7.2 hours for preparation for and attendance at motion hearing; communications with defense counsel regarding hearing and insurance issues;

- May 2007 — 1.4 hours for correspondence with defense counsel regarding transfer of ownership and analysis of transfer and escrow issues; drafting and filing of status report; drafting joint order; drafting motion for entry of proposed order; review of defendants' proposed order; drafting opposition to Motion for Reconsideration; communications with insurance company regarding insurance policy; and analysis of insurance policy issues; and

- June 2007— 1.7 for opposing defendants' Motion for Reconsideration and analysis of motion for costs.

My hourly billing rate for my time in connection with this work (all of which was performed in 2007) was $385 per hour (for a total of $12,204.50).

6.   From January 19, 2007 through June 6, 2007, as detailed below, Jeffrey King, a partner with K&L Gates, spent 13.8 hours attending to the issues related to the tasks referred to in the May 15, 2007 Order.  The legal fees incurred include time Mr. King spent performing the following tasks:

- February 2007 – 5.8 hours for review and analysis of insurance assignment provided by defendants; conferences and emails with B. Forbes regarding insurance deficiencies and strategy; and edits and revisions to correspondence with defense counsel;

- March 2007 — 5.7 hours for conferences and emails with B. Forbes regarding insurance deficiencies and strategy; edits and revisions to correspondence with defense counsel; edits and revisions to Motion for Contempt; and review and analysis of defendants' Opposition to Motion for Contempt;

- April 2007 — .5 hours for conferences with B. Forbes regarding preparation for hearing on Motion for Contempt; and conferences with B. Forbes regarding outcome of hearing and insurance deficiencies; and

- May 2007 — 1.8 hours for conferences and emails with B. Forbes regarding insurance deficiencies and strategy; edits and revisions to correspondence with defense counsel; edits and revisions to Proposed Order and Motion; and review and analysis of Court's Order and Motion for Reconsideration.

Mr. King's hourly billing rate for this work was $475 per hour (for a total of $6,555.00).

7.      From January 19, 2007 through June 6, 2007, as detailed below, Amiel Weinstock, an associate in the K&L Gates trusts and estates department spent 4.9 hours attending to the issues related to the tasks referred to in the May 15, 2007 Order. The legal fees incurred include time Mr. Weinstock spent performing the following tasks:

- February 2007 — 1.9 hours for conferences regarding defendants' Assignment of life insurance policy, impact on settlement, and potential escrow issues;

- March 2007 — .8 hours for review and analysis of life insurance policy and conferences regarding insurance issues; and

- May 2007 — 2.2 hours for conferences regarding escrow issues and insurance ownership transfer; conferences with insurance company regarding insurance issues; and edits and revisions to correspondence with insurance company

Mr. Weinstock's hourly billing rate for this work was $385 per hour (for a total of $1,886.50).

8.      From January 19, 2007 through June 6, 2007, as detailed below, Ms. Gorman, an associate at K&L Gates, spent 18.9 hours attending to the issues related to the tasks referred to in the May 15, 2007 Order.  The legal fees incurred include time Ms. Gorman spent performing the following tasks:

- February 2007 — 10.5 hours for review and analysis of issues related to Motion for Contempt; research law regarding Motion for Contempt; drafting Motion for Contempt and related documents; conferences with defense counsel regarding production of insurance information; and attending to correspondence from defense counsel regarding insurance information;

- March 2007 — 7.2 hours for conferences regarding Motion for Contempt research; edits and revisions to Motion for Contempt; attend to filing of pleadings; review Opposition to Motion for Contempt; and

- June 2007 — 1.2 hours for review and analysis of costs arising from insurance deficiencies and drafting declaration for costs.

Ms. Gorman's hourly billing rate for this work was $355 per hour (for a total of $6,709.50)

9. The legal fees incurred by HCI also include time in March 2007 spent by Sara Yevics, an associate at K&L Gates, researching potential penalties available for civil contempt of court, totaling 3.3 hours. Ms. Yevics's hourly billing rate for this work was $265 per hour (for a total of $874.50).

10. The total amount of legal fees that have been incurred by HCI in connection with attempting to obtain defendants' compliance with the Court's Order dated January 17, 2007, including HCI's costs and attorneys' fees associated with plaintiff's motion for Civil Contempt and HCI's efforts to reach agreement with defendants on a joint proposed order as further detailed above are as follows:

| Timekeeper | Hours | Total |
|---|---|---|
| Brian M. Forbes, Esq. | 31.7 | $12,204.50 |
| Jeffrey S. King, Esq. | 13.8 | $6,555.00 |
| Amiel Z. Weinstock, Esq. | 4.9 | $1,886.50 |
| Stacey L. Gorman, Esq. | 18.9 | $6,709.50 |
| Sarah E. Yevics, Esq. | 3.3 | $874.50 |
| Total: | 69.7 | $28,230.00 |

11. I assert that the counsel fees and costs that are referenced herein are fair and reasonable compensation for the services performed.

- 7 -

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED THIS 8th DAY OF JUNE 2007, AT BOSTON, MASSACHUSETTS.

/s/ Brian M. Forbes
Brian M. Forbes